# 23-46-PR

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

➤➤◄◄

SEAN BAKER,

*Petitioner-Appellant,*

*v.*

JAMES CONWAY,

*Respondent-Appellee.*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## JOINT APPENDIX
## VOLUME I OF IV
## Pages A1 to A222

HANGLEY ARONCHICK SEGAL
   PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
215-568-6200

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
212-450-4000

OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
212-402-4141

*Attorneys for Petitioner-Appellant*

*(Additional Counsel on the Reverse)*

Bronx County District
   Attorney's Office
198 East 161st Street
Bronx, New York 10451
718-838-6652

*Attorneys for Respondent-Appellee*

# Table of Contents

**Page**

## Volume I

District Court Docket Entries ................................................................ A1

Petition for a Writ of Habeas Corpus by a Person in State Custody,
    dated January 18, 2018 ................................................................ A8

    Exhibit A-1 to Petition -
    Order in *The People of the State of New York v. Baker*
    ("State Court Proceedings"), dated October 24, 2016,
    with Cover Letter and Envelope ................................................ A23

    Exhibit A-2 to Petition -
    Letter from Emily Anne Aldridge to the Honorable
    Eugene M. Fahey, dated August 18, 2016 .............................. A26

    Exhibit A-3 to Petition -
    Letter from Richard M. Greenberg to the Honorable
    Eugene M. Fahey, dated August 8, 2016 ................................ A28

    Exhibit A-5 to Petition -
    Letter from Jacob Gardener to the Honorable
    Janet DiFiore, dated July 7, 2016 ............................................ A37

    Exhibit B-1 to Petition -
    Decision and Order in State Court Proceedings,
    entered May 26, 2016 .............................................................. A39

    Exhibit B-2 to Petition -
    Reply Brief for Defendant-Appellant in
    State Court Proceedings, dated February 11, 2016 ................. A42

    Exhibit B-3 to Petition -
    Respondent's Brief in State Court Proceedings,
    dated January 25, 2016 ............................................................ A78

    Exhibit B-4 to Petition -
    Brief for Defendant-Appellant in State Court Proceedings,
    dated October 5, 2015 ............................................................. A120

Exhibit C-1 to Petition -
Decision in State Court Proceedings,
dated September 3, 2014 ........................................................ A190

Exhibit C-2 to Petition -
Reply Memorandum of Law by Defendant in
State Court Proceedings, dated August 11, 2014 .................... A200

Exhibit C-3 to Petition -
(i) Affirmation in Opposition of Emily Anne Aldridge,
for Respondent in State Court Proceedings,
dated July 9, 2014 .................................................................. A220

**Volume II**

(ii) Memorandum of Law by Respondent in
State Court Proceedings, dated July 2014 .............................. A223

Exhibit C-4 to Petition -
Notice of C.P.L. § 440.10 Motion by Defendant in
State Court Proceedings, dated April 15, 2014,
with Supporting Memorandum of Law ................................... A242

Exhibit C-5 to Petition -
Affirmation in Support of Motion to Vacate Judgment
of Katherine A. Marshall, for Defendant in State Court
Proceedings, dated April 14, 2014 ......................................... A280

Exhibit A to Marshall Affirmation -
Indictment in State Court Proceedings,
dated February 14, 2008 .................................................. A292

Exhibit B to Marshall Affirmation -
(i) Notice of Motion by Defendant in
State Court Proceedings to Inspect Grand Jury
Minutes and Dismiss or Reduce Charge
in Indictment, served November 13, 2009,
with Supporting Affidavit.................................................. A298

**Table of Contents**
**(Continued)**

Exhibit B to Marshall Affirmation - (cont'd)
(ii) Notice of Motion by Defendant in State Court
Proceedings for Frye Hearing, dated October 25, 2009,
with Supporting Legal Argument ..................................... A303

Exhibit C to Marshall Affirmation -
(i) Notice of Motion by Defendant in State Court
Proceedings for Assignment of Private Investigator,
dated September 23, 2009, with Supporting Affidavit
and Envelope ................................................................ A308
(ii) Notice of Motion by Defendant in State
Court Proceedings for Reassignment of Counsel,
dated November 22, 2008, with Supporting Affidavit ..... A314

Exhibit D to Marshall Affirmation -
"Bronx murder sentence delayed", *Telegram*,
dated March 23, 2010 ........................................................ A318

Exhibit E to Marshall Affirmation -
Pre-Sentence Investigation Face Sheet in
State Court Proceedings, dated May 10, 2010 .................. A320

Exhibit F to Marshall Affirmation -
Office of the District Attorney, Bronx County
Notices and Voluntary Disclosure Form,
dated February 28, 2008 .................................................. A326

Exhibit C-6 to Petition -
Affidavit of Sean Baker, Defendant in State Court
Proceedings, sworn to August 21, 2013 ................................. A331

Exhibit C-7 to Petition -
Affidavit of Lucinda Lewis, for Defendant in State Court
Proceedings, sworn to July 10, 2013 ...................................... A343

Annexed to Petition -
(i) Trial Transcripts in State Court Proceedings,
dated January 13 to 19, 2010 ................................................. A349

## Volume III

Annexed to Petition - (cont'd)
(ii) Trial Transcripts in State Court Proceedings,
dated April 6 to 20, 2010 ....................................................... A441
(iii) Transcript of Sentencing Hearing held in
State Court Proceedings on May 12, 2010 ............................. A651

Memorandum of Law by Petitioner in Support of Petition,
dated January 18, 2018 ................................................. A656

Declaration of Lori Ann Farrington, for Respondent,
in Opposition to Petition, dated July 12, 2018 .............................. A712

## Volume IV

Memorandum of Law by Respondent in Opposition to Petitioner,
dated July 12, 2018 ......................................................... A723

Exhibit 1 to Memorandum of Law -
Declaration of John Morabito, dated July 11, 2018 ................ A800

Exhibit 2 to Memorandum of Law -
Transcript of Proceedings held in State Court Proceedings
on October 16, 2008 ............................................... A804

Exhibit 3 to Memorandum of Law -
Letter from Sean Baker to Robert T. Johnson,
dated August 23, 2008 ............................................. A808

Reply Memorandum of Law by Petitioner in Further Support
of Petition, dated September 28, 2018 .......................................... A809

Report and Recommendation of the Honorable Stewart D. Aaron,
dated November 25, 2019 ............................................... A839

Objections by Petitioner to Report and Recommendation,
dated December 20, 2019 ............................................ A873

## Table of Contents
### (Continued)

**Page**

Declaration of Lori Ann Farrington, for Respondent,
in Opposition to Objections, dated March 8, 2022 ........................ A892

Reply by Petitioner in Further Support of Objections,
dated March 25, 2022 ................................................................. A900

Notice of Appeal, dated January 9, 2023 ............................................. A907

Query    Reports    Utilities    Help    Log Out

CLOSED,APPEAL,HABEAS,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:18-cv-00478-ER-SDA

Baker v. Conway                                      Date Filed: 01/18/2018
Assigned to: Judge Edgardo Ramos                     Date Terminated: 12/13/2022
Referred to: Magistrate Judge Stewart D. Aaron       Jury Demand: None
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)   Nature of Suit: 530 Habeas Corpus
                                                     (General)
                                                     Jurisdiction: Federal Question

**Petitioner**

**Sean Baker**                          represented by   **Amelia Temple Redwood Starr**
                                                         Davis Polk & Wardwell LLP (NYC)
                                                         450 Lexington Avenue
                                                         New York, NY 10017
                                                         212-450-4516
                                                         Fax: 212-450-3516
                                                         Email: amelia.starr@dpw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jennifer Ann Prevete**
                                                         Walden Macht & Haran LLP
                                                         250 Vesey Street
                                                         Ste 27th Floor
                                                         New York, NY 10281
                                                         212-335-2382
                                                         Email: jprevete@wmhlaw.com
                                                         *TERMINATED: 02/06/2019*
                                                         *LEAD ATTORNEY*

                                                         **Ryan William Cooke**
                                                         Davis Polk & Wardwell LLP (NYC)
                                                         450 Lexington Avenue
                                                         New York, NY 10017
                                                         (212)-450-3319
                                                         Email: ryan.cooke@davispolk.com
                                                         *TERMINATED: 07/18/2018*
                                                         *LEAD ATTORNEY*

                                                         **Sofia A. Vitiello**
                                                         Davis Polk & Wardwell LLP (NYC)
                                                         450 Lexington Avenue
                                                         New York, NY 10017
                                                         212-450-4000
                                                         Email: sofia.vitiello@davispolk.com

# A2

*TERMINATED: 08/04/2021*
*LEAD ATTORNEY*

**Daniel Saul Magy**
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
212-416-6073
Email: daniel.magy@ag.ny.gov
*TERMINATED: 04/12/2022*

V.

**Respondent**

**James Conway**                represented by **Lori Ann Farrington**
Bronx County District Attorney's Office
198 East 161st Street
Bronx, NY 10451
(718)-838-6223
Email: farringtonl@bronxda.nyc.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/18/2018 | 1 | PETITION FOR WRIT OF HABEAS CORPUS pursuant to 28 U.S.C. 2254. (Filing Fee $ 5.00, Receipt Number 0208-14594509)Document filed by Sean Baker. (Attachments: # 1 Exhibit A-1 Order of New York Court of Appeals, dated October 24, 2016, denying Leave to Appeal, # 2 Exhibit A-2 Respondents Opposition to Defendant-Appellants Application for Leave to Appeal, # 3 Exhibit A-3 Defendant-Appellants Supplemental Letter in Support of Application for Leave to Appeal, # 4 Exhibit A-4 Order of New York Court of Appeals, dated July 18, 2016, assigning Application for Leave to Appeal to the Honorable Judge Fahey, # 5 Exhibit A-5 Defendant-Appellants Application for Leave to Appeal, # 6 Exhibit B-1 Decision of New York Supreme Court, Appellate Division, First Department, dated May 26, 2016, affirming the judgment of the New York Supreme Court, # 7 Exhibit B-2 Reply Brief for Defendant-Appellant, # 8 Exhibit B-3 Brief for Respondent, # 9 Exhibit B-4 Brief for Defendant-Appellant, # 10 Exhibit B-5 Certificate of New York Supreme Court, Appellate Division, First Department, dated February 17, 2015, granting Leave to Appeal, # 11 Exhibit C-1 Decision of New York Supreme Court, Bronx County, dated September 3, 2014, denying the § 440 Motion to Vacate Judgment of Conviction, # 12 Exhibit C-2 Reply Memorandum of Law in Support of Defendants Motion Pursuant to New York Criminal Procedural Law § 440.10(1) to Vacate Judgment of Conviction, # 13 Exhibit C-3 Affirmation of Emily Anne Aldridge and Memorandum of Law Statement in Opposition, # 14 Exhibit C-4 Notice of Motion and Memorandum of Law in Support of Defendants Motion Pursuant to New York Criminal Procedural Law § 440.10(1) to Vacate Judgment of Conviction, # 15 Exhibit C-5 Affirmation of Katherine A. Marshall in Support of Motion to Vacate Judgment of Conviction, dated April 14, 2014, and exhibits thereto, # 16 Exhibit C-6 Affidavit of Sean Baker, dated August 21, 2013, # 17 Exhibit C-7 Affidavit of Lucinda Lewis, dated July 10, 2013, # 18 January 13, 2010 Pre-Trial Hearing Transcript, # 19 January 19, 2010 Pre-Trial Hearing Transcript, # 20 April 6, 2010 Trial Transcript, Volume I, # 21 April 14, 2010 Trial Transcript Volume II, # 22 April 20, 2010 |

# A3

| | | Trial Transcript Volume III, # 23 May 12, 2010 Sentencing Transcript)(Cooke, Ryan) (Entered: 01/18/2018) |
|---|---|---|
| 01/18/2018 | 2 | MEMORANDUM OF LAW in Support re: 1 Petition for Writ of Habeas Corpus,,,,,,,,,, . Document filed by Sean Baker. (Cooke, Ryan) (Entered: 01/18/2018) |
| 01/18/2018 | 3 | CIVIL COVER SHEET filed. (Cooke, Ryan) (Entered: 01/18/2018) |
| 01/18/2018 | 4 | NOTICE OF APPEARANCE by Ryan William Cooke on behalf of Sean Baker. (Cooke, Ryan) (Entered: 01/18/2018) |
| 01/19/2018 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Ryan William Cooke. The party information for the following party has been modified: Paul Piccolo. The information for the party has been modified for the following reason: party text contained a typographical error. (pne) (Entered: 01/19/2018) |
| 01/19/2018 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Edgardo Ramos. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (pne) (Entered: 01/19/2018) |
| 01/19/2018 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (pne) (Entered: 01/19/2018) |
| 01/19/2018 | | Case Designated ECF. (pne) (Entered: 01/19/2018) |
| 01/29/2018 | 5 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Habeas Corpus. Referred to Magistrate Judge Stewart D. Aaron. (Signed by Judge Edgardo Ramos on 1/29/2018) (jwh) (Entered: 01/29/2018) |
| 02/20/2018 | 6 | ORDER TO ANSWER, 28 U.S.C. § 2254. It is ORDERED, pursuant to Rules 4 and 5, that the respondent file all relevant parts of the state court record (including, but not limited to, the transcript of the state court proceedings, sentencing minutes, trial court decision, appellate briefs, appellate decisions, and post-trial motions and decisions), and an answer or other pleading to the petition raising all available defenses, no later than April 20, 2018; and it is further ORDERED that the petitioner shall file any reply papers no later than thirty (30) days from the date on which he is served with Respondents answer; and it is further ORDERED, pursuant to Rule 4, that the Clerk of Court serve copies of this Order, the petition, and the form for Consent to Proceed Before a United States Magistrate Judge, by certified mail, upon the respondent and the Attorney General of the State of New York, 120 Broadway, New York, NY 10271 and the Bronx County District Attorney, 198 E. 161st Street, Bronx, NY 10451; and it is further ORDERED that if both parties consent to refer this case to a United States Magistrate Judge for final disposition, the enclosed Consent form should be executed and returned. This action having been referred to Magistrate Judge Aaron, all correspondence and requests should be sent to the attention of Judge Aaron. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 2/20/18) (yv) (Additional attachment(s) added on 2/22/2018: # 1 Exhibit Consent to Proceed Before a United States Magistrate Judge) (rro). (Entered: 02/20/2018) |
| 02/20/2018 | | Transmission to Docket Assistant Clerk. Transmitted re: 6 Order to Answer, to the Docket Assistant Clerk for case processing. (yv) (Entered: 02/20/2018) |

| 02/22/2018 | | Mailed a copy of 6 Order to Answer, 1 Petition for Writ of Habeas Corpus, to (1/2) District Attorney for Bronx County, 198 E 161st Street, Bronx, NY 10451 by Certified Mail # 7017 3040 0000 9028 0694; (2/2) District Attorney for Bronx County, 198 E 161st Street, Bronx, NY 10451 by Certified Mail # 7017 3040 0000 9028 0663; and Attorney General of the State of New York, 120 Broadway, New York, New York 10271 by Certified Mail # 7017 3040 0000 9028 0656 with Return Receipt Requested. (rro) (Entered: 02/22/2018) |
|---|---|---|
| 03/01/2018 | 7 | NOTICE OF APPEARANCE by Lori Ann Farrington on behalf of Paul Piccolo. (Farrington, Lori) (Entered: 03/01/2018) |
| 03/08/2018 | | Received Return Receipt as to Bronx County DA, which was served by Certified Mail # 70173040000090280694, (Jackson, Zhane) (Entered: 03/08/2018) |
| 03/09/2018 | | Received Return Receipt of Mail Order by Certified Mail as to Attorney General of New York State, which was served by Certified Mail # 7017 3040 0000 9028 0656, on 2/28/2018. (rro) (Entered: 03/09/2018) |
| 03/09/2018 | 8 | LETTER addressed to Magistrate Judge Stewart D. Aaron from Ryan W. Cooke dated March 9, 2018 re: Inform the Court of Mr. Baker's Transfer from Southport Correctional Facility to Attica Correctional Facility. Document filed by Sean Baker.(Cooke, Ryan) (Entered: 03/09/2018) |
| 04/11/2018 | 9 | FIRST LETTER MOTION for Extension of Time addressed to Magistrate Judge Stewart D. Aaron from Lori Ann Farrington dated April 11, 2018. Document filed by Paul Piccolo. (Farrington, Lori) (Entered: 04/11/2018) |
| 04/11/2018 | 10 | ORDER granting 9 Letter Motion for Extension of Time. ENDORSEMENT: Request GRANTED. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 4/11/2018) (anc) (Entered: 04/11/2018) |
| 04/11/2018 | | Set/Reset Deadlines: Paul Piccolo answer due 6/15/2018. Replies due by 7/16/2018. (anc) (Entered: 04/11/2018) |
| 06/08/2018 | 11 | SECOND LETTER MOTION for Extension of Time addressed to Magistrate Judge Stewart D. Aaron from Lori Ann Farrington dated June 8, 2018. Document filed by Paul Piccolo.(Farrington, Lori) (Entered: 06/08/2018) |
| 06/11/2018 | 12 | ORDER granting 11 Letter Motion for Extension of Time. ENDORSEMENT: Request GRANTED. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 6/11/2018) (kl) (Entered: 06/11/2018) |
| 06/11/2018 | | Set/Reset Deadlines: Paul Piccolo answer due 7/13/2018. (kl) (Entered: 06/11/2018) |
| 06/29/2018 | 13 | NOTICE OF APPEARANCE by Jennifer Ann Prevete on behalf of Sean Baker. (Prevete, Jennifer) (Entered: 06/29/2018) |
| 06/29/2018 | 14 | LETTER MOTION for Extension of Time *Deadline to File Petitioner's Reply* addressed to Magistrate Judge Stewart D. Aaron from Ryan W. Cooke dated June 29, 2018. Document filed by Sean Baker.(Cooke, Ryan) (Entered: 06/29/2018) |
| 07/02/2018 | 15 | ORDER granting 14 Letter Motion for Extension of Time. ENDORSEMENT: Request GRANTED. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 7/2/2018) (kl) (Entered: 07/02/2018) |
| 07/02/2018 | | Set/Reset Deadlines: Replies due by 8/16/2018. (kl) (Entered: 07/02/2018) |
| 07/13/2018 | 16 | DECLARATION of Lori Ann Farrington in Opposition. Document filed by Paul Piccolo. (Farrington, Lori) (Entered: 07/13/2018) |

| 07/13/2018 | 17 | FIRST MEMORANDUM OF LAW in Opposition re: 16 Declaration in Opposition *Farrington, Lori*. Document filed by Paul Piccolo. (Attachments: # 1 Exhibit Affirmation of J. Morabito, # 2 Exhibit Court Transcript, # 3 Exhibit Letter to D.A.)(Farrington, Lori) (Entered: 07/13/2018) |
| --- | --- | --- |
| 07/18/2018 | 18 | LETTER addressed to Magistrate Judge Stewart D. Aaron from Ryan W. Cooke dated July 18, 2018 re: To Withdraw as Counsel of Record. Document filed by Sean Baker.(Cooke, Ryan) (Entered: 07/18/2018) |
| 07/18/2018 | 19 | MEMO ENDORSEMENT on re: 18 Letter filed by Sean Baker. ENDORSEMENT: Request GRANTED. The Clerk of Court is directed to terminate attorney Ryan William Cooke as counsel of record on the docket. SO ORDERED. Attorney Ryan William Cooke terminated. (Signed by Magistrate Judge Stewart D. Aaron on 7/18/2018) (kgo) (Entered: 07/18/2018) |
| 08/03/2018 | 20 | LETTER MOTION for Extension of Time *to File Petitioner's Reply and to File Additional Pages* addressed to Magistrate Judge Stewart D. Aaron from Jennifer A. Prevete dated August 3, 2018. Document filed by Sean Baker.(Prevete, Jennifer) (Entered: 08/03/2018) |
| 08/03/2018 | 21 | ORDER granting 20 Letter Motion for Extension of Time. MEMO ENDORSEMENT: Requests GRANTED. The Clerk of Court is directed to terminate the pending motion at ECF No. 20. SO ORDERED. (Signed by Magistrate Judge Stewart D. Aaron on 8/3/2018) (kl) (Entered: 08/03/2018) |
| 08/03/2018 | | Set/Reset Deadlines: Replies due by 9/28/2018. (kl) (Entered: 08/03/2018) |
| 09/28/2018 | 22 | REPLY MEMORANDUM OF LAW in Support re: 1 Petition for Writ of Habeas Corpus,,,,,,,,, . Document filed by Sean Baker. (Prevete, Jennifer) (Entered: 09/28/2018) |
| 02/05/2019 | 23 | NOTICE OF APPEARANCE by Sofia A. Vitiello on behalf of Sean Baker. (Vitiello, Sofia) (Entered: 02/05/2019) |
| 02/06/2019 | 24 | LETTER addressed to Magistrate Judge Stewart D. Aaron from Sofia A. Vitiello dated February 6, 2019 re: Withdrawing Jennifer Prevete as Counsel of Record. Document filed by Sean Baker.(Vitiello, Sofia) (Entered: 02/06/2019) |
| 02/06/2019 | 25 | MEMO ENDORSEMENT on re: 24 Letter filed by Sean Baker. Davis Polk & Wardwell LLP represents Petitioner Sean Baker in the above-referenced action. write to notify the Court that as of February 1, 2019, Jennifer A. Prevete is no longer associated with the law firm of Davis Polk & Wardwell LLP. Accordingly, I respectfully request that the Court instruct the docket clerk to remove Ms. Prevete as counsel of record. Davis Polk & Wardwell LLP will continue to represent Petitioner in this action. ENDORSEMENT: The Clerk of Court is directed to terminate attorney Jennifer A. Prevete from the docket. So Ordered. Attorney Jennifer Ann Prevete terminated. (Signed by Magistrate Judge Stewart D. Aaron on 2/6/2019) (js) (Entered: 02/07/2019) |
| 11/25/2019 | 26 | REPORT AND RECOMMENDATION re: 1 Petition for Writ of Habeas Corpus, filed by Sean Baker. For the foregoing reasons, I respectfully recommend that Baker's petition for a writ of habeas corpus be DENIED in its entirety. Objections to R&R due by 12/9/2019 (Signed by Magistrate Judge Stewart D. Aaron on 11/25/2019) (kl) (Entered: 11/25/2019) |
| 11/27/2019 | 27 | LETTER MOTION for Extension of Time *to File Written Objections to the Report and Recommendation* addressed to Judge Edgardo Ramos from Sofia A. Vitiello dated November 27, 2019. Document filed by Sean Baker.(Vitiello, Sofia) (Entered: 11/27/2019) |
| 11/27/2019 | 28 | ORDER granting 27 Letter Motion for Extension of Time. The application is granted. Objections to R&R due by 12/20/2019 (Signed by Judge Edgardo Ramos on 11/27/2019) (kv) (Entered: 11/27/2019) |

| 11/27/2019 | | ***DELETED DOCUMENT. Deleted document number 29 STIPULATED ORDER REGARDING DISCOVERY, INCLUDING THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION. The document was incorrectly filed in this case. (kv) (Entered: 12/02/2019)** |
| 12/20/2019 | 29 | OBJECTION to 26 Report and Recommendations Document filed by Sean Baker. (Vitiello, Sofia) (Entered: 12/20/2019) |
| 08/03/2021 | 30 | NOTICE OF APPEARANCE by Daniel Saul Magy on behalf of Sean Baker..(Magy, Daniel) (Entered: 08/03/2021) |
| 08/03/2021 | 31 | LETTER addressed to Judge Edgardo Ramos from Sofia A. Vitiello dated August 3, 2021 re: To Withdraw as Counsel of Record. Document filed by Sean Baker..(Vitiello, Sofia) (Entered: 08/03/2021) |
| 08/04/2021 | 32 | MEMO ENDORSEMENT on re: 31 Letter filed by Sean Baker. ENDORSEMENT: The request is granted. The Clerk of Court is respectfully directed to terminate Sofia A. Vitiello as counsel in this matter. So ordered. Attorney Sofia A. Vitiello terminated. (Signed by Judge Edgardo Ramos on 8/4/2021) (rro) (Entered: 08/04/2021) |
| 02/22/2022 | 33 | ORDER: Magistrate Judge Stewart D. Aaron issued a Report and Recommendation in this matter on February 6, 2019. Doc. 26. Petitioner Baker filed objections to the Report and Recommendation on December 20, 2019. Doc. 29. As of this date, Respondent Conway has not submitted a response. Respondent Conway is directed to submit a response by March 22, 2022. Failure to do so will result in the Court deeming the objections unopposed. SO ORDERED., ( Responses due by 3/22/2022) (Signed by Judge Edgardo Ramos on 2/22/2022) (ama) (Entered: 02/22/2022) |
| 03/09/2022 | 34 | FIRST RESPONSE *Petitioner's Objections to Report and Recommendation*. Document filed by James Conway..(Farrington, Lori) (Entered: 03/09/2022) |
| 03/10/2022 | 35 | LETTER MOTION for Leave to File Reply addressed to Judge Edgardo Ramos from Daniel S. Magy dated March 10, 2022. Document filed by Sean Baker..(Magy, Daniel) (Entered: 03/10/2022) |
| 03/10/2022 | 36 | ORDER: granting 35 Letter Motion for Leave to File Document. The Application is Granted. (Signed by Judge Edgardo Ramos on 3/10/2022) (ama) (Entered: 03/10/2022) |
| 03/25/2022 | 37 | REPLY re: 29 Objection to Report and Recommendations *in Further Support of Petitioner's Objections to Report and Recommendation*. Document filed by Sean Baker..(Magy, Daniel) (Entered: 03/25/2022) |
| 04/11/2022 | 38 | NOTICE OF APPEARANCE by Amelia Temple Redwood Starr on behalf of Sean Baker.. (Starr, Amelia) (Entered: 04/11/2022) |
| 04/11/2022 | 39 | MOTION for Daniel S. Magy to Withdraw as Attorney . Document filed by Sean Baker.. (Magy, Daniel) (Entered: 04/11/2022) |
| 04/12/2022 | 40 | MEMO ENDORSEMENT on MOTION TO WITHDRAW ATTORNEY: granting 39 Motion to Withdraw as Attorney. ENDORSEMENT: The motion is granted. The Clerk of Court is respectfully directed to terminate Daniel Magy as counsel for petitioner and to terminate the motion, Doc. 39. SO ORDERED. Attorney Daniel Saul Magy terminated. (Signed by Judge Edgardo Ramos on 4/12/2022) (ama) (Entered: 04/12/2022) |
| 12/13/2022 | 41 | OPINION AND ORDER: Adopting REPORT AND RECOMMENDATION: for 26 Report and Recommendation. For the reasons set forth above, the Court adopts Magistrate Judge Aaron's Report in its entirety and Baker's petition for a writ of habeas corpus is DENIED. The Clerk of Court is respectfully directed to close this case. As Baker has not made a |

# A7

| | | |
|---|---|---|
| | | substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); see also, e.g., Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). IT IS SO ORDERED. (Signed by Judge Edgardo Ramos on 12/13/2022) (ama) (Entered: 12/13/2022) |
| 01/09/2023 | 42 | NOTICE OF APPEAL from 41 Order Adopting Report and Recommendations,,. Document filed by Sean Baker. Filing fee $ 505.00, receipt number ANYSDC-27176506. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Starr, Amelia) (Entered: 01/09/2023) |
| 01/09/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 42 Notice of Appeal,..(nd) (Entered: 01/09/2023) |
| 01/09/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 42 Notice of Appeal, filed by Sean Baker were transmitted to the U.S. Court of Appeals..(nd) (Entered: 01/09/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/17/2023 12:20:03 | | |
| **PACER Login:** | phpappeals10east | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-00478-ER-SDA |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

# A8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

                                 )
                                 )

SEAN BAKER,                   )         No. _____
                                 )

          Petitioner,     )
                                 )

    - against -           )
                                 )

PAUL PICCOLO, Superintendent,  )
Southport Correctional Facility,   )
                                 )

         Respondent.    )
                                 )
_____)

## PETITION FOR A WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY

      To the Honorable Judge of the United States District Court for the Southern District of New York:

      Preliminary explanation: The allegations of this petition are in the form dictated by the Model Form for use in applications for habeas corpus under 28 U.S.C. § 2254 cases in the United States District Courts.

      Paragraphs 1 through 8 state the history of the state court proceedings; paragraphs 10 through 35 state the federal constitutional claims; paragraphs 36 through 37 contain required technical information.

## PROCEDURAL HISTORY

1.      The name and location of the court which entered the judgment of conviction and sentence under attack is: Supreme Court of the State of New York, Bronx County.

2.      The date of the judgment of conviction is April 20, 2010.

3.      Sean Baker is imprisoned pursuant to a sentence of a term of 20 years to life.

4.      Mr. Baker is currently incarcerated at Southport Correctional Facility, Pine City, New York, under the custody of respondent, Paul Piccolo, the Superintendent of Southport Correctional Facility.  Mr. Baker's prison number is 10-A-3405.

5.      The nature of the offenses involved is that Mr. Baker was convicted of murder in the second degree.  *See* N.Y. Penal Law § 125.25 (McKinney 2010).

6.      Mr. Baker pleaded not guilty and was convicted upon these charges after a jury trial.

7.      Mr. Baker appealed his conviction and sentence.

8.      The facts of Mr. Baker's appeals are as follow:

      a.      On April 15, 2014, Mr. Baker filed a motion under CPL § 440.10 to vacate his judgment of conviction. The motion was denied.  (Ex. C-4.)

      b.      On February 2, 2015, Mr. Baker sought leave to appeal the denial of the CPL § 440.10 motion, which was granted by Justice David Friedman. Mr. Baker filed a timely notice of appeal on February 17, 2015 and the appeal was consolidated with Mr. Baker's pending appeal of his conviction. The conviction and the denial of the CPL § 440.10 motion were affirmed by the First Department on May 26, 2016.  *People v. Baker*, 139 A.D.3d 591, 592 (1st Dep't 2016); (Ex. B-1.)

      c.      The federal constitutional issues presented in this petition for a writ of *habeas corpus* were raised in his appeal.

# A10

      d.     Mr. Baker sought leave to appeal to the New York Court of Appeals. On October 24, 2016, the Honorable Eugene M. Fahey, Judge of the Court of Appeals, denied leave to appeal. *People v. Baker*, 28 N.Y.3d 1025, 1025 (2016) (Fahey, J.); (Ex. A-1.)

      e.     Mr. Baker has filed no other proceedings in state or federal court challenging his judgment of conviction and sentence.

## CITATIONS TO PETITIONER'S EXHIBITS

9.     Undersigned counsel is filing, contemporaneously with filing this Petition for a Writ of Habeas Corpus, exhibits containing relevant documents from the record in the State trial and appellate courts, as well as transcripts from the trial court.  These Exhibits consist of three categories and are designated as Exhibit A through Exhibit C.  References to the Exhibits and transcripts in this petition and accompanying memorandum of law will be cited as "Ex. [letter-number] at __"; "Jan. 13, 2010 Hr. Tr. __"; "Jan. 19, 2010 Hr. Tr. __"; "Trial Tr. [volume] __"; and "Sent. Tr. __"; respectively.

The Exhibits are as follows:

Exhibit A:     Documents pertaining to the appeal to the New York Court of Appeals:

     Exhibit A-1:   Order of New York Court of Appeals, dated October 24, 2016, denying Leave to Appeal

     Exhibit A-2:   Respondent's Opposition to Defendant-Appellant's Application for Leave to Appeal

     Exhibit A-3:   Defendant-Appellant's Supplemental Letter in Support of Application for Leave to Appeal

     Exhibit A-4:   Order of New York Court of Appeals, dated July 18, 2016, assigning Application for Leave to Appeal to the Honorable Judge Fahey

# A11

Exhibit A-5:   Defendant-Appellant's Application for Leave to Appeal

Exhibit B:      Documents pertaining to the appeal to the New York Supreme Court, Appellate Division, First Department:

Exhibit B-1:   Decision of New York Supreme Court, Appellate Division, First Department, dated May 26, 2016, affirming the judgment of the New York Supreme Court

Exhibit B-2:   Reply Brief for Defendant-Appellant

Exhibit B-3:   Brief for Respondent

Exhibit B-4:   Brief for Defendant-Appellant

Exhibit B-5:   Certificate of New York Supreme Court, Appellate Division, First Department, dated February 17, 2015, granting Leave to Appeal

Exhibit C:      Documents pertaining to the CPL § 440.10 Motion to Vacate Mr. Baker's Judgment of Conviction:

Exhibit C-1:   Decision of New York Supreme Court, Bronx County, dated September 3, 2014, denying the § 440 Motion to Vacate Judgment of Conviction

Exhibit C-2:   Reply Memorandum of Law in Further Support of Defendant's Motion Pursuant to New York Criminal Procedural Law § 440.10(1) to Vacate Judgment of Conviction

Exhibit C-3:   Affirmation of Emily Anne Aldridge and Memorandum of Law in Opposition

Exhibit C-4:   Notice of Motion and Memorandum of Law in Support of Defendant's Motion Pursuant to New York Criminal Procedural Law § 440.10(1) to Vacate Judgment of Conviction

Exhibit C-5:    Affirmation of Katherine A. Marshall in Support of Motion to Vacate

Judgment of Conviction, dated April 14, 2014, and exhibits thereto

Exhibit C-6:    Affidavit of Sean Baker, dated August 21, 2013

Exhibit C-7:    Affidavit of Lucinda Lewis, dated July 10, 2013

The Transcripts are as follows:

- January 13, 2010 Pre-Trial Hearing Transcript (Jan. 13, 2010 Hr. Tr. ___.)

- January 19, 2010 Pre-Trial Hearing Transcript (Jan. 19, 2010 Hr. Tr. ___.)

- April 6–20, 2010 Trial Transcript, Vols. I, II, and III (Trial Tr. [vol. I–III] ___.)

- May 12, 2010 Sentencing Transcript (Sent. Tr. ___.)

## GROUNDS OF UNCONSTITUTIONALITY OF
## PETITIONER'S CONVICTION AND SENTENCE

10.     This petition for a writ of habeas corpus contains the basic facts in support of the

constitutional issues presented by this case. A Memorandum of Law in support of the petition for

a writ of habeas corpus is being filed contemporaneously with this petition. On the constitutional

issues raised in this petition, the state court "adjudication of the claim . . . resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law

as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

11.     Mr. Baker was charged with murder in the second degree, N.Y. Penal Law §

125.25 (McKinney 2012). It was alleged that on October 6, 2007, Mr. Baker and two other

individuals stole the wallet of a stranger, later identified as Mr. Ramiro Ramos-Luna, before one

of those individuals, not Mr. Baker, pushed Mr. Ramos-Luna down a flight of stairs, to his death.

**Attorney Patrick Bruno is Appointed to Represent Sean Baker, but Fails to Meet or Communicate with Mr. Baker in Advance of Trial**

12.     Attorney Patrick Bruno was first appointed to Mr. Baker's case in 2008, and that is when they first met, via video conference.  (*See* Ex. C-6, Baker Aff. ¶ 17.)  In the two years between that meeting and trial, Mr. Bruno met with Mr. Baker (outside of mandatory court appearances) for a total of no more than forty-five minutes.

13.     For those two years, Mr. Bruno ignored Mr. Baker's repeated calls and neglected to provide any updates or documentation related to his case—some of which Mr. Baker explicitly requested, and to all of which he was constitutionally entitled.  (*See id.* ¶ 23.)  Mr. Bruno did not explain the case against Mr. Baker or the possible sentences that he faced— including a sentence of life imprisonment.  (*See id.* ¶¶ 19, 29–33.)

14.     Crucially, Mr. Bruno never explained to Mr. Baker what the felony-murder rule was, or that, as a result of that rule alone, Mr. Baker could be convicted of murder even though it was uncontrovertibly a codefendant who pushed Mr. Ramos-Luna to his death.  Without a basic understanding of the felony-murder doctrine, Mr. Baker was unable to appreciate the strength of the case against him or properly weigh his sentencing exposure—stripping him of any ability to make informed decisions about his case.  (*See id.* ¶¶ 17, 19, 24, 29.)  The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, s*ee* U.S. Const. Amend. VI, and Mr. Bruno denied Mr. Baker the benefit of this constitutional right by failing to counsel him in advance of trial.

**The Court Ignores Mr. Baker's Timely Motion for New Counsel**

15.     On November 22, 2008, Mr. Baker filed a pro se Motion for Reassignment of Counsel in order to obtain a new lawyer.  (*See* Ex. C-5, Marshall Aff. Ex. C ("Mot. for New Counsel").)  In his motion, Mr. Baker argued that his case had been pending for over nine

months, during which Mr. Bruno had failed to visit him at his place of confinement, failed to

inform him of any pertinent motions made, failed to conduct an investigation of the matter on his

behalf, and failed to make any bail requests or reduction applications. (*See id.* ¶ 6.)

16.     For reasons unknown, the court never addressed the motion or acknowledged its

filing. (*See* Ex. C-6, Baker Aff. ¶ 26.) Mr. Baker, an indigent defendant with no knowledge of

legal procedure—and certainly no one to aid him in his attempts to secure proper counsel—

assumed, as any person in his position would, that the court had denied the motion. (*See id.*)

Unaware that the court was required to entertain the motion in his presence, and understandably

hesitant to raise the issue in open court on his own volition—at the risk of upsetting the judge

who would preside over his case, and before the very counsel he was trying to replace—Mr.

Baker thought he was out of options. (*See id.*) Had he known that he could raise the motion on

his own, Mr. Baker would have done exactly that. (*See id.*)

17.     The court's failure to consider Mr. Baker's motion for new counsel was not only

detrimental to his case, but a violation of his Sixth Amendment right to counsel.

**Mr. Bruno Fails to Advise Mr. Baker on His Plea Offer**

18.     At a pretrial hearing on January 13, 2010, Mr. Baker was asked whether he would

plead guilty to a charge of manslaughter in exchange for a fourteen-year sentence, with five

years of post-release supervision. (*See* Jan. 13, 2010 Hr. Tr. 10:10–10:17.) This was the first

time Mr. Baker was told about a plea offer. (*See* Ex. C-6, Baker Aff. ¶ 27.) Mr. Bruno had

never mentioned a plea offer to Mr. Baker before the pretrial hearing at which it was offered.

(*Id.* ¶ 28.) Despite never having discussed the plea with Mr. Baker, and barely having discussed

the case at all, Mr. Bruno did not ask the court for any time to speak with his client about the

offer. (*See* Jan. 13, 2010 Hr. Tr. 10:10–12:17.)

19.     At this most critical moment, when Mr. Baker's vulnerability and need for counsel were greatest, Mr. Bruno offered Mr. Baker no advice regarding whether he should accept the offer, nor did he even think to ask if Mr. Baker understood the offer.  (Ex. C-6, Baker Aff. ¶¶ 28–31.)  Mr. Bruno did not explain the crucial difference between determinate and indeterminate sentences; the evidence the People would bring against him; that he faced a life sentence, even though he wasn't the one to push the victim; or his slim chances of prevailing at trial in view of all of these considerations.  (*See id.*)

20.     Forced to make this critical decision on the spot, without the information or advice needed to make a knowing and informed decision, Mr. Baker rejected the plea offer.  (*See id.* ¶ 34; Jan. 13, 2010 Hr. Tr. 10–12.)  Mr. Baker maintains that had he known any of the above facts, or received adequate counsel, he would have pleaded guilty.  (*See id.* ¶ 34.)

21.     Mr. Baker suffered a constitutional violation due to lack of effective counsel at the plea-bargaining stage.  *See United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (noting that the Sixth Amendment right to counsel attaches with full force at the plea-bargaining stage)

**The Court Excludes Mr. Baker from a Critical Hearing**

22.     On April 6, 2010, the day before jury selection, the prosecutor moved for two protective orders pursuant to N.Y. CPL § 240.50.  (*See* Trial Tr. I 15–16.)  The first was sought in connection with a housing benefit being offered to the only two known eyewitnesses in the case—Denise and Barbara Coles—in exchange for their testimony against Mr. Baker and his codefendants.  The second related to the identity of a previously undisclosed witness, later identified as Osvaldo (and later, Orlando) Vargas.  Asked to articulate his reasons for excluding the defendants from the hearing regarding the protective order, the state prosecutor selected from a list of boilerplate options: "We'll go with danger of physical harm . . . .  We can go law

enforcement, legitimate needs to be protected and security of the individual." (*Id.* 23.)  Based on nothing more than this rote rationale, the court determined that it would hear the prosecution's protective-order applications outside Mr. Baker's presence.  (*See id.* at 26:14–32:18.)

23.     Although Mr. Baker's and his codefendant's attorneys were permitted to attend the hearing, they had almost no information about the subject matter of the hearing and were prohibited from sharing anything discussed at the hearing with their clients.  (*Id.* 31.)  None of the defendants were consulted or asked for consent.

24.     Only outside Mr. Baker's presence did the prosecution disclose the full basis for its applications for protective orders.  First, the prosecution revealed that Barbara and Denise Coles would receive new housing.  (*See id.* 27–29.)  According to the uncontested statements by the prosecution, the Coles' relocation was necessary because of supposed threats by an unknown person named "Day-Day." (*See id.*)  Along those lines, Barbara Coles had apparently been approached by "somebody [who] tried to get her into an alley to discuss her testimony when she went out for a cigarette one night, and that was causing her great concern." (*See id.* 28:13–18.) Based on these threats, which bore no relation to Mr. Baker, the prosecution argued that a protective order was required to keep their identities secret—including from Mr. Baker—so that no one seeking to harm them would discover that they would be moved.  (*Id.* 28:19–29:17.)  The prosecution did not assert, and had no reason to believe, that Mr. Baker had anything to do with the supposed threats.

25.     Next, the prosecutor revealed that a man named Osvaldo Vargas had told police that  he "had seen three guys rob a Mexican on that morning and throw him down a flight of stairs."  (*See id.* 28:20–25.)  Since that tip, Mr. Vargas had not visited the prosecutor at his office or returned his two phone calls, but there was no evidence that Mr. Vargas' elusiveness had

anything to do with threats or fears for his safety.  (*See id.* 30:3–25.)  Without more, the prosecutor asserted that a protective order was justified.

26.     On this meager showing, the trial court granted each application and prohibited counsel from disclosing any information from the hearing to Mr. Baker. (*See id.* 31:10–14.)  Aside from learning that two protective orders were granted, Mr. Baker was told nothing of the effect of those orders or of their factual basis.  (*See id.* 31–33.)

27.     The right to presence is so fundamental that it finds its roots in two constitutional guarantees—the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth.  *See Tennessee v. Lane*, 541 U.S. at 532.  Excluded from a critical hearing that happened behind closed doors and unable to confront his accusers, Mr. Baker was denied both of these constitutional guarantees.

**Mr. Bruno Abandons Mr. Baker at Sentencing**

28.     Mr. Baker's sentencing proceeding was held on May 12, 2010.  Prior to the sentencing hearing, Mr. Bruno was provided with a copy of the Pre-Sentence Report (the "PSR").  (*See* Ex. C-5, Marshall Aff. Ex. E.)  The PSR was littered with errors, but Mr. Bruno did not attempt to correct a single one; in fact, he failed to even share the PSR with Mr. Baker or conduct his own investigation.  (*See* Ex. C-6, Baker Aff. ¶¶ 39–41.)  For example, the PSR stated that the defendant "caused the death of Ramiro Ramos-Luna, by throwing him down a flight of stairs," despite uncontroverted testimony that Mr. Allick, and not Mr. Baker, pushed Mr. Ramos-Luna down the stairs.  (*See* Ex. C-5, Marshall Aff. Ex. E, at 2; Trial Tr. I 384:4–22; Trial Tr. II 12:8–11.)  In addition, the PSR inexplicably stated that Mr. Baker was a member of "The Bloods" gang, even though Mr. Baker is not, and never has been, a member of any gang.  (*See id.* at 3; Ex. C-6, Baker Aff. ¶ 44.)  The prosecutor mentioned on the record that "[the

prosecution] had discussions with defense counsels [*sic*], [and] there may be one or two slight inaccuracies as they were recounted by the probation report," but Mr. Bruno never mentioned or specified, let alone corrected, any of them for the court.  (*See* Sent. Tr. 3:19–5:12.)

29.     After the prosecutor argued for the maximum possible sentence, the court provided Mr. Bruno an opportunity to speak on Mr. Baker's behalf.  (*See* Sent. Tr. 5:6–12.)  The errors in the prosecutor's description of the case were egregious and demonstrably prejudicial. (*Id.*)  For instance, he misleadingly claimed that the "responsibility for the death of the deceased is directly attributable to both defendants equally" (*id.* 4:18–19), when the evidence showed that only Mr. Allick was responsible for pushing Mr. Ramos-Luna to his death.  (*See* Trial Tr. I 384:4–22; Trial Tr. II 12:8–11.)  Mr. Bruno did not correct the errors in the prosecutor's description of the case or even explain that, despite what the PSR said, Mr. Baker was not the one to physically cause Mr. Ramos-Luna's death.  (*Id.* 5:6–12.)

30.     Despite the significant mitigating evidence that existed, Mr. Bruno presented none; in fact, much of it was unknown to Mr. Bruno, due to his own failure to inquire about or investigate Mr. Baker's life circumstances.  (*See id.*; Ex C-6, Baker Aff. ¶¶ 40–42, 46, 49.)  Mr. Bruno made no suggestion of his own as to an appropriate sentence; made no request for leniency, despite Mr. Baker's young age; and did not address the prosecutor's request for the maximum possible sentence.  (*See id.* ¶¶ 39–50.)

31.     The full extent of Mr. Bruno's advocacy at sentencing consisted of a single statement against Mr. Baker's interest:

> Your Honor, there is nothing I could add.  You were present for the jury trial, you obviously paid very careful attention.  I would be foolish to rehash any facts at this time. (Sent. Tr. 5:18–11.)

32.     Mr. Bruno also failed to explain to Mr. Baker that he could make his own

statement and that it would be beneficial for him to do so.  (*See* Ex. C-6, Baker Aff. ¶ 39.)  When

the court asked if he wanted to make a statement, Mr. Baker was unprepared and unsure whether

speaking would help or hurt his chances.  (*See id.* ¶ 50.)   Though sincerely remorseful about Mr.

Ramos-Luna's death, Mr. Baker did not express his feelings to the court, having yet again been

left to make a crucial decision without any aid from counsel.  (*See id.*; Sent. Tr. 5:13–15.)

33.     A criminal defendant's Sixth Amendment right to "effective assistance from his

attorney at all critical stages in the proceeding" extends to sentencing, *see Gonzalez v. United*

*States*, 722 F.3d 118, 130 (2d Cir. 2013), and Mr. Baker was denied effective assistance—

indeed, any assistance at all—during his sentencing.

**Mr. Bruno Fails to Present Mitigating Evidence**

34.     In preparation for trial and sentencing, Mr. Bruno never asked Mr. Baker any

questions about his family or upbringing (*see* Ex. C-6, Baker Aff. ¶ 25) and never spoke with his

mother or any other family member about his trying past.  (*See* Ex. C-7, Lewis Aff. ¶¶ 12, 23.)

Although Mr. Baker's mother took it upon herself to call Mr. Bruno several times, Mr. Bruno

was rarely available and never returned her messages.  (Ex. C-7, Lewis Aff. ¶ 4.)

35.     In truth, Mr. Baker's mother struggled financially and emotionally while raising

Mr. Baker and his six siblings.  (*See* Ex. C-6, Baker Aff. ¶ 5; Ex. C-7, Lewis Aff. ¶ 13.)  Mr.

Baker was shuffled in and out of domestic-violence shelters and foster homes for nearly his

entire childhood (*see* Ex. C-6, Baker Aff. ¶¶ 5, 6–8; Ex. C-7, Lewis Aff. ¶¶ 15–16), beginning at

the age of five, when he was placed in foster care because of family court accusations that his

mother burned his sister.  (*See* Ex. C-6, Baker Aff. ¶¶ 7–10.)  Separated from his siblings and

abused by his foster family, Mr. Baker suffered through his time in foster care, the lasting effects

of which have required counseling.  (Ex. C-6, Baker Aff. ¶ 9; Ex. C-7, Lewis Aff. ¶¶ 16–18.)

After Mr. Baker returned to his mother's home at the age of seven, he and his siblings were

physically and psychologically abused by his father, who had a history of substance abuse.  (*See*

Ex. C-6, Baker Aff. ¶ 6; Ex. C-7, Lewis Aff. ¶ 14.)  When Mr. Baker was twelve years old, his

father left the family altogether (*see* Ex. C-7, Lewis Aff. ¶ 14), and Mr. Baker spent the rest of

his childhood and early teen years living in shelters, changing schools at least ten times.  (*See* Ex.

C-6, Baker Aff. ¶¶ 11, 13–16; Ex. C-7, Lewis Aff. ¶ 14.)  Knowing nothing of Mr. Baker's

hardships—because he had never bothered to ask—Mr. Bruno presented none of this information

to the court.

## REQUIRED INFORMATION

36.     There are no petitions or appeals pending presently in any state or federal court

relating to the judgment under attack.  Mr. Baker was represented by the following attorneys:

     a.   In the trial court by Patrick Bruno, Esq., since deceased.

     b.   On appeal, by Richard Greenberg, of the Office of the Appellate Defender.

37.     Mr. Baker is not serving any sentence other than the sentence under attack in this

proceeding.

WHEREFORE, Petitioner Sean Baker prays that this Court:

    1.  Issue a writ of habeas corpus to have Petitioner brought before it to the end that he may be discharged from his unconstitutional confinement;

    2.  Require Respondent to furnish a transcript of the entire trial and state post-conviction record pursuant to Rule 5 of the Rules Governing § 2254 Cases in the United States District Courts; and

    3.  Grant such other and further relief as may be just and proper.

Dated:  New York, New York
        January 18, 2018

<div style="margin-left: 40%;">

JOSEPH M. NURSEY, ESQ.
JNursey@appellatedefender.org
OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY 10007
(212) 402-4100

By: _____
     Ryan W. Cooke
     *Of Counsel*

RYAN W. COOKE, ESQ.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
Ryan.cooke@davispolk.com

*Attorneys for Petitioner*

</div>

I declare under penalty of perjury that the facts contained in the foregoing Petition for a Writ of *Habeas Corpus* are true and correct.

_____

SEAN BAKER
Petitioner

DATED:      Pine City, New York
            December 18, 2017

Sworn to me this 18ᵗʰ day of December, 2017.

_____
NOTARY PUBLIC

ROSEMARY HERBERT
Notary Public, State of New York
No. 02HE5083769
Qualified in Westchester County
Commission Expires August 25, 2021

*State of New York*
*Court of Appeals*
*Judges Chambers*

October 26, 2016

Jacob Gardener, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Re: <u>People v Sean Baker</u>

Dear Mr. Gardener:

Enclosed you will find a copy of an Order denying the application for permission to appeal to the Court of Appeals.

Very truly yours,

EUGENE M. FAHEY
ASSOCIATE JUDGE
NEW YORK STATE COURT OF APPEALS

EMF/mkw
Enclosure
cc: Emily Anne Aldridge, ADA

# State of New York
# Court of Appeals



BEFORE:  HON. EUGENE M. FAHEY,
           Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                           Respondent,       **ORDER**

          -against-                               **DENYING**

SEAN BAKER,                                     **LEAVE**

                            Appellant.

---

      Appellant having applied for leave to appeal to this Court pursuant to Criminal

Procedure Law § 460.20 from an order in the above-captioned case;*

      UPON the papers filed and due deliberation, it is

      ORDERED that the application is denied.

Dated:  OCT 2 4 2016
        at Buffalo, NY

                                    EUGENE M. FAHEY
                                    Associate Judge

*Description of Order:  Order of the Supreme Court, Appellate Division, First
Department, entered May 26, 2016, affirming (1) a judgment of the Supreme Court,
Bronx County, rendered May 12, 2010 and (2) an order of the same court entered on or
about September 3, 2014.



State of New York
Court of Appeals
Judge's Chambers

BUFFALO
NY 140
26 OCT '16
PM 5 L

$ 000.46⁵

Jacob Gardener, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017





**OFFICE OF THE DISTRICT ATTORNEY, Bronx County**

**DARCEL D. CLARK**
*District Attorney*

198 East 161st Street
Bronx, New York 10451

(718) 838-7091
Fax 590-6523

August 18, 2016

The Honorable Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, NY 12207

Re:  People v. Sean Baker
Bronx Indictment No. 770/2008

Dear Judge Fahey:

Please accept this letter in opposition to defendant's current application for leave to appeal to the Court of Appeals, in which he contends that the Court should review whether the Appellate Division properly upheld the denial of defendant's claim of ineffective assistance of counsel.  For the following reasons, the application should be denied.

Defendant's case is factually driven, and raises no legal issue requiring clarification.  Defendant challenges the First Department's application of well settled precedent to the particular facts of his case.  See People v. Samandarov, 13 NY3d 433, 436 (2009) ("We review the decisions to deny hearings on both the CPL article 330 and the CPL article 440 motions for abuse of discretion"); People v. Satterfield, 66 NY2d 796, 799 (1985) (noting that "Defendant must show that the nonrecord facts sought to be established are material and would entitle him to relief" and finding that "no hearing was required because, given the nature of the claimed ineffective assistance, the motion could be determined on the trial record and defendant's submissions on the motion").  This is not a case raising statewide principles, and is rather an individual factual dispute.

Both the trial court, which also decided defendant's CPL § 440 motion, and the Appellate Division noted that defendant's factual assertions against his now-deceased trial counsel, which include assertions made before this Court, are

inconsistent, self-contradictory, and uncorroborated. The record makes clear that defendant was aware of the pre-trial plea offer. Defendant's own affirmation admits that he was not interested in a plea offer, that he knew precisely what evidence would be used against him, and that it was his attorney who furnished this information. Regarding sentencing, even after his conviction, defendant refused to accept responsibility for his actions which led to an innocent man's death. Despite this, he received less than the maximum sentence.

In sum defendant's case does not present an issue that may warrant the granting of leave. Therefore, leave should be denied. Thank you for your time and consideration in this matter.

Respectfully submitted,

EMILY ANNE ALDRIDGE
Assistant District Attorney

cc:
Richard M. Greenberg
Office of the Appellate Defender
11 Park Place, Suite 1601
New York, NY 10007



**OAD** | OFFICE OF THE APPELLATE DEFENDER

11 Park Place, Suite 1601, New York, NY 10007 | Tel. 212 402 4100 | Fax 212 402 4199

www.appellatedefender.org

Richard M. Greenberg
Attorney-in-Charge

August 8, 2016

Hon. Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207

   Re: People v. Sean Baker
     (Application for Leave to Appeal)

Dear Judge Fahey:

By letter dated July 18, 2016. I have been notified that Sean Baker's application seeking leave to appeal to the Court of Appeals has been assigned to Your Honor. This letter is intended to supplement Mr. Baker's application, dated July 7, 2016, explaining why leave should be granted. Copies of the briefs and the Appellate Division's decision were forwarded with the original application.

This case presents the Court with the opportunity to review an egregious case of ineffective assistance of counsel, in which a neglectful attorney failed to provide a constitutionally-acceptable level of advocacy. The record reflects that defense counsel continually failed to provide effective assistance of counsel throughout the proceedings, but most significantly at two critical stages: (1) the pre-trial plea offer and (2) the sentencing proceeding. Specifically, this Court should determine whether a hearing is required in a post-judgment motion raising ineffective assistance of counsel claims, where there are factual issues which, if resolved in favor of the defendant, would constitute grounds for relief. *See People v. Jones*, 24 N.Y.3d 623 (2014) (holding that court abused discretion in denying post-judgment hearing where defendant's papers made out prima facie showing). This Court's review is particularly critical since the United States Supreme Court made clear that an attorney must provide effective representation during the plea bargaining stage of the criminal process. *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Missouri v. Frye*, 132 S.Ct. 1399 (2012). This Court has not yet considered the application of *Lafler* and *Frye* in New York.

In this case, Mr. Baker faced a felony murder charge and was ultimately convicted and sentenced to twenty years to life in prison. The People's evidence against Mr. Baker and his two co-defendants included video surveillance of the crime and two witnesses who testified to the three defendants' roles in the crime. Unsurprisingly, one of Mr. Baker's co-defendants accepted a plea offer of an eight year determinate sentence. By contrast, Mr. Baker, seventeen years old at the time of arrest, rejected a plea offer despite the strength of the People's case. He did so because his lawyer failed to explain the complicated issue of felony murder to Mr. Baker. As a result, Mr. Baker was under the misimpression that he could not be found guilty of murder given his allegedly minimal role in the underlying robbery. Nor did defense counsel inform Mr. Baker of his sentencing exposure, or how the determinate sentence offered in exchange for a plea was different, and infinitely more favorable, than the indeterminate life sentence he would receive if convicted of murder.

It was his attorney's responsibility to explain the intricacies of the felony murder rule, plea options, sentencing exposure, and the strength of the case against Mr. Baker. Instead, defense counsel's few brief interactions with his client and the court only hindered Mr. Baker's case, and Mr. Baker's uninformed choices persisted throughout the trial and sentencing. Moreover, at sentencing, defense counsel provided absolutely no advocacy on behalf of his client. Despite the existence of significant mitigation evidence, as set forth in the C.P.L.§ 440.10 motion, and despite the fact that Sean Baker was the least culpable of the three defendants, defense counsel failed to make any argument or request a sentence less than the maximum.

As a direct result, Mr. Baker was denied his constitutional right to effective assistance of counsel. Based on the sworn allegations in his C.P.L § 440.10 motion, the court should have at least granted a hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2007, at about 1:30 a.m., a grainy surveillance video captured three young men approaching a male victim, Ramiro Ramos-Luna, who was intoxicated and being ejected from a restaurant in Bronx County. The video appears to show the three young men surrounding the victim and walking out of range of the camera. When the officers and paramedics arrived on the scene, they found the unresponsive Mr. Ramos-Luna at the bottom of a stairway outside a store. Mr. Ramos-Luna succumbed to his injuries. Two witnesses later identified the individuals on the video camera as Mr. Baker and his two co-defendants, Michael Allick and Kareem Warner, people known to the witnesses. According to the witnesses, the three young men appeared to steal Mr.

Ramos-Luna's wallet, and Mr. Allick subsequently pushed the victim, causing him to fall down a flight of stairs. Mr. Baker was arrested in 2008 in connection with the crime.

Before trial, one of Mr. Baker's co-defendants, Mr. Warner, accepted a plea agreement to first-degree robbery in exchange for a determinate sentence of eight years with five years' post-release supervision. In his plea allocution, Mr. Warner admitted that he was responsible for stealing Mr. Ramos-Luna's wallet, and stated that Mr. Allick—not Mr. Baker—pushed the victim down the stairs. Mr. Allick and Mr. Baker proceeded to trial.

Mr. Baker first met his attorney, Patrick Bruno, via video conference in 2008. In the next two years leading up to Mr. Baker's trial and ultimate conviction, Mr. Bruno met with him for a total of approximately forty-five minutes outside of scheduled court appearances. Throughout this time, Mr. Bruno did not answer any of Mr. Baker's calls, nor did he provide any of the documents or information that Mr. Baker requested. Aware of Mr. Bruno's failures to provide him with advice or counsel, Mr. Baker did not remain silent as to his lawyer's deficiencies: He alerted the trial court through a motion requesting new counsel. That motion for new counsel, although filed with the court, was never addressed by the trial court.

### The Plea Offer

Prior to the commencement of trial, and similar to his co-defendant, Kareem Warner, Mr. Baker was offered a plea bargain for a determinate sentence of fourteen years. At this most critical moment of Mr. Baker's case, Mr. Bruno failed to provide any advice or counsel. Mr. Bruno did not explain the charges against Mr. Baker, the People's overwhelming evidence, his defense strategy for trial, or the slim chances of success at trial. He did not properly educate Mr. Baker regarding the felony murder rule, and Mr. Baker was unaware that he could face a murder conviction for participation in the underlying robbery. Nor did Mr. Bruno explain the possible sentence exposure that Mr. Baker faced at trial. Specifically, he did not discuss the distinction between determinate and indeterminate sentences, and in particular an indeterminate *life* sentence, which eventually proved to be a critical aspect of Mr. Baker's fate at sentencing. Mr. Baker, a teenager, did not even minimally understand the risks of going to trial, and his choice to reject the plea was made without effective assistance of counsel.[1]

---

[1] The facts pertaining to defense counsel's interactions with, and advice to, Mr. Baker are contained in Mr. Baker's sworn affidavit, submitted in connection with his C.P.L. § 440.10 motion to vacate the conviction. A copy of the Appendix to Mr. Baker's application for leave to appeal from the denial of the § 440.10 motion to the Appellate Division is enclosed for the

The Sentencing

Mr. Baker's trial commenced on April 14, 2010. At trial, defense counsel took an entirely passive role. At the close of the jury trial, Mr. Baker was convicted of one count of felony murder. Mr. Baker's sentencing proceeding was held on May 12, 2010.

Mr. Bruno was provided with a pre-sentencing report which contained several errors, including the assertion that it was Mr. Baker who caused the death of the victim by throwing him down the stairs, even though it was Mr. Allick, and not Mr. Baker, who ultimately pushed the victim. The pre-sentencing report also contained an allegation that Mr. Baker was a member of "The Bloods" gang, even though Mr. Baker is not, and has never been, a member of any gang, and no evidence was introduced at trial to suggest otherwise. Counsel did not share the pre-sentencing report with Mr. Baker, nor did he correct the errors on behalf of his client. Indeed, Mr. Bruno did not once contact Mr. Baker or his mother prior to sentencing, and he failed to marshal any evidence in support of leniency.

After the prosecutor presented an argument for the maximum sentence, Mr. Bruno was provided an opportunity to speak on Mr. Baker's behalf. Instead of providing mitigating evidence, correcting the errors in the prosecutor's description of the case, or explaining Mr. Baker's minimal role in the crime, counsel stood up and offered only three sentences:

> Your Honor, there is nothing I could add. You were present for the jury trial, you obviously paid careful attention. I would be foolish to rehash any facts at this time.

Sentencing Tr. 3-5.[2]

With this brief address to the court, Mr. Bruno voiced the only statement made in Mr. Baker's defense at sentencing—a statement that arguably hindered, rather than helped, his client's defense. Mr. Bruno did not explain to Mr. Baker that he would have the opportunity to make a statement of his own, nor did he explain how it would be beneficial for him to express his remorse. Accordingly, when the court asked if he had a statement to make, Mr. Baker was unprepared and chose not to speak. With a pre-sentencing report replete with errors, an impassioned argument from the prosecutor, and a

---

Court's reference and convenience. It contains all of the papers submitted in connection with the § 440.10 motion, as well as the court's decision denying the motion.

[2] The Sentence Transcript is contained within the Criminal Procedure Law § 440.10 Leave Application Appendix. The Sentence Transcript may be found at Appendix G.

pathetic lack of advocacy from Mr. Bruno, the court sentenced Mr. Baker to twenty years to life in prison.

### The Motion to Vacate the Conviction

On April 15, 2014, Mr. Baker filed a motion pursuant to C.P.L. §440.10(1) to vacate the judgment of conviction on the grounds that it was obtained in violation of the right to effective assistance of counsel. The motion argued that Mr. Bruno's failure to properly advise Mr. Baker regarding his plea offer and failure to perform any advocacy at Mr. Baker's sentencing hearing deprived Mr. Baker of effective assistance of counsel. Based solely on hearsay and unethical statements allegedly made by defense counsel to the prosecutor, and despite evidence on the record that defense counsel had failed to perform any advocacy at Mr. Baker's sentencing hearing, the trial court denied Mr. Baker's motion in its entirety without a hearing in an opinion and order dated September 3, 2014 (Appendix A).

### The Appeal

On appeal, Mr. Baker argued in part that he did not receive effective assistance of counsel at the plea or sentencing stages. The First Department affirmed Mr. Baker's conviction, finding that "[i]n all respects, defendant received effective assistance of counsel under the state and federal standards." *People v. Baker*, 139 A.D.3d 591, 592 (1st Dep't 2016). With respect to Mr. Baker's claim that counsel failed to provide effective representation in connection with the plea offer, the Appellate Division incorrectly concluded that Mr. Baker's affidavit was "inconsistent with the trial record, self-contradictory, uncorroborated by any other evidence, and otherwise without merit." *Id.* As to the claim regarding counsel's failure to provide any sentencing advocacy, the court, noting that Mr. Baker received less than the maximum possible term, held that Mr. Baker failed to show that "the additional steps he faults his counsel for omitting could have led to even greater leniency." *Id.*

## THE COURT SHOULD GRANT LEAVE TO APPEAL TO DETERMINE WHETHER MR. BRUNO'S COMPLETE LACK OF ADVOCACY REGARDING THE PLEA OFFER AND AT SENTENCING FELL BELOW THE CONSTITUTIONALLY REQUIRED STANDARD OF ADEQUATE REPRESENTATION

This Court should grant leave to determine whether defense counsel's failure to adequately advise Mr. Baker concerning the decision whether to accept the plea offer, and defense counsel's shocking lack of sentencing advocacy constituted ineffective assistance of counsel under the United States Constitution and New York State Constitution, and whether, at the least, the post-judgment motion court should have ordered a hearing into the allegations.

As mentioned above, Mr. Baker was deprived his right to counsel at two critical stages of the trial: (1) the pre-trial plea offer, and (2) the sentencing proceeding. At each end of the trial, defense counsel failed to provide a minimal level of adequate representation. Throughout, Mr. Baker's young age and limited education were impediments to his understanding of the charges and his ability to make a rational choice regarding the plea offer. Defense counsel failed to assist Mr. Baker overcome these obstacles.

At the plea bargaining stage, the United States Constitution and the New York State Constitution mandate that a criminal defense attorney (1) "advise the client of the advantages and disadvantages of a plea agreement," *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (internal quotation marks omitted); and (2) inform the client of the maximum sentence exposure the client faces if he decides to proceed to trial instead of accepting the plea, *see United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). In addition, the Supreme Court has made clear that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," *Frye*, 132 S.Ct. at 1348, and that a subsequent fair trial does not cure "any deficient performance by defense counsel during plea bargaining," *Lafler*, 132 S.Ct. at 1388. Mr. Bruno did not fulfill any of these constitutional requirements—he failed to:

- advise Mr. Baker on the complicated concept of felony murder;

- clarify the differences between determinate and indeterminate sentences;

- convey the potential sentence Mr. Baker faced at trial;

- explain the overwhelming evidence against Mr. Baker, including the fact that the People would be able to show the surveillance video of the crime and two witnesses would testify to his role in the crime; or

Hon. Eugene M. Fahey                    Page 7                    August 8, 2016

- provide any other specific advice.

Instead, Mr. Baker received not a single word of counsel, and as a direct result, he was unable to make an informed decision to accept or reject the plea offer.

At the sentencing stage, Mr. Bruno's failure to even speak with Mr. Baker prior to sentencing alone was deficient under the Sixth Amendment requirement that counsel "consult with the defendant on important decisions and . . . keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Mr. Bruno did not provide a single word of advice in preparation for sentencing. As a direct result, Mr. Baker did not know that he would have the opportunity to state his remorse or regret on the record.

Furthermore, Mr. Bruno's failure to provide effective assistance of counsel at sentencing did not end at a mere lack of communication. The litany of missteps only continued:

- Mr. Bruno failed to correct the errors in Mr. Baker's pre-sentencing report. *See Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (finding ineffective assistance where counsel did not investigate beyond defendant's presentence report and government records). Instead, he allowed significant mistakes to remain in the record with respect to his client's participation in the crime, including the assertion that Mr. Baker pushed the victim down the stairs, which was not established at trial and was refuted by Mr. Warner's plea allocution.

- Mr. Bruno ignored his duty to investigate Mr. Baker's background and did not speak with a single friend or family member about Mr. Baker's upbringing. *See People v. Oliveras,* 21 N.Y.3d 339, 346 (2013) ("Essential to any representation, and to the attorney's consideration of the best course of action on behalf of the client, is the attorney's investigation of the law, the facts, and the issues that are relevant to the case."). In failing to marshal evidence, counsel failed to apprise the court about the history of abuse and foster care that Mr. Baker suffered as a child. These circumstances are exactly the type of factors that courts routinely consider in determining sentencing. *See, e.g., People v. Skeffery*, 188 A.D.2d 438, 439 (1st Dep't 1992).

- Mr. Bruno failed to put forth any evidence that demonstrated Mr. Baker's capacity for rehabilitation. Mr. Baker was only 17 years old at the time of the offense, and there was no evidence to suggest he was incapable of turning his life around. Had he investigated at all, defense counsel would have discovered that Mr. Baker had the full support of his mother and was capable of rehabilitation.

- Mr. Bruno did not raise Mr. Baker's non-violent role in the crime, which established that Mr. Baker neither took the victim's wallet nor caused or anticipated any physical harm that led to the victim's death. While Mr. Baker's involvement in the crime may have been sufficient to meet the necessary elements of felony murder, his level of culpability remained relevant and essential at sentencing.

Instead of addressing any of these mitigating factors at sentencing, Mr. Bruno essentially pronounced that he would *not* advocate for his client! As a result, Mr. Baker likely received a more severe sentence than he would have had counsel made any reasonable effort at advocacy.

In light of the above, this Court should grant leave to consider (1) the application of *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, 132 S.Ct. 1399 (2012) to New York State's plea bargaining process; (2) counsel's duty of effective assistance of counsel at sentencing; and (3) whether, at the very least, a hearing should be held on the C.P.L. § 440.10 motion.

\*     \*     \*

In addition to the issue discussed above, leave should be granted on the following claims:

- Mr. Baker was denied his constitutional and statutory right to be present when he was improperly excluded from a critical hearing. *See* U.S. Const. amend. VI, XIV; N.Y. Const. art. 1 § 6; App. Brief, Point I.

- Mr. Baker was denied his right to counsel when the trial court failed to consider or even address Mr. Baker's motion for new counsel. *See* U.S. Const. amends. VI, XIV; N.Y. Const. art. I, § 6.; App. Brief, Point II.

\*     \*     \*

Finally, because of the importance of the issues raised in this application, I respectfully request an opportunity to further argue, in an in-person or telephone conference, why leave should be granted.

Hon. Eugene M. Fahey                Page 9                    August 8, 2016

Thank you for your consideration.

Respectfully yours,

RICHARD M. GREENBERG
Attorney for Defendant-Appellant Sean Baker

OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY 10007
(212) 402-4100

BY: SOFIA A. VITIELLO
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

Enc.

Cc:    (without enclosures)
       Assistant District Attorney Emily A. Aldridge
       Office of the District Attorney, Bronx County

New York    Paris
Menlo Park    Madrid
Washington DC    Tokyo
São Paulo    Beijing
London    Hong Kong

# **Davis Polk**

Jacob Gardener

Davis Polk & Wardwell LLP    212 450 3289 tel
450 Lexington Avenue    212 701 6289 fax
New York, NY 10017    jacob.gardener@davispolk.com

July 7, 2016

Hon. Janet DiFiore
Chief Judge
Court of Appeals
20 Eagle Street
Albany, New York 12207

> Re:    <u>People v. Sean Baker</u>
> (Application for Leave to Appeal)

Your Honor:

Sean Baker respectfully prays for the issuance of a certificate, pursuant to N.Y. Crim. Proc. Law § 460.20, granting permission to appeal and certifying that there is a question of law in the above-entitled case which ought to be reviewed by the Court of Appeals. Mr. Baker requests that an appeal be allowed to this Court from the order of the Supreme Court, Appellate Division, First Department, entered on May 26, 2016. This order, with notice of entry, was served by respondent by mail upon Mr. Baker on June 9, 2016.

The order of the Appellate Division affirmed the judgment of the Supreme Court, Bronx County (Gross, J.), rendered on May 12, 2010, convicting defendant, after a jury trial, of murder in the second degree and sentencing him to a term of 20 years to life. The order of the Appellate Division also affirmed the order, same court and Justice, entered on or about September 3, 2014, which denied Mr. Baker's C.P.L. § 440.10 motion to vacate the judgment. No application for leave to appeal has been made to any justice of the Appellate Division.

There were two co-defendants. Kareem Warner pled guilty before trial to robbery in the first degree, and was sentenced to 8 years in prison. He did not appeal. Michael Allick was tried with Mr. Baker and was convicted of murder in the second degree and was sentenced to 25 years to life. His conviction was affirmed and leave to this Court was denied. *People v. Allick*, 92 A.D.3d 588 (1st Dep't 2012), *leave denied*, 18 N.Y.3d 991 (2012).

Mr. Baker respectfully requests the opportunity to file a supplemental letter with the judge to whom this matter is assigned, addressing in greater detail the reasons why the Court should review his case and how the issues are preserved for the Court's review.

Copies of the Appellate Division's order and opinion and all briefs submitted below are enclosed.

#88622925v2

**DavisPolk**

Respectfully Yours,

Jacob Gardener
Attorney for Defendant-Appellant Sean Baker

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(450) 450-3289

Richard M. Greenberg
Attorney for Defendant-Appellant Sean Baker

OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY 10017
(212) 402-4100

Enclosures

cc:      (without enclosures)
         Assistant District Attorney Emily Anne Aldridge
         Office of the District Attorney, Bronx County

Sweeny, J.P., Acosta, Manzanet-Daniels, Gische, Gesmer, JJ.

1065-     The People of the State of New York,          Ind. 770/08
1065A                    Respondent,

                    -against-

           Sean Baker,
                Defendant-Appellant.
           _____

Richard M. Greenberg, Office of the Appellate Defender, New York
(Katherine H. Marshall of counsel), and Davis Polk & Wardwell
LLP, New York (Jacob Gardener of counsel), for appellant.

Darcel D. Clark, District Attorney, Bronx (Emily Anne Aldridge
of counsel), for respondent.
           _____

    Judgment, Supreme Court, Bronx County (Michael A. Gross,

J.), rendered May 12, 2010, convicting defendant, after a jury

trial, of murder in the second degree, and sentencing him to a

term of 20 years to life, and order, same court and Justice,

entered on or about September 3, 2014, which denied his CPL

440.10 motion to vacate the judgment, unanimously affirmed.

    The court did not violate defendant's right to be present at

a material stage of trial when it excluded him, but not his

attorney, from a hearing regarding protective orders delaying

certain discovery.  Defendant has not shown that his presence

would have been useful, and his various arguments about his

ability to contribute are unpersuasive.  In any event, any

potential for input from defendant was outweighed by valid

concerns for the witnesses' safety, underlying the need for defendant's exclusion (*see People v Frost*, 100 NY2d 129, 135 [2003]).

Defendant abandoned his pro se motion for assignment of new counsel, not, as defendant puts it, by failing to make a "second" motion, but by failing to call the court's attention to the fact that the existing motion remained unresolved (*see People v Santos*, 14 AD3d 316 [1st Dept 2005], *lv denied* 4 NY3d 856 [2005]). There is no indication in the record that the court was even aware that this document existed. In any event, this typical standard form motion did not contain the specific factual allegations of serious complaints about counsel necessary to trigger the court's obligation to make a minimal inquiry (*see People v Porto*, 16 NY3d 93, 100-101 [2010]).

In all respects, defendant received effective assistance of counsel under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]). With regard to defendant's claim of ineffective assistance in the plea bargaining process, the court properly exercised its discretion in denying defendant's CPL 440.10 motion without holding a hearing (*see People v Samandarov*, 13 NY3d 433, 439-440 [2009]; *People v Satterfield*, 66 NY2d 796, 799-800 [1985]). Defendant's affidavit was inconsistent with the

trial record, self-contradictory, uncorroborated by any other

evidence, and otherwise without merit.  With regard to

defendant's claim of ineffective assistance in connection with

sentencing, defendant, who received a less than maximum sentence

despite the heinous facts of the crime, has not shown that the

additional steps he faults his counsel for omitting could have

led to even greater leniency.

      THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

      ENTERED:  MAY 26, 2016

_____
             CLERK

*To be argued by*
JACOB GARDENER

# Supreme Court of the State of New York

## Appellate Division – First Department

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

– against –

SEAN BAKER,

*Defendant-Appellant.*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

RICHARD M. GREENBERG
OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

JACOB GARDENER
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Appellant*

Bronx County Indictment No. 0770/08

PRINTED ON RECYCLED PAPER ♻

# TABLE OF CONTENTS

PAGE

ARGUMENT ................................................................. 1

POINT I. RESPONDENT FAILS TO JUSTIFY THE EXCLUSION OF MR. BAKER FROM THE APRIL 6 HEARING AND THE PROHIBITION AGAINST HIS DISCOVERING THE CRITICAL FACTS DISCLOSED AT THAT HEARING .................................................... 1

    A.    Mr. Baker Did Not Waive His Right to Presence ..................... 1

    B.    Mr. Baker's Failure to Timely Object Is Immaterial to His Right to Presence Argument ....................................... 2

    C.    The Alleged Threats Made to Barbara Coles Had No Connection to Mr. Baker and Did Not Justify His Exclusion from the Hearing and the Withholding of Information Disclosed at the Hearing ........................................... 7

POINT II. MR. BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL WHEN THE TRIAL COURT FAILED TO ADDRESS HIS MOTION FOR NEW COUNSEL ............................................. 12

    A.    Mr. Baker Was Not Required to Raise His Complaints Regarding His Counsel Twice in Order to Trigger the Trial Court's Duty to Investigate His Motion.................................. 12

POINT III. RESPONDENT FAILS TO ESTABLISH THAT MR. BAKER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL REGARDING A PLEA OFFER ............................................................. 15

    A.    Respondent Presents No Evidence That Mr. Baker's Counsel Provided Any Advice Whatsoever to Mr. Baker Regarding the Plea Offer .......................................... 15

    B.    Respondent Presents No Evidence That Mr. Baker Was Not Prejudiced by Mr. Bruno's Lack of Counsel Regarding the Plea Offer .......................................... 19

i

C.   The Trial Court's Denial of Mr. Baker's Motion Without a Hearing Constitutes Reversible Error ...................................... 20

POINT IV. RESPONDENT FAILS TO ESTABLISH THAT MR. BAKER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING ....................................................................... 21

A.   Mr. Bruno Failed to Inform Mr. Baker that Mr. Baker Could Express a Statement of Remorse or Regret at Sentencing ....... 22

B.   Mr. Bruno Had a Duty to Investigate and Marshal Mitigating Evidence ................................................................................. 24

C.   Mr. Bruno's Failure to Raise Mr. Baker's Role in the Crime at Sentencing Fell Below Any Objective Standard of Reasonable Representation ......................................................................... 26

CONCLUSION ............................................................................. 28

# TABLE OF AUTHORITIES

C<small>ASES</small>

<div align="right">P<small>AGE</small>(<small>S</small>)</div>

Blystone v. Horn,
    664 F.3d 397 (3d Cir. 2011) ..................................................... 25

Glover v. United States,
    531 U.S. 198 (2001) ................................................................. 22

Goldberg v. Tracy,
    247 F.R.D. 360 (E.D.N.Y. 2008), adhered to on reconsideration,
    No. 01-CV08454, 2008 WL 972721 (E.D.N.Y. Mar. 24, 2008),
    aff'd, 366 F. App'x 198 (2d Cir. 2010) ................................... 16

Lafler v. Cooper,
    132 S. Ct. 1376 (2012) ...................................................... 19, 20

Missouri v. Frye,
    132 S. Ct. 1399 (2012) ............................................................ 19

Padilla v. Kentucky,
    559 U.S. 356 (2010) .......................................................... 15, 16

People v. Andrades,
    2009BX051112, 2010 WL 1293791
    (Sup. Ct. Bronx Cty. Mar. 18, 2010) ..................................... 14

People v. Berry,
    15 A.D.3d 233 (1st Dep't 2005) ...................................... 13, 14

People v. Brown,
    No. 2533-2002, 2011 WL 1366641
    (N.Y. Sup. Ct. Bronx Cty. Jan. 13, 2011) .............................. 20

People v. Chen,
    293 A.D.2d 362 (1st Dep't 2002) ........................................... 21

People v. Frost,
  100 N.Y.2d 129 (2003) ..................................................................... 7, 8, 9

People v. Gonzalez,
  43 A.D.2d 914 (1st Dep't 1974) ...................................................... 24, 25

People v. Miller,
  102 A.D.3d 813 (2d Dep't 2013) ........................................................... 14

People v. Munzert,
  92 A.D.3d 1291 (4th Dep't 2012) .......................................................... 14

People v. Oliveras,
  21 N.Y.3d 339 (2013) ............................................................................ 25

People v. Parker,
  57 N.Y.2d 136 (1982) .............................................................................. 1

People v. Porto,
  16 N.Y.3d 93 (2010) ........................................................... 12, 13, 14, 15

People v. Robles,
  86 N.Y.2d 763 (1995) .............................................................................. 2

People v. Rosales,
  No. 2132-2001, 2009 WL 2496416
  (N.Y. Sup. Ct. Bronx Cty. July 10, 2009) ............................................ 20

People v. Santos,
  14 A.D.3d 316 (1st Dep't 2005) ............................................................ 13

People v. Saunders,
  301 A.D.2d 869 (3d Dep't 2003) ...................................................... 23, 24

People v. Schettino,
  113 A.D.2d 905 (2d Dep't 1985) ........................................................... 26

People v. Skeffery,
  188 A.D.2d 438 (1st Dep't 1992) .......................................................... 25

People v. Stella,
188 A.D.2d 318 (1st Dep't 1992) ............................................................ 24

People v. Stewart,
295 A.D.2d 249 (1st Dep't 2002) ............................................................ 21

People v. Velasquez,
1 N.Y.3d 44 (2003) .................................................................................. 2

Strickland v. Washington,
466 U.S. 668 (1984) ................................................................................ 22

<u>S<span>TATUTES</span> & R<span>ULES</span></u>

CPL § 240.50(1) ........................................................................................ 7

CPL § 260.20 ............................................................................................. 2

CPL § 440.10 ...................................................................................... passim

CPL § 440.30 ........................................................................................... 20

## ARGUMENT

## POINT I.

## RESPONDENT FAILS TO JUSTIFY THE EXCLUSION OF MR. BAKER FROM THE APRIL 6 HEARING AND THE PROHIBITION AGAINST HIS DISCOVERING THE CRITICAL FACTS DISCLOSED AT THAT HEARING

**A.    Mr. Baker Did Not Waive His Right to Presence**

Respondent asserts that Mr. Baker waived his right to be present at the April 6 hearing in the jury room.  (Resp. Br. at 11.)  This assertion is premised on a fundamentally flawed understanding of the concept of waiver.  As the Court of Appeals has repeatedly explained, a defendant can waive the right to be present, but he must do so "knowingly, voluntarily, and intelligently."  People v. Parker, 57 N.Y.2d 136, 140 (1982).  Here, Mr. Baker was never given the option to attend the hearing.  The court forbade it, and only permitted his attorney, Mr. Bruno, to attend under the condition that he "not share the disclosed information until immediately before those respective witnesses testified."  (Trial Tr. 25 (April 6, 2010).)  Under these circumstances, it is baseless to suggest that Mr. Baker voluntarily "chose" not to participate in the ex parte hearing.

1

## B.    Mr. Baker's Failure to Timely Object Is Immaterial to His Right to Presence Argument

Ignoring well-established law, Respondent further argues that Mr. Baker's failure to timely object to his exclusion from the April 6 hearing is fatal to his right to presence argument.  (Resp. Br. at 11.)  However, a defendant need not preserve his right to be present at his own trial.  Indeed, "CPL 260.20 provides that a defendant must be personally present during the trial of an indictment.  This statutory right extends to all material stages of the trial, including ancillary proceedings in which defendants' presence could have a substantial effect on their ability to defend against the charges. . . . [T]he right to be present . . . need not be preserved by objection . . . ."  People v. Velasquez, 1 N.Y.3d 44, 47 (2003) (citations and internal quotation marks omitted); see also People v. Robles, 86 N.Y.2d 763, 765 (1995) (holding that "CPL 260.20 gives a defendant the right to be 'personally present during the trial of an indictment'" and "defendants need not preserve alleged violations of this protection" (emphasis in original)).

There is no question that Mr. Baker's presence at the April 6 hearing could have had a substantial effect on his ability to defend against the charges.  At that hearing, three critical facts were disclosed: (1) Barbara and Denise Coles, the two witnesses on whose testimony the People's entire case hinged, would receive new housing in exchange for testifying; (2) the Coles

2

would receive new housing because Barbara claimed that a man named "Day-Day," whose full name was either unknown or never revealed, threatened to shoot everybody in the courtroom if she and her mother testified; and (3) an individual named Osvaldo Vargas[1] had come forward and told a police detective that he had witnessed the crime.

First, Mr. Baker knew the Coles and was very familiar with their housing situation, having spent time at their apartment, which they shared with various other family members.[2] (Trial Tr. 5, 6, 71, 87 (April 14, 2010).) Thus, he was in a unique position to advise his attorney on the extent to which new housing—potentially nicer, more spacious housing in a better neighborhood—could induce the Coles to lie, which would allow counsel to effectively attack their credibility on cross-examination and frame the issue during <u>voir dire</u> and opening statements.[3] However, the court prohibited counsel from discussing this housing benefit with Mr. Baker until "immediately" before the Coles testified eight days later, at which point it was

---

[1] Mr. Vargas's first name was later revealed to be Orlando, not Osvaldo.

[2] Denise had six children (Barbara and her five younger siblings) and a husband. (Trial Tr. 67 (April 14, 2010); Trial Tr. 27 (April 6, 2010).) Barbara had two children by two different men. (Trial Tr. 4, 25 (April 14, 2010).) In addition, the People indicated that aunts, uncles, and possibly other children lived with them. (Trial Tr. 29 (April 6, 2010).)

[3] Notably, a man named John, who identified himself as Denise Coles's husband, attended the meeting at which the Coles were promised new housing after claiming they had been threatened. (Trial Tr. 27 (April 6, 2010).) Mr. Baker may have known John and known whether he would pressure the Coles to lie in order to obtain new housing.

too late to use in <u>voir</u> <u>dire</u> and opening statements, and too late to adequately prepare for and use on cross-examination.  Mr. Bruno never mentioned the housing benefit at any point in the trial.  If this was a strategic decision—i.e., a calculation that the downside of discussing the alleged threats against the Coles outweighed the upside of undermining their credibility—it was an uninformed one since Mr. Bruno was prevented, until the last moment, from discussing with Mr. Baker the Coles's housing situation and their willingness to lie to acquire new housing as well as why the alleged threats from "Day-Day" did not come from Mr. Baker.[4]  By excluding Mr. Baker from the hearing in the jury room and prohibiting him from learning about the housing benefit and the alleged threats against the Coles in time to effectively assist counsel at trial, the court substantially impaired his ability to impeach the key witnesses against him.

Second, Mr. Baker's exclusion from the hearing also prevented him from learning that an individual named "Day-Day" had interjected himself into the trial by threatening to "shoot everybody who is in the courtroom" if the Coles testified.[5]  (Trial Tr. 27-28 (April 6, 2010).)  Had Mr. Baker been

---

[4] This point was made on pages 22-23 of Mr. Baker's opening brief.  However, Respondent misconstrued it, believing it to be about how Mr. Baker could have contributed to the hearing.  (<u>See</u> Resp. Br. at 16.)

[5] Stunningly, Respondent claims that it is "a distinct possibility that not only did defendant know about the harassment, but he was relying on it to secure his acquittal."

told that this person—a total stranger who the Coles did not suggest had any connection to Mr. Baker—was threatening to shoot everyone in the courtroom (a group that would include Mr. Baker), he could have requested that Mr. Bruno investigate who he was, what exactly he knew about the crime, and why he was so concerned about the Coles's testimony.[6]  However, like so many other aspects of the trial, there is no evidence that Mr. Bruno did a thing.  Indeed, during the hearing, he asked no questions about "Day-Day" or, in fact, any subject.  (Id. at 27-32.)

Finally, the existence of a third eyewitness—one who, unlike the Coles, was not operating under the fear that the father of his child/grandchild was a suspect and was not promised new housing in exchange for his testimony—was never disclosed to Mr. Baker.  Although he was informed on April 7, the day after the hearing, that the People intended to call a witness named Orlando Vargas, Mr. Baker was never notified that this individual had been

---

(Resp. Br. at 16-17.)  This claim is pure speculation based on Mr. Bruno's hearsay statement to ADA Emily Aldridge during a telephone call in violation of the attorney-client privilege.  (Id. at 16.)  The suggestion that Mr. Baker had any involvement in the alleged threats against the Coles is wholly unfounded—indeed, even the Coles themselves did not suggest as much.  Mr. Bruno's disclosure of confidential attorney-client communications—particularly those that tarnish Mr. Baker's image—further underscores Mr. Bruno's deficient representation of Mr. Baker.  Respondent's references to this inadmissible, unethical hearsay should be stricken from their opposition brief and the record.

[6] It is reasonable to assume that "Day-Day" may have been concerned that the Coles would, in the course of their testimony, reveal that he was involved in the crime.  There is no evidence that "Day-Day" knew what the Coles's testimony would be.

present at the scene of the crime and had told police that he "had seen three guys rob a Mexican on that morning and throw him down a flight of stairs." (Id. at 29.) Had Mr. Baker known that Mr. Vargas was an eyewitness, he could have sought to determine what exactly Mr. Vargas had seen, and if it contradicted the Coles's testimony, could have requested that Mr. Bruno call Mr. Vargas to testify.[7] Unfortunately, because the People abandoned their plan to call Mr. Vargas, Mr. Baker was prohibited from learning that he had witnessed the crime. And there is no indication that Mr. Bruno took any steps to contact Mr. Vargas, the only unbiased eyewitness to the murder with which his client was charged, and determine what he had seen and whether his testimony might prove useful to the defense.

In sum, had Mr. Baker been allowed to attend the April 6 hearing, or at least learn the critical information that was disclosed at that hearing, he could have substantially improved his ability to defend against the charges. Accordingly, his right to presence was violated and his failure to timely object is immaterial.

---

[7] The fact that the People decided not to call Mr. Vargas certainly suggests that his testimony was not helpful to them. Respondent offers no explanation as to why the prosecution chose not to call Mr. Vargas other than to say that "[t]here are a number of permissible reasons why Mr. Vargas did not testify." (Resp. Br. at 15.)

**C. The Alleged Threats Made to Barbara Coles Had No Connection to Mr. Baker and Did Not Justify His Exclusion from the Hearing and the Withholding of Information Disclosed at the Hearing**

Respondent misinterprets both the law and the record to argue that the trial court's exclusion of Mr. Baker from the April 6 hearing and the withholding of information disclosed at that hearing was necessary to protect the safety of the Coles and Mr. Vargas. (Resp. Br. at 12-17). Although a court may take appropriate steps to protect witnesses, such protections must be carefully balanced against the fundamental right of the defendant to be present at trial and trial-related proceedings. People v. Frost, 100 N.Y.2d 129, 135 (2003); cf. CPL § 240.50(1) (allowing a court to issue a protective order when it identifies a "set of factors which outweighs the usefulness of the discovery"). Given the importance of the right to presence, the Court of Appeals has held that a "court's discretion to conduct ex parte proceedings . . . should be exercised only in the most exceptional and unusual circumstances." Frost, 100 N.Y.2d at 132. Contrary to Respondent's contention, no such circumstances existed in this case.

At the April 6 hearing, the prosecutor stated that a person named "Day-Day" had confronted Barbara Coles sometime in March "and said that he had nothing to live for, and that if she and her mother came to testify, he would come back and shoot everybody who is in the courtroom coming out of the

courtroom, them as witnesses." (Trial Tr. 27-28 (April 6, 2010).) In addition, the People reported that months earlier, "somebody tried to get [Barbara Coles] to go into an alley to discuss her testimony when she went out for a cigarette one night." (Id. at 28.) This is the totality of the threats reported against the witnesses. Critically, there was no suggestion by anyone that Mr. Baker knew "Day-Day," had any involvement in or knowledge of the alleged threats, or had previously ever sought to intimidate a witness. Moreover, there was no evidence whatsoever that Mr. Vargas had received any threats from anyone or feared in any way for his safety.

These facts stand in stark contrast to those in Frost, on which Respondent relies. In Frost, the Court of Appeals emphasized the extensive criminal activity of the defendant's family—including his stepbrother's conviction for attempted murder—and their "attempt to discourage potential witnesses to the instant crime," as well as "the lack of cooperation by the community into prior investigations of crimes believed to have been committed by defendant."[8] Frost, 100 N.Y.2d at 132-33. Thus, in Frost, unlike in Mr. Baker's case, the defendant was directly linked to the threats

_____

[8] Respondent claims that "[t]he Coles' unwillingness to make a prompt police report is an example of community non-cooperation posited in Frost." (Resp. Br. at 13.) However, Respondent ignores the fact that in Frost, the relevant community non-cooperation pertained to other crimes believed to have been committed by the defendant.

against the witnesses[9] and had a history of suspected witness intimidation in connection with previous crimes.  In short, the "exceptional and unusual" circumstances that justified the <u>ex parte</u> procedures in <u>Frost</u> were not present in Mr. Baker's case.

Moreover, unlike in <u>Frost</u>, the protective measures imposed by the trial court in this case did not actually serve the purported safety concerns.  First, the court allowed the People to wait until the day the Coles testified, which was eight days after the hearing, to move them to new housing, and it forbade Mr. Bruno from discussing this impeachment evidence with Mr. Baker until that time.  If there was a legitimate threat to the Coles's safety at home, they should have been moved immediately.[10]  Prolonging the move served no purpose other than to prejudice Mr. Baker, who was prohibited from learning about the housing benefit in time to effectively use the information at trial.  Moreover, the stated threat against the Coles had no connection to their

---

[9] Respondent states misleadingly that "it was not conclusively established that the harasser was related to defendant."  (Resp. Br. at 13.)  However, there was absolutely no evidence, conclusive or otherwise, that Mr. Baker was related to or knew anyone who may have harassed any witness.

[10] If "Day-Day's" goal was to prevent the Coles from testifying, he would presumably take action before they testified, not when they arrived home from court.  The decision to delay the awarding of new housing until the Coles testified suggests that it was more of a reward—possibly conditioned on the content of their testimony—than a security measure.

housing: "Day-Day" allegedly said that he would shoot them and others in the courtroom, not in their apartment.[11]

The court's restriction against Mr. Baker learning that Mr. Vargas had witnessed the crime similarly served no purpose. That restriction, which should never have been imposed in the first place, in any case should have been lifted on April 6 when the People revealed in open court that Mr. Vargas would be added to their witness list and did not indicate that Mr. Vargas had any safety concerns. (Trial Tr. 64-65 (April 6, 2010).)

Thus, on one side of the balancing scale, there was scant justification for the protective measures taken by the court. On the other side, the prejudice caused by those measures was substantial. As discussed above, Mr. Baker was kept in the dark about three consequential facts. The first—that the Coles would receive new housing in exchange for their testimony—is information that Mr. Baker clearly had a right to know, and Respondent does not contend otherwise. The People's case depended entirely on the Coles's

---

[11] Curiously, Respondent does not indicate that "Day-Day" was ever apprehended for his alleged witness tampering and threats of mass murder, calling into question who this complete stranger was or, indeed, if he even existed. In fact, there is no indication that the police ever sought to track down and question "Day-Day," which would have been the most effective way of securing the safety of the Coles as well as everyone else in the courtroom. Given that Barbara Coles was familiar enough with "Day-Day" to know his name, finding and arresting him should have been relatively straightforward.

testimony,[12] and the fact that the Coles received new housing in exchange for testifying would have significantly undermined their credibility—had the court allowed Mr. Baker to discover this information in time to help prepare Mr. Bruno to effectively use it at trial. The second and third facts—regarding "Day-Day" and Mr. Vargas—were also important pieces of information that could have significantly improved Mr. Baker's ability to defend against the charges, and there was no valid reason for withholding them from him.

Moreover, although a court, when balancing a defendant's right to presence against witnesses' safety, must always hold the People to its burden of demonstrating the need for secrecy, the court in this case should have been particularly demanding given the advantage such secrecy afforded the People. Indeed, the People were seeking to bestow a major benefit on the Coles— without whom the People had no case—in order to ensure that they testified, and were seeking to withhold this impeachment material from Mr. Baker, who had peculiar knowledge about the Coles and their housing situation. And although Mr. Bruno was allowed to attend the ex parte hearing, his presence was no substitute for Mr. Baker's. Not only was Mr. Bruno unable to effectively use the information disclosed at the hearing without Mr. Baker's

---

[12] There was video footage of the crime, but, as one of the People's witnesses, Detective Carlos Infante, conceded, "[y]ou couldn't make out faces from the video." (Trial Tr. 234 (April 19, 2010).)

input, he was unwilling to as well, a fact that could have been anticipated given Mr. Baker's earlier motion for new counsel and Mr. Bruno's repeated failure to meaningfully advocate on his behalf.

Had the trial court properly considered Mr. Baker's right to be present, the importance of the information discussed at the hearing, and the complete absence of any connection between Mr. Baker and the purported safety concerns for the witnesses, it would have permitted him to attend the hearing or at least learn the critical information that was revealed immediately upon its conclusion. Its failure to do so undermined the fairness of the trial.

## POINT II.

### MR. BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL WHEN THE TRIAL COURT FAILED TO ADDRESS HIS MOTION FOR NEW COUNSEL

**A.    Mr. Baker Was Not Required to Raise His Complaints Regarding His Counsel <u>Twice</u> in Order to Trigger the Trial Court's Duty to Investigate His Motion**

The Court of Appeals has held that when a defendant files a "seemingly serious" motion for new counsel—as Mr. Baker did—the trial court <u>must</u> conduct, at the very least, a "minimal inquiry" into that request. <u>People v. Porto</u>, 16 N.Y.3d 93, 100 (2010). Respondent now claims that Mr. Baker "abandoned" his motion through his "inaction," and that the passage of time somehow eliminated the trial court's clear obligation to consider the motion.

(Resp. Br. at 18.)  Contrary to Respondent's assertions, there is no requirement in New York that a criminal defendant raise his concerns about his counsel with a trial court a second time—first by filing a motion, and then by separately reminding the court that the motion has not yet been addressed—in order to trigger the trial court's obligation to conduct an inquiry into the defendant's complaints.  As the Court of Appeals made clear in Porto, a trial court's duty to investigate whether there is good cause for a substitution of counsel begins when a defendant files a motion for new counsel, as Mr. Baker had done.[13]  See Porto, 16 N.Y.3d at 99-100.

Not one of the cases Respondent cites includes a requirement that a criminal defendant raise a motion for new counsel a second time in order to avoid "abandoning" the motion.  In People v. Santos, unlike here, there was no record that the defendant had even filed the motion with the trial court, and further, this Court determined that the record itself established that there was no ineffective assistance of counsel.  See 14 A.D.3d 316, 316 (1st Dep't 2005).  Respondent's citation to People v. Berry is nonsensical.  (See Resp. Br. at 18.)  While the defendant in that case did raise an ineffective assistance of counsel claim on his appeal (which was denied because the defendant

---

[13] Respondent's assertion that Mr. Baker "admits that he never raised with the court" his motion for new counsel is misleading and incorrect.  (Resp. Br. at 18.)  Mr. Baker's act of filing the motion did "raise" his request for new counsel with the trial court, and at no point has Mr. Baker stated otherwise.

failed to first file a CPL § 440.10 motion), the defendant never filed a motion for new counsel, and the language quoted by Respondent discusses the defendant's <u>suppression</u> motion.  <u>People v. Berry</u>, 15 A.D.3d 233, 234 (1st Dep't 2005) ("Defendant abandoned his <u>pro se</u> suppression motion by failing to call the court's attention to the fact that it remained unresolved.").  None of the remaining cases Respondent cites contain any obligation that a defendant raise a motion for new counsel a second time with the trial court.  <u>See</u> <u>People v. Miller</u>, 102 A.D.3d 813, 814 (2d Dep't 2013) (deeming motion for new counsel abandoned because defendant later indicated his satisfaction with his counsel); <u>People v. Munzert</u>, 92 A.D.3d 1291, 1292 (4th Dep't 2012) (finding that defendant's request for new counsel was not serious); <u>People v. Andrades</u>, 2009BX051112, 2010 WL 1293791, at *6-7 (N.Y. Sup. Ct. Bronx Cty. Mar. 18, 2010) (ruling on defendant's plea withdrawal motion which was unrelated to counsel).

Respondent's attempt to draw a distinction between requests for new counsel that are raised by written motion and those that are raised orally in court (<u>see</u> Resp. Br. at 19-20) likewise lacks any support under New York law.  There is no indication in the case law that a defendant must make a request for new counsel orally as opposed to by written motion, and indeed, the Court of Appeals has stated that filing a serious motion for new counsel is

sufficient to trigger the trial court's duty to inquire as to whether good cause

exists for substitution. See Porto, 16 N.Y.3d at 93. Nor is there any

indication that Mr. Baker's motion was not sufficiently serious to warrant

inquiry by the trial court. The Court of Appeals in Porto did not establish a

blanket rule that form motions are not an acceptable mechanism for

requesting new counsel; rather, the court explained that any motion for new

counsel must contain specific factual allegations. Id. at 99-101. Mr. Baker's

motion, which stated that Mr. Bruno "failed to . . . a) [v]isit me at my place of

confinement; b) [i]nform me of any pertinent motion . . . filed on my behalf;

[or] c) [c]onduct an investigation in the matter of this action on my behalf . . .

," meets this standard. (Affidavit in Support of Motion for Reassignment of

Counsel at 1.)

## POINT III.

### RESPONDENT FAILS TO ESTABLISH THAT MR. BAKER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL REGARDING A PLEA OFFER

**A.      Respondent Presents No Evidence That**
**Mr. Baker's Counsel Provided Any**
**Advice Whatsoever to Mr. Baker**
**Regarding the Plea Offer**

Under the United States Constitution and the New York State

Constitution, a criminal defense attorney does not provide effective assistance

of counsel if he fails to (1) "advise the client of the advantages and

disadvantages of a plea agreement," Padilla v. Kentucky, 559 U.S. 356, 370

(2010) (internal quotation marks omitted), and (2) inform the client of the

maximum sentence exposure the client faces if he decides to proceed to trial

instead of accepting the plea, see Goldberg v. Tracy, 247 F.R.D. 360, 397

(E.D.N.Y. 2008), adhered to on reconsideration, 01-CV08454, 2008 WL

972721 (E.D.N.Y. Mar. 24, 2008), aff'd, 366 F. App'x 198 (2d Cir. 2010).

Respondent does not even attempt to claim that Mr. Bruno provided advice

regarding either of these aspects of Mr. Baker's plea agreement.  Instead, as

in their opposition to the CPL § 440.10 motion, Respondent argues that Mr.

Baker, a 17-year-old who had not yet graduated from high school, should

have understood the meaning of the charges against him, the strength of the

prosecution's evidence, his chances of prevailing at trial, and the practical

differences between the sentence contained in the plea agreement and the

sentence that he faced at trial, all without the advice and counsel of his

attorney.  Respondent's arguments, which essentially amount to the

contention that Mr. Baker should have been his own attorney, would render

the Sixth Amendment meaningless.

Respondent does not state that Mr. Bruno explained the advantages and

disadvantages of taking the plea offer, or that Mr. Bruno explained the

difference between the determinate sentence in the plea offer and the

indeterminate sentence that Mr. Baker faced at trial. Instead, Respondent claims that Mr. Bruno provided effective assistance of counsel because (1) Mr. Bruno told Mr. Baker that he was charged with felony murder and could be found guilty because he was "acting in concert" with his co-defendants (without explaining the meaning of felony murder), and (2) Mr. Bruno told him that there was a surveillance video of the incident. (See Resp. Br. at 22-32.) Neither of these two pieces of information relates in any way to the difference between the sentence Mr. Baker was offered in the plea and the sentence he faced at trial, nor does this information, without more, establish the "advantages and disadvantages" of accepting the plea offer. Indeed, Respondent has no response to Mr. Baker's sworn statement that Mr. Bruno never explained the advantages and disadvantages of the plea offer. Regarding Mr. Baker's understanding of his potential sentencing exposure, Respondent merely states—without any support—that Mr. Baker's claim that he did not know the difference between determinate and indeterminate sentencing is "unconvincing." (See id. at 23.)

Respondent also has not established that any evidence in the record contradicts Mr. Baker's sworn affidavit regarding the lack of counsel he received regarding the plea offer. First, Respondent recounts a conversation that Mr. Bruno, now deceased, had with the prosecution, in which Mr. Bruno

vaguely explained that he provided the necessary counsel and that Mr. Baker refused to take a plea offer. (Id. at 25-26.) This conversation is inadmissible hearsay, and in any event, Respondent's summary of the conversation does not even indicate that Mr. Bruno claimed that he explained the advantages and disadvantages of accepting the plea and that he explained the difference between determinate and indeterminate sentences, as he was required to do. (Id.)[14] Second, Respondent points to the fact that Mr. Baker did not speak up in court and disagree with his counsel's response of "I have" to the trial court's question asking Mr. Bruno whether he had discussed the plea offer with Mr. Baker as evidence that Mr. Bruno provided the necessary counsel. (Id. at 24.) Again, Mr. Bruno's answer did not indicate that he provided any advice in particular, or the type of advice that he was required to provide, only that he spoke with Mr. Baker regarding the plea.

---

[14] Respondent perplexingly states that Mr. Bruno's conversation did not constitute an ethical breach of his obligations to Mr. Baker because he "did not relay privileged communications," even though Respondent also admits that Mr. Bruno "explained the advice that he provided, and that defendant was unwilling to accept a plea based on the weaknesses of the case." (Resp. Br. at 26 n.9.) Explaining the advice that was given to a client and the reasons why a client made a particular decision relating to his defense clearly implicates privileged attorney-client communications, and Mr. Bruno breached his obligations to Mr. Baker by conveying this information to the People in an effort to aid the People in opposing Mr. Baker's CPL § 440.10 motion and appeal.

**B.** **Respondent Presents No Evidence That Mr. Baker Was Not Prejudiced by Mr. Bruno's Lack of Counsel Regarding the Plea Offer**

A criminal defendant establishes that he was prejudiced by the ineffective assistance of his counsel regarding a plea agreement if the defendant demonstrates that (1) "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea," see Lafler v. Cooper, 132 S. Ct. 1376, 1391 (2012); see also Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012), or (2) "if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence," see Lafler, 132 S. Ct. at 1387. Mr. Baker has explained that he would have accepted the plea offer had he known any of the necessary information to make a decision, as he did in a previous case. (See Baker Aff. ¶¶ 29-34.) Respondent has provided no admissible evidence to contradict Mr. Baker's sworn statement that he would have accepted the plea offer had Mr. Bruno provided the information that Mr. Baker needed to make an informed decision and the evidence that Mr. Baker had accepted a plea offer in a past case. Instead, Respondent claims, without support or citation, that Mr. Baker was "not willing to plead guilty," and relies on the inadmissible hearsay conversation the prosecutor had with Mr. Bruno to support its assertions regarding Mr. Baker's internal thought

process. (Resp. Br. at 23, 25-26.) In addition to not refuting Mr. Baker's statement that he would have accepted the plea agreement had Mr. Bruno provided adequate counsel, Respondent does not have any response at all to Mr. Baker's argument that prejudice is separately established by the large disparity between his current sentence and the plea offer. See Lafler, 132 S. Ct. at 1387.

**C.    The Trial Court's Denial of Mr. Baker's Motion Without a Hearing Constitutes Reversible Error**

As explained in Mr. Baker's opening brief, CPL § 440.30 requires a trial court to conduct a hearing before denying a 440.10 motion unless one of the requirements listed in that section is met. The trial court in his case denied Mr. Baker's 440.10 motion on the basis that Mr. Baker failed to provide an affidavit from Mr. Bruno and that an allegation of fact necessary to support the motion is contradicted by the record. (See Order at 6.) As recent cases in trial courts in the First Department have explained, an affidavit from counsel is not necessary on a 440.10 motion from a criminal defendant challenging the effectiveness of his counsel at trial. See People v. Brown, No. 2533-2002, 2011 WL 1366641, at *8 (N.Y. Sup. Ct. Bronx Cnty. Jan. 13, 2011); People v. Rosales, No. 2132-2001, 2009 WL 2496416, at *5-6 (N.Y. Sup. Ct. Bronx Cty. July 10, 2009). The cases Respondent cites are not to the

20

contrary. (Resp. Br. at 27.) In both cases, the record itself indicated that the attorney's conduct was a strategic decision, and therefore the First Department determined that the defendant needed to include an affidavit from his attorney explaining those strategic decisions. See People v. Stewart, 295 A.D.2d 249, 250 (1st Dep't 2002) (affirming the denial of a 440.10 motion because "[v]iewed objectively, the record reveals the existence of trial decisions that might have well been made by a reasonably competent attorney" and therefore defendant should have included an affidavit from his attorney); People v. Chen, 293 A.D.2d 362, 363 (1st Dep't 2002) (same). By contrast, Mr. Bruno's complete failure to provide meaningful advice regarding the plea agreement did not satisfy his obligations to his client and could not possibly have been the strategic decision of a competent attorney. And, in any event, Mr. Baker's post-conviction motion included Mr. Bruno's comments, indicating his hostility to Mr. Baker's claims. Mr. Baker could not compel him to submit an affirmation.

## POINT IV.

### RESPONDENT FAILS TO ESTABLISH THAT MR. BAKER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

At sentencing, Mr. Bruno abandoned his role as counsel, declining to perform any minimum level of advocacy on behalf of his client. Respondent

fails to refute the overwhelming evidence that Mr. Bruno was anything more than a casual observer at sentencing. Mr. Bruno did not make a single argument for leniency, nor did he inform Mr. Baker that he could speak on his own behalf. Mr. Bruno's conduct fell below any objective standard of reasonable representation, and his actions—or lack thereof—prejudiced Mr. Baker by causing him to receive a more severe sentence.

**A.    Mr. Bruno Failed to Inform Mr. Baker that
       Mr. Baker Could Express a Statement
       of Remorse or Regret at Sentencing**

Respondent asserts that Mr. Baker did not outwardly show remorse at sentencing, but conveniently fails to recognize the role that Mr. Bruno's lack of counsel played in Mr. Baker's behavior at sentencing. (Resp. Br. at 29-30.) At the core of the doctrine of ineffective assistance of counsel is the Sixth Amendment requirement that counsel "consult with the defendant on important decisions and . . . keep the defendant informed of important developments in the course of the prosecution." Strickland v. Washington, 466 U.S. 668, 688 (1984). Mr. Bruno's failure to even speak with Mr. Baker before sentencing—a critical stage of the criminal proceedings—is exactly the type of inadequate representation that the Sixth Amendment was designed to protect. See Glover v. United States, 531 U.S. 198, 202-04 (2001).

Respondent has not presented any evidence to show that Mr. Bruno provided effective assistance of counsel in the time between the verdict and sentencing.

Instead, the record reflects that Mr. Bruno did not provide a single word of advice to Mr. Baker in preparation for sentencing. Mr. Bruno did not meet or speak with Mr. Baker to discuss sentencing. (Baker Aff. ¶¶ 39-41.) As a direct result, Mr. Baker did not know that he would have the opportunity to state his remorse or regret on the record. (Id. ¶ 39.) His behavior at sentencing was not a reflection of apathy as Respondent suggests (Resp. Br. at 30), but rather a reflection of a young man's ignorance as a result of the deficient performance of his counsel.

Specifically, Mr. Baker was entirely unaware of any benefit that could be served by stating his remorse or regret for what had happened. (Id. ¶ 50.) When asked the surprising question of whether he wanted to make a statement, Mr. Baker told the court "Not at all." Respondent mischaracterizes Mr. Baker's response of "Not at all" as avoiding responsibility (Resp. Br. at 30-31); in reality, it was the response of a young man who was wholly unprepared to make such a statement—a statement that Mr. Baker had no idea would help his case (Baker Aff. ¶ 50).

Further, this case is readily distinguishable from People v. Saunders, on which Respondent relies. In Saunders, the court emphasized "the context of

the totality of the circumstances of the representation provided at the trial level" that militated in favor of denying defendant's ineffective assistance claim. 301 A.D.2d 869, 872 (3d Dep't 2003). Unlike <u>Saunders</u>, however, the "totality of the circumstances" in this case establish only that Mr. Bruno played an entirely passive role throughout trial and abandoned all pretense of advocacy at sentencing. (Marshall Aff. ¶¶ 26, 28-30.)

**B.    Mr. Bruno Had a Duty to Investigate and Marshal Mitigating Evidence**

Respondent erroneously asserts that Mr. Bruno had no obligation to put forth mitigating evidence at sentencing. (Resp. Br. at 31-32.) This interpretation of the law is flawed, ignoring counsel's duty to familiarize himself with the defendant's background. This Court has previously stated that "meaningful knowledge of . . . defendant's background" enables counsel "to make an effective presentation on the question of sentence." <u>People v. Stella</u>, 188 A.D.2d 318, 319 (1st Dep't 1992). A necessary part of a defendant's "constitutional right to be effectively represented by counsel at the crucial stage of sentencing" is "an opportunity to be represented by counsel sufficiently familiar with . . . the defendant's background." <u>People v. Gonzalez</u>, 43 A.D.2d 914, 915 (1st Dep't 1974). Respondent ignores Mr. Bruno's duty to investigate mitigating evidence, just as Mr. Bruno ignored the same duty at sentencing.

Respondent further argues that Mr. Bruno's failure to mention Mr. Baker's upbringing was a matter of strategy (Resp. Br. at 31.), but Mr. Bruno's deficient performance with respect to Mr. Baker's upbringing extends further than his failure to raise it at sentencing. Rather, Mr. Bruno failed to investigate Mr. Baker's upbringing at all.[15] Mr. Bruno never spoke with Mr. Baker or any of Mr. Baker's family members about him or his background. (Baker Aff. ¶¶ 25, 40-41; Lewis Aff. ¶ 11.) Had Mr. Bruno "sufficiently familiarize[d]" himself with Mr. Baker's background, he would have found numerous circumstances to present at sentencing. See Gonzalez, 43 A.D.2d at 915. Mr. Bruno would have learned about the abuse that Mr. Baker endured as a child, and the time Mr. Baker spent in foster care and the shelter system. (Baker Aff. ¶ 6, 11, 13-16, 49.) These circumstances are exactly the type of factors that courts routinely consider in determining sentencing. See, e.g., People v. Skeffery, 188 A.D.2d 438, 439 (1st Dep't 1992).

---

[15] Given Mr. Bruno's failure to investigate, Mr. Bruno's silence at sentencing could not have been a reasonably calculated strategic decision. See Blystone v. Hom, 664 F.3d 397, 420 (3d Cir. 2011) ("[I]f counsel has failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable decision as to what to *present* at sentencing." (emphasis in original)); cf. People v. Oliveras, 21 N.Y.3d 339, 346-47 (2013) (stating counsel cannot formulate strategy if counsel failed to conduct a reasonable investigation).

In addition to mitigating evidence of Mr. Baker's upbringing, Mr. Bruno would have discovered facts that demonstrated Mr. Baker's capacity for rehabilitation. Mr. Baker was only a 17-year-old boy at the time of the offense, and there was no evidence to suggest that he was incapable of turning his life around. (See Lewis Aff. ¶ 13-20.) Though he made a grievous mistake—one for which he was willing to take responsibility at sentencing had he known to do so—Mr. Baker had the support of his family and was capable of rehabilitation.[16]

**C.** **Mr. Bruno's Failure to Raise Mr. Baker's Role in the Crime at Sentencing Fell Below Any Objective Standard of Reasonable Representation**

Mr. Baker's minimal role in the incident, though not to be taken lightly, was exactly the kind of mitigating evidence that Mr. Bruno should have highlighted at sentencing. This is not the case where "defendant's rather extensive criminal record" and "brutal nature of the instant offense" precluded the trial court from imposing a more lenient sentence. See People v. Schettino, 113 A.D.2d 905, 905 (2d Dep't 1985). Rather, this was an opportunity for Mr. Bruno to argue for a more lenient sentence based on Mr.

---

[16] Respondent assumes that Mr. Bruno's sentence of 20 years to life, rather than the People's request for the maximum of 25 years to life, implies that the sentencing court considered mitigating factors included in the PSR. (Resp. Br. at 33-34.) However, this assumption is not grounded in any factual basis. Indeed, an equally convincing interpretation is that the sentencing court would have provided a more lenient sentence than 20 years to life if it had been presented with any evidence that bolstered the PSR.

Baker's non-violent role in the crime. The evidence established that Mr.

Baker neither took the victim's wallet nor caused or anticipated any of the

physical harm that led to the victim's death.

While Mr. Baker's involvement in the incident may have been

sufficient to meet the necessary elements of felony murder, his level of

culpability remained relevant to sentencing. First, the facts presented during

Mr. Warner's allocution established that Mr. Baker did not take the victim's

wallet, as Mr. Warner took full responsibility on the record for taking the

victim's wallet. Second, the facts presented at trial indicated that Mr. Allick

threw the victim down the stairs.[17] In continuing to ignore his duty to

advocate on behalf of Mr. Baker, Mr. Bruno did not mention these mitigating

factors at sentencing.

There can be no dispute that Mr. Bruno's "performance" was deficient

at sentencing. Had any of the actions discussed above been taken,

individually or combined, the ultimate outcome would likely have been

different for Mr. Baker. Instead, all that Mr. Baker received from Mr. Bruno

was a four-sentence statement, which fell far short of the level of

---

[17] In addition, the surveillance video of the incident depicts the individual identified as Mr. Baker leaving the scene, while the individuals identified as Mr. Allick and Mr. Warner brought the victim to the stairs. As stated above, though this evidence may not have been sufficient to refute Mr. Baker's involvement in the incident for the purposes of a felony-murder conviction, it was certainly sufficient to argue for a more lenient sentence.

representation required by the Sixth Amendment and New York State Constitution.

## **CONCLUSION**

For the reasons stated in Points I, II, and III, defendant-appellant Sean Baker respectfully requests that this Court reverse his conviction and order a new trial.

In the alternative, for the reasons stated in Point IV, defendant-appellant Sean Baker respectfully requests that this Court vacate his sentence and order that he be resentenced after a hearing where he is adequately represented by counsel.

Dated:   New York, New York
              February 11, 2016

RICHARD M. GREENBERG

OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

By:

JACOB GARDENER
Of Counsel

JACOB GARDENER
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Appellant
Sean Baker*

## CERTIFICATE OF COMPLIANCE

This brief was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface:         Times New Roman

Point size:               14

Line spacing:             Double

According to the word count of the word processing system used to prepare the brief, the total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 6,818.

Dated:  New York, New York
        February 11, 2016

Jacob Gardener

To be argued by
EMILY ANNE ALDRIDGE

SUPREME COURT OF THE STATE OF NEW YORK

_____

APPELLATE DIVISION – FIRST DEPARTMENT

_____

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

-against-

SEAN BAKER,

*Defendant-Appellant.*

# R E S P O N D E N T ' S   B R I E F

DARCEL D. CLARK
*District Attorney*
Bronx County
Attorney for Respondent
Bronx, New York 10451
(718) 838-7091
aldridge@bronxda.nyc.gov

NANCY KILLIAN
EMILY ANNE ALDRIDGE
*Assistant District Attorneys*
*Of Counsel*

*PRINTED ON RECYCLED PAPER*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

 STATEMENT ........................................................................................... 1

QUESTIONS PRESENTED ....................................................................... 2

THE FACTS .............................................................................................. 3

    The Indictment ..................................................................................... 3

    The Trial ............................................................................................... 3

        The People's Case .......................................................................... 3

        The Defense ................................................................................... 6

    The CPL §440.10 Proceedings ............................................................ 7

ARGUMENT .............................................................................................. 8

    POINT ONE

        APPELLANT'S GUILT OF MURDER IN THE SECOND DEGREE
        WAS ESTABLISHED BEYOND A REASONABLE DOUBT ......... 8

    POINT TWO

        DEFENDANT WAS PROPERLY EXCLUDED FROM THE PRE-
        TRIAL PROTECTIVE HEARING ....................................... 9

    POINT THREE

        DEFENDANT ABANDONED HIS PRO SE MOTION FOR NEW
        COUNSEL ........................................................................ 18

POINT FOUR

        DEFENDANT RECEIVED EFFECTIVE ASSISTANCE OF
        COUNSEL ........................................................................ 21

CONCLUSION ........................................................................................ 36

PRINTING SPECIFICATIONS STATEMENT .................................... 37

**TABLE OF AUTHORITIES**

**Cases**

Gonzalez v. United States, 722 F.3d 118 (2d Cir. 2013) .................................34, 35

Hooks v. Workman, 689 F.3d 1148 (10th Cir 2012) ........................................... 32

People v Cox, 75 A.D.3d 1136 (4th Dept. 2010).................................................. 35

People v. Andrades, 27 Misc. 3d 1204(A) (Bronx Sup. Ct. 2010) ....................... 19

People v. Andre W., 44 N.Y.2d 179 (1978) ...............................................12, 14, 17

People v. Baldi, 54 N.Y.2d 137 (1981) ..........................................................21, 31

People v. Benevento, 91 N.Y.2d 708 (1998) ....................................................... 21

People v. Berry, 15 A.D.3d 233 (1st Dept. 2005)................................................. 18

People v. Boone, 194 A.D.2d 407 (1st Dept. 1993)............................................. 17

People v. Branham, 59 A.D.3d 244 (1st Dept. 2009) .......................................... 19

People v. Caban, 5 N.Y.3d 143 (2005)............................................................... 21

People v. Chen, 293 A.D.2d 362 (1st Dept. 2002) .............................................. 27

People v. Contreras, 12 N.Y.3d 268 (2009).............................................12, 14, 16

People v. Frost, 100 N.Y.2d 129 (2003).....................................................12, 13

People v. Kin Kan, 78 N.Y.2d 54 (2011) ............................................................ 34

People v. Lane, 93 A.D.2d 92 (1st Dept. 1983).................................................... 31

People v. Lynch, 23 N.Y.2d 262 (1968).............................................................. 16

People v. McCummings, 124 A.D.3d 502 (1st Dept. 2015) ................................. 19

People v. Miller, 102 A.D.3d 813 (2d Dept. 2013)............................................. 18

People v. Miller, 106 A.D.2d 787 (3d Dept. 1984)............................................. 16

People v. Morales, 80 N.Y.2d 450 (1992)........................................................... 12

People v. Moret, 290 A.D.2d 250 (1st Dept. 2002) ............................................ 26

People v. Munzert, 92 A.D.3d 1291 (4th Dept. 2012) ........................................ 19

People v. Pagan, 93 N.Y.2d 891 (1999) ............................................................. 11

People v. Porto, 16 N.Y.3d 93 (2010) ................................................................. 20

People v. Rhodes, 154 A.D.2d 279 (1st Dept. 1989) .......................................... 17

People v. Rivera, 71 N.Y.2d 705 (1988) ............................................................. 21

People v. Rodriguez, 46 A.D.3d 396 (1st Dept. 2007) ....................................... 20

People v. Santos, 14 A.D.3d 316 (1st Dept. 2005) ............................................. 18

People v. Saunders, 301 A.D.2d 869 (3d Dept. 2003) ........................................ 32

People v. Sides, 75 N.Y.2d 822 (1990) ............................................................... 20

People v. Sloan, 79 N.Y.2d 386 (1992)............................................................... 13

People v. Stephens, 84 N.Y.2d 990 (1994).......................................................... 11

People v. Stewart, 295 A.D.2d 249 (1st Dept. 2002)........................................... 27

People v. Thompson, 32 A.D.3d 743 (1st Dept. 2006) .......................................... 20

Snyder v. Massachusetts, 291 U.S. 97 (1934) ...................................................11, 12

Strickland v. Washington, 466 U.S. 668 (1984) ................................................... 22

**Statutes**

CPL § 240.50 ........................................................................................9, 12, 17

CPL § 390.50 ........................................................................................ 34

CPL § 440.30 ........................................................................................23, 27

CPL § 240.20 ........................................................................................ 15

CPL § 240.45 ........................................................................................ 16

CPL § 240.90(3) ..................................................................................... 12

CPL §440.10 ......................................................................................... 1

Penal Law § 125.25(3) ............................................................................. 1

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : FIRST DEPARTMENT
------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                              Respondent,

        -against-


SEAN BAKER,

                          Defendant-Appellant.
------------------------------------------------------------------------X

## RESPONDENT'S BRIEF

## STATEMENT

       Sean Baker appeals from a judgment of Supreme Court, Bronx County (Gross, J.) rendered May 12, 2010, convicting him, by jury verdict, of Murder in the Second Degree (Penal Law § 125.25[3]), and sentencing him to twenty years to life incarceration.

       Defendant also appeals, by permission of the Honorable David Friedman, from an order of the same court (Gross, J.), rendered September 3, 2014, summarily denying his CPL §440.10 motion to vacate this judgment of conviction.

       Defendant is incarcerated pursuant to this judgment.

## QUESTIONS PRESENTED

1.      Whether, in the presence of defense counsel but not the defendants, the court properly conducted a pre-trial proceeding pursuant to CLP § 240.50(1), at which the prosecutor revealed threats made to two witnesses, and divulged the name of another person who might possibly be a witness?

      The court below had no opportunity to role on this issue because the defense consented to conducting the proceeding in this manner.

2.      Whether defendant abandoned his <u>pro</u> <u>se</u> motion for new counsel when he failed to raise it with the court?

3.      Whether the trial court properly denied defendant's motion to vacate his conviction, made on the grounds that counsel was ineffective during plea negotiations and sentencing?

# THE FACTS

## The Indictment

On February 8, 2008, the Bronx County Grand Jury indicted defendant and co-defendants Michael Allick and Kareem Warner on charges of two counts of Murder in the Second Degree, Manslaughter in the First Degree, Robbery in the First Degree, two counts of Robbery in the Second Degree, and Robbery in the Third Degree (Indictment No. 0770/2008).[1]

## THE TRIAL[2]

## The People's Case

At approximately 1:30 a.m., on October 6, 2007, <u>Barbara Coles</u> and her mother, <u>Denise Coles</u>, went to get food at El Patio Restaurant, in the vicinity of 920 Southern Boulevard in the Bronx. Outside the restaurant, defendant greeted the women, who went in to order their food. Both women were well-acquainted with defendant, as well as with co-defendants Michael Allick and Kareem Warner, with Barbara having gone to school with defendant, and with all three men having

---

[1] Co-defendant Warner pled guilty to Robbery in the First Degree and was sentenced to eight years incarceration with five years post-release supervision (P. 379-91). Allick, who was tried with defendant, was also convicted and was sentenced to an indeterminate term of twenty-five years to life. On February 23, 2012, this court affirmed his conviction. <u>People v. Allick</u>, 92 A.D.3d 588 (1st Dept. 2012).

[2] Page notations prefixed by "P" refer to pre-trial proceedings, "T." refers to the trial, "S." refers to the sentencing, and notations preceded by "PSR" refers to pages of the pre-sentence report.

been guests of the Coles on multiple occasions (B. Coles: T. 4-7, 9, 39; D. Coles: T. 67-71).[3]

After placing their order, the two women went outside to smoke a cigarette. An inebriated man whom they had just seen in the restaurant was then ejected from the eatery by an employee, and co-defendant Allick arrived on the scene on his bicycle. The drunken man, subsequently identified as Ramiro Ramos Luna, was then attacked by defendant, Allick, and Warner, who was also now present. Defendant rifled through the man's pockets and removed property as Allick and Warner held the victim.[4] This part of the attack was captured on surveillance camera; the footage was viewed by Barbara Coles at trial, where she was able to identify defendant to the left of the victim, Warner to the victim's right, and Allick, who stood between them (B. Coles: T. 7-11, 16-23; D. Coles: T. 68-70; People's Exhibits 2 and 2a: Surveillance footage).

After robbing Mr. Luna, the three attackers, still in view on the surveillance camera, then dragged the incapacitated Mr. Luna to a stairwell next to a pizzeria at 926 Southern Boulevard. Allick then "toss[ed]" or "thr[e]w" the victim down the stairwell, swinging his body in a manner that caused the victim to go straight down

---

[3] The defendants were also acquaintances of Corey Sumlin, who is the father of one of Barbara Coles' children (B. Coles: T. 25; D. Coles: T. 79).

[4] Barbara Coles could not identify what appellant removed from the victim's pockets (B. Coles: T. 42).

the stairs[5] (B. Coles: T. 11-12, 14, 23-24, 40-42; D. Coles: T. 69, 71).  After the defendants left the scene, the Coles returned to the restaurant, retrieved their food, and went home; they did not contact the police (B. Coles: T. 12; D. Coles: T. 73-74).

At approximately 2:45 a.m., Emergency Medical Technician Jason Saffon responded to the scene and found the unconscious Mr. Luna lying face down at the bottom of the stairs.  He was unresponsive, bleeding from his right ear, with his right eye swollen shut.  Although he was still alive, Mr. Luna had suffered a serious head trauma.  When Lt. Saffon checked the victim for identification, he discovered that he did not have a wallet, nor was he wearing shoes (Saffon: T. 93-100).

Lt. Saffon transported Mr. Luna to Lincoln Hospital, where he arrived in a comatose state and subsequently died as a result of his injuries.  An autopsy performed by Dr. Susan Ely, of the Office of the Chief Medical Examiner, revealed that Mr. Luna died from severe blunt force trauma to the head, resulting in multiple skull fractures, subdural hemorrhaging, and brain contusions.  The

---

5 Denise Coles described how Allick "threw" or pushed the victim down the stairs after appellant had removed the property (D. Coles: T. 69, 71).

injuries were consistent with being pushed down the cement stairs where he had been discovered by emergency personnel (Saffon: T. 99-100; Ely: T. 184-199).[6]

Detectives <u>Carlos Infante</u> and <u>Vincent Miraglia</u> were assigned to investigate the homicide. Two days after the killing, Mr. Luna's sisters came to the precinct and reported him missing. Upon being shown photographs of the victim, his sisters confirmed his identity (Miraglia: T. 156-57). On October 7, 2007, Detective Infante obtained from building management the video surveillance recording. Although he viewed it many times, he could not identify anyone depicted on the video, as the faces of the perpetrators were not discernible. In January of 2008, he interviewed Barbara and Denise Coles, and Barbara viewed the videotape. Thereafter, defendant, Warner, and Allick were placed under arrest.[7]

**The Defense**

Private investigator <u>Ronald Carilli</u> testified on behalf of co-defendant Allick. On January 11, 2010, he interviewed Barbara and Denise Coles (T. 244-45). They both told him that, after the deceased was thrown down the stairs, Warner and defendant went down the stairs and robbed him (T. 245).

_____

6 Although alcohol and cocaine were present in Mr. Luna's system at the time of his death, they did not contribute to his death in any manner (Ely: T. 194-95).
7 Barbara told Detective Infante that she believed that Corey Sumlin was being wrongfully accused of the homicide (Coles: T. 26).

Co-defendant Allick called no further witnesses, and defendant rested (T. 266).

**The CPL §440.10 Proceedings**

In papers dated April 15, 2014, defendant, through counsel, filed a motion to vacate his conviction, claiming he received ineffective assistance because counsel (a) did not advise defendant about a pre-trial plea offer or explain the charges or sentencing variables and (b) did not consult with defendant before sentencing, investigate mitigating factors, or advocate for defendant at his sentencing. (judgment roll: motion). On or about July 9, 2014 the People filed an affirmation in opposition and memorandum of law (judgment roll: answer). By decision dated September 3, 2014, the court (Gross, J.), denied the motion, noting defendant's claims were "completely belied by the hearing transcript" (judgment roll: decision, p.6). Specifically,

> defendant's claim that his attorney was ineffective for failing to advise him fully with respect to the People's offer to him or persuade him to plead guilty is directly refuted by the trial record, which clearly establishes that defendant was fully aware of the specific plea available, had adequate opportunity to discuss the offer with his attorney, and rejected counsel's efforts to persuade him to accept the proposed disposition. (judgment roll: decision, p. 7)

Regarding sentencing, the court held that "defendant's complaints of counsel not focusing on his difficult upbringing would not have overcome his refusal to accept

responsibility, or the absence of any remorse on his part." (judgment roll: decision, p. 9).[8]

## ARGUMENT

## POINT ONE

**APPELLANT'S GUILT OF MURDER IN THE SECOND DEGREE WAS ESTABLISHED BEYOND A REASONABLE DOUBT.**

The testimony at trial conclusively established that defendant and his cohorts accosted Ramiro Ramos Luna, an inebriated man who posed no risk to them. In view of a surveillance camera and two eyewitnesses who knew the defendants socially, they restrained him and robbed him. Then, despite Mr. Luna's state being such that it was unlikely that he would have been able to call the police or identify the defendants, they dragged him to the top of a set of cement stairs, where Allick flung him down the steps, causing injuries resulting in his death. In light of this solid wall of evidence, defendant forgoes any direct attack upon the weight or sufficiency of the evidence.

---

[8] After the conclusion of the CPL article 440 proceedings, defendant's trial counsel, Patrick Bruno, Esq., died.

**POINT TWO**

**DEFENDANT WAS PROPERLY EXCLUDED FROM THE PRE-TRIAL PROTECTIVE HEARING** (responding to defendant's brief, point one)

The court was explicit in its concerns that material proceedings occur in front of the defendants.  On April 6, 2010, the court explained to the defendants that when the attorneys approach the bench, "the reason for such conferences at the bench would be simply to discuss matters of law or perhaps scheduling, and that is why these meetings or these brief conferences can be held in your absence.  There will be no material stage of trial that will go on at that point." (P. 7-8).  The court proceeded to direct the defense attorneys, that, should the topic change to one that implicates a defendant's right to be present, the attorneys must inform the court and the court would immediately end the conference and address the matter in the defendants' presence (P.8).

Thereafter, the prosecutor made an application pursuant to CPL § 240.50 for an ex parte hearing regarding the reason for granting a benefit to eyewitnesses Barbara and Denise Coles, and the identity of a potential witness (P. 15-16).  The hearing was necessary because of the danger of physical harm and the protection and security of the witness (P. 23).  After a request from a co-defendant's attorney, all of the defense attorneys were permitted to attend the hearing under a court

directive that they not divulge what was discussed until immediately before the witnesses at issue testify (P. 26).

Once in the jury room, the prosecutor revealed that someone with "nothing to live for" threatened the Coles with death if they testified (P. 27-28). Previously, someone had tried to lure one of the witnesses into an alley to discuss her testimony, which frightened her (P. 28). Because of these threats, the prosecutor planned to move the witnesses into new housing (P. 28-29).

The prosecutor also explained that there was an additional person, Osvaldo Vargas, who may also be a witness, but he had not yet met with him and was not yet certain whether this person actually was a witness (P. 30). He believed that this individual was also concerned for his safety.

The court issued both protective orders and instructed the defense attorneys not to disclose what had been discussed (P. 31).

The next day, April 7, the prosecutor explained that he had met with Mr. Vargas and intended to call him as a witness (P. 64). He asked the court's permission to ask the jurors, out of the defendants' presence, if they knew Mr. Vargas. The court explained that that would not be possible, and that the listing of names of those involved would proceed in front of the defendants (P. 65). The prosecutor then asked the court to add Orlando Vargas' name onto his witness list. Later that same day, during voir dire, and in front of the defendants, Mr. Vargas

was listed as a possible witness (P. 102). Ultimately, Mr. Vargas was not called to testify.

Defendant claims the proceedings violated his constitutional right to be present at a material stage of trial. These arguments are unpreserved and meritless. He never objected that the communications violated his constitutional rights. Accordingly, these claims are unpreserved. See People v. Pagan, 93 N.Y.2d 891, 892 (1999) ("Preservation of the[] claim [defendant was entitled to be present when the trial court interviewed the victim] is required, since judicial precautions … did not constitute material stages of [] trial"); cf. People v. Stephens, 84 N.Y.2d 990, 992 (1994)("rule requiring a defendant to preserve his claims for appellate review ordinarily applies to claims of error involving State and Federal constitutional rights").

Further, any right to be present was explicitly waived. While the prosecutor requested an ex parte proceeding, a defense attorney specifically requested permission for the attorneys to attend without their clients (P. 26). The other attorneys joined in this request, rather than objecting that this was a material stage for which the defendants were entitled to be present, thereby waiving defendant's current claim.

In Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934), the Court was unequivocal: "Nowhere in the decisions of this court is there a dictum, and still less

a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." Due process requires a defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. at 107-08. Courts "look to the effect that defendant's absence might have on the opportunity to defend." People v. Morales, 80 N.Y.2d 450, 456 (1992). While defendant claims that he could have contributed information regarding the Coles' housing situation, "courts are not impotent to protect witnesses." People v. Andre W., 44 N.Y.2d 179, 185 (1978). They have express authority to "permit a party to a motion for … a protective order … to submit papers or to testify ex parte or in camera," "where the interests of justice so require." CPL § 240.90(3); see People v. Contreras, 12 N.Y.3d 268, 273 (2009). The court "may … issue a protective order denying, limiting, conditioning, delaying or regulating discovery … for good cause, including … a substantial risk of … intimidation," or other reasons. CPL § 240.50(1). In determining the motion, "the right of a defendant to discover a potentially material witness must be balanced against a founded fear that such discovery might lead to intimidation of the witness or the influencing of his testimony." Andre W., 44 N.Y.2d at 186.

This case is similar to People v. Frost, 100 N.Y.2d 129 (2003), which found that ex parte proceedings due to concerns for witness safety were justified. In

Frost, the appellant's family tried to discourage potential witnesses from testifying, and there was "lack of cooperation by the community into prior investigations of crimes believed to have been committed by defendant." Id. at 133. Here, while it was not conclusively established that the harasser was related to defendant, the Coles were subject to threats and intimidation. At trial, Denise Coles testified that she had not called the police after witnessing the altercation because she was scared (T. 75). The Coles' unwillingness to make a prompt police report is an example of community non-cooperation posited in Frost. As in Frost, the court here was justified in taking measures to protect the witnesses' safety.

Similarly, this case is distinguishable from People v. Sloan, 79 N.Y.2d 386 (1992), upon which defendant relies. That case dealt with the right to be present during portions of voir dire. The Court held that

> [d]efendants' presence at the questioning on such matters and the resultant opportunity for them to assess the jurors' facial expressions, demeanor and other subliminal responses as well as the manner and tone of their verbal replies so as to detect any indication of bias or hostility, could have been critical in making proper determinations in the important and sensitive matters relating to challenges for cause and peremptories.

Id. at 392. Significantly, unlike in the instant matter or Frost, the defendants had not been excluded due to any safety concerns. Therefore, the careful weighing of a defendant's rights against witness safety was not contemplated in Sloan. Furthermore, defendant was present for all of voir dire, which included the

recitation of Mr. Vargas' name one day after the protective hearing.    Any

information that defendant may have had about the Coles' housing situation was

significantly outweighed by the concerns for their safety given the threats against

their lives.

Further, the proceeding was not ex-parte since, as mentioned above, the

defense attorneys, upon their application, were permitted to attend (P. 23-25).

Defendant laments constraints put on the attorneys' abilities to communicate the

information divulged at the conference with their clients (defendant's brief, p. 28,

n. 14), yet, "it goes without saying that a court, in support of the protection it

chooses to apply, has a right to call for the full co-operation of counsel as officers

of the court."  Andre W., 44 N.Y.2d at 186; see also Contreras, 12 N.Y.3d at 273

("while communication between attorney and client should generally be

unrestricted . . . there are occasions where restrictions may legitimately be

applied.") (citations omitted).

Defendant also complains that he was denied the opportunity to be

personally notified of Mr. Vargas' existence (Defendant's brief, p. 20).   At the

protective hearing, the prosecutor explained that "Osvaldo" Vargas might possibly

be a witness, but he was not certain as he had not yet met with him (P. 30).   He

believed that Mr. Vargas had concerns for his safety (P. 30).   The next day, the

prosecutor announced that he had met with Mr. Vargas and intended for him testify

(P. 64).   Later that same day, in defendant's presence, the court listed Orlando Vargas' name as possible witness (P. 102).   Therefore, defendant is complaining that he was not able to learn the incorrect name of someone who might only possibly be a witness, the name of someone whose proper name was disclosed to him the very next day.   Safety issues aside, any purported action that defendant might have taken upon learning the incorrect name of someone who might only possibly have witnessed the crime was not hampered by learning the witness's actual name the next day.

Defendant also hypothesizes that the prosecutor's decision not to call Mr. Vargas as a witness was because Mr. Vargas' testimony could have been exculpatory (Defendant's brief, P. 21-22).   Had Mr. Vargas shared exculpatory information with the prosecutor, the prosecutor would have been committing a Brady violation by not disclosing it.   There is no factual basis beyond defendant's conjecture on which to believe that a Brady violation occurred.   There are a number of permissible reasons why Mr. Vargas did not testify, and prosecutors are not obligated to present all the evidence they possess showing a defendant's guilt, only what they deem necessary to persuade the jury beyond a reasonable doubt.

Finally, defendant had no right to discover the identity of this witness. Pre-trial discovery, as governed by CPL §§ 240.20(1)(a)-(k), contains no provision obligating the prosecutor to disclose, pre-trial, the identity of the witnesses he

intends to call at trial. <u>People v. Miller</u>, 106 A.D.2d 787, 788 (3d Dept. 1984) (CPL "240 does not entitle a defendant to pretrial disclosure of prospective witnesses"). Instead, discovery of such a witness's name, on a defense motion to compel disclosure, rests in the "trial court's discretion." <u>People v. Lynch</u>, 23 N.Y.2d 262, 272 (1968). And, in the absence of a motion to compel, discovery relating to a witness the prosecutor intends to call is required only "[a]fter the jury has been sworn and before the prosecutor's opening address." CPL § 240.45(1)(a). Hence, the disclosure of Mr. Vargas's identity during jury selection complied with these statutory directives.

Defendant next argues that had he attended the hearing and learned of the threats against the Coles, he could have explained why he was not responsible for the threats, and potentially provided information about the person who was threatening the Coles, and informed the court of the Coles' motivation to secure new housing (defendant's brief, p. 22-25). Defendant's claim that he could have "nullified" the risk of exposing the harassment by explaining why he was not responsible for it is a nonsensical argument that puts the cart before the horse. <u>See</u> <u>Contreras</u>, 12 N.Y.3d at 273 ("the court can hardly disclose the document before deciding whether to order it disclosed."). Further, as Mr. Bruno explained, defendant refused to accept a guilty plea because he did not believe that the Coles would testify against him (ADA Aldridge affirmation, ¶ 8). It is therefore a

distinct possibility that not only did defendant know about the harassment, but he was relying on it to secure his acquittal. Any information that defendant may have been able to provide by virtue of his knowledge of the Coles' housing situation was outweighed by the threats to their safety.

At the protective hearing, the prosecutor explained that if the defendants knew that the Coles would be moved, the putative killer, who told Barbara Coles that he had nothing to live for and would kill them if they testified, would not wait until they testify to execute them, and would rather kill them as soon as he learned that his targets would be moved (P. 27, 29). The prosecutor planned to have the Coles move on the day that they were to testify, so that they would not return to the same location. There were also children and aunts and uncles involved (P. 29).

Its discretionary decision to delay disclosure of the housing benefit until before the Coles testified is entitled to great deference. See Andre W., 44 N.Y.2d at 185 ("once the Trial Judge has made sufficient inquiry, he must be allowed great leeway" in the method he chooses to protect a witness); People v. Boone, 194 A.D.2d 407 (1st Dept. 1993); People v. Rhodes, 154 A.D.2d 279 (1st Dept. 1989). The trial court had "good cause" for issuing the protective order, and for "delaying" disclosure of the housing benefit. CPL § 240.50(1).

## POINT THREE

**DEFENDANT ABANDONED HIS <u>PRO SE</u> MOTION FOR NEW COUNSEL** (responding to defendant's brief, point two)

Defendant admits that he never raised with the court his November 2008 <u>pro se</u> pre-printed form motion for new counsel (defendant's brief, p. 8). This Court's precedent make clear that defendant's inaction constitutes an abandonment of his motion. <u>People v. Santos</u>, 14 A.D.3d 316 (1st Dept. 2005) held:

> While it appears that defendant served a pro se motion for assignment of new counsel upon the People, the record does not establish that defendant ever filed that motion with the court. Even assuming that defendant filed the motion, he abandoned it by failing to call the court's attention to the fact that the motion remained unresolved, having had the opportunity to do so at the subsequent guilty plea and sentencing proceedings.

In <u>People v. Berry</u>, 15 A.D.3d 233, 234 (1st Dept. 2005), this Court held that "Defendant abandoned his <u>pro se</u> suppression motion by failing to call the court's attention to the fact that it remained unresolved." <u>See also</u> <u>People v. Miller</u>, 102 A.D.3d 813, 814 (2d Dept. 2013) (deeming <u>pro se</u> motion for substitution of assigned counsel abandoned after defendant appeared for several court conferences, and had attended a pretrial suppression hearing and trial without mentioning the outstanding <u>pro se</u> motion, and finding that "the defendant's conduct subsequent to the making of his <u>pro se</u> motion evinces his satisfaction with counsel and an abandonment of his unresolved constitutional application."); <u>People</u>

v. Munzert, 92 A.D.3d 1291, 1292 (4th Dept. 2012) (ruling that defendant abandoned his request for new counsel by pleading guilty while still represented by that attorney, and noting that defendant did not make a "seemingly serious request containing the requisite specific factual allegations that would have triggered the court's duty to consider such a request.... Furthermore, defendant's vague assertions that defense counsel was not in frequent contact with him and did not aid in his defense were insufficient to demonstrate good cause for substitution.") (internal citations and quotation marks omitted); People v. Andrades, 27 Misc. 3d 1204(A) (Bronx Sup. Ct. 2010) ("A pro se motion filed by a defendant who is represented by counsel is deemed to have been abandoned where it is no longer possible to grant the relief sought therein because the defendant failed to call the court's attention to the fact that the motion remained unresolved.") (internal citations and quotation marks omitted.)

In the cases now relied upon by defendant, the defendants raised their motions with the court. See People v. McCummings, 124 A.D.3d 502 (1st Dept. 2015) (defendant asked to speak to the court and then asked to hand up papers which his counsel identified as a motion for reassignment of counsel); People v. Branham, 59 A.D.3d 244, 245 (1st Dept. 2009) ("At the outset of a suppression hearing, defendant requested to address the court... Defendant managed to advise the court of his belief that he and his attorney had a conflict of interest"); People v.

Rodriguez, 46 A.D.3d 396, 397 (1st Dept. 2007) ("Shortly before jury selection, defendant interrupted a discussion of discovery matters by stating 'I don't want this lawyer'"); People v. Sides, 75 N.Y.2d 822, 824 (1990) ("defendant announced that he wanted to dismiss Gilbert and have new counsel assigned").

Finally, even if defendant had mentioned his motion, courts have held that unspecified form motions such as those filed by defendant do not make complaints sufficient to require further inquiry. See People v. Thompson, 32 A.D.3d 743 (1st Dept. 2006). In People v. Porto, 16 N.Y.3d 93, 99-100 (2010) the Court of Appeals explained that a court's duty to consider a motion for replacement of counsel is "invoked only where a defendant makes a seemingly serious request. Therefore it is incumbent upon a defendant to make specific factual allegations of serious complaints about counsel." (citations and internal quotation marks omitted). The Court held that the defendant's filing of a pre-printed form motion did not provide specific allegations of a seemingly serious nature requiring the court to inquire. The form motion, like that filed by defendant, did not contain any specific factual allegations of serious conflict with counsel. Id. at 100-101.

Defendant's form motion did not describe specific, factual cause for substitution, and he abandoned it by failing to raise it with the court. Defendant's ignorance of his obligation to raise his concerns with the court does not establish a constitutional violation.

## POINT FOUR

**DEFENDANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL** (responding to defendant's brief, points three and four)

As he did in his CPL §440.10 motion, defendant again sets forth a litany of allegations of ineffective assistance against his now-deceased counsel, arguing that counsel was ineffective during plea negotiations and at sentencing. All of the claims were summarily denied by the court below because of his failure to substantiate his self-serving claims, which were often contradicted by the record.

A defense attorney provides effective assistance "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation[.]" People v. Baldi, 54 N.Y.2d 137, 147 (1981). Counsel's performance is not to be second-guessed "with the clarity of hindsight." People v. Benevento, 91 N.Y.2d 708, 712 (1998). Rather, counsel is presumed effective, People v. Rivera, 71 N.Y.2d 705, 709 (1988), and "it is incumbent on defendant to demonstrate the absence of … legitimate explanations for counsel's shortcomings." Benevento, 91 N.Y.2d at 712. Although not essential, a showing of prejudice is a "significant" element in assessing meaningfulness. People v. Caban, 5 N.Y.3d 143, 156 (2005).

To establish ineffective assistance under the federal standard, a defendant must prove that counsel's performance was deficient, and that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

A. <u>Counsel's Performance Regarding the Plea Offer</u>

Defendant claims that Mr. Bruno did not explain felony murder to him, the strength of the case against him, or the difference between determinate and indeterminate sentences (defendant's brief p. 35). Most of those claims are belied by his affidavit. In his affidavit, defendant admits that during a video conference in 2008, "Mr. Bruno explained that I could be found guilty of felony murder because I was acting in concert with Kareem Warner and Michael Allick" (Baker affidavit, p. 4, ¶ 17). Although he goes on to state that he "did not understand what this meant and Mr. Bruno made no attempt to educate [him] as to its meaning" (<u>id.</u>), defendant does not state that he asked Mr. Bruno for any clarification. If he somehow did not understand Mr. Bruno's straightforward explanation, he apparently did not convey this to Mr. Bruno. Regarding the strength of the People's case, defendant admits that "Mr. Bruno told [him] that Denise and Barbara Coles would be testifying against [him]" (Baker affidavit, p. 4, ¶ 18). He also admits that "Mr. Bruno mentioned that there was a surveillance video of the incident" (<u>id.</u> at p. 5, ¶ 20). He was able to watch the video in open court before the People extended their plea offer (<u>id.</u> at p. 5-6, ¶ 24). Thus, prior

to rejecting the plea offer, defendant knew that the People had video footage and two witnesses who would testify against him, indeed, the very evidence that was used at trial. This information, through his own admission, was conveyed to him by Mr. Bruno. Defendant cannot now be heard to complain that Mr. Bruno did not sufficiently apprise him of the evidence against him. Defendant's claim of ignorance of the difference between determinate and indeterminate sentences is unconvincing. Given that defendant's factual allegations were made solely by defendant, were unsupported by any other affidavit, and under all the circumstances attending the case, there is no reasonable possibility that such allegations are true, the court below properly denied defendant's motion pursuant to CPL § 440.30(4)(d).

This is not the case of a defendant who was left ignorant and uninformed. Rather, this was a defendant who knew what the evidence against him would be, but, confident that the witnesses would not testify against him, decided to take the gamble of refusing a plea offer—a gamble he lost. Even after his conviction, he refused to accept responsibility and show remorse. His claims are controverted by the record and common sense.

Defendant was simply not willing to plead guilty. He admitted that after Mr. Bruno told him that he could be convicted of felony murder and that there were two eyewitnesses against him, he was not interested in a plea to possible ten year

sentence (Baker affidavit, p. 4, ¶ 19). After pleas were offered, he was in court when co-defendant Warner's attorney said "in view of the severity of the sentence, if my client were to be convicted of felony murder, I'd like to have an additional opportunity . . . to speak to him" (January 13, 2010 hearing transcript [hereinafter "H."] at 11). After Warner's counsel explained that he wanted to discuss the matter with his client's mother, the court granted counsel's request for additional time. Counsel for co-defendant Allick stated that his client was looking for a deal that would cover both the instant case and a pending robbery indictment with consecutive sentences (id.). When the court noted that Penal Law § 70.25 required "consecutive sentences for violent felonies if one crime is committed [while] at liberty on another violent felony," counsel expressed a desire to have his client plea to a non-violent offense (id. at 11-12). When the court asked, "Mr. Bruno, have you had an opportunity to speak to your client [about the plea offer]?" Mr. Bruno replied, "Yes, I have." Defendant did not refute counsel's answer (id. at 12). Mr. Bruno explained "[h]e rejected the offer. My offer, likewise, a 14 year offer would have included and covered a pending robbery, which incidentally did not occur while my client was at liberty, but he's rejecting the offer" (id.). Thus, defendant rejected the plea offer after hearing counsel for co-defendant Warner mention the "severity of the sentence" for a felony murder conviction, after hearing the court grant Warner additional time to discuss the offer with his mother, and

after hearing that, unlike co-defendant Allick's offer, his offer "would have included and covered a pending robbery."

Thus, the record shows that defendant did in fact discuss the plea with counsel and was well aware that the court would have granted him more time to consider it if he genuinely wanted to discuss it with anyone else. Even defendant's own affidavit demonstrates that he had no intent to take a plea. From the outset, defendant was opposed to pleading guilty (Baker affidavit, p. 4-5, ¶ 19), and that opinion did not change as the case progressed (Baker affidavit, p. 8, ¶ 34).

Rather, as explained by Mr. Bruno during his telephone conversation with respondent, defendant refused to plead and wanted to proceed to trial. With regard to the strength of the People's case, according to Mr. Bruno, defendant believed that the video was not clear enough to identify him. When Mr. Bruno reminded defendant that there were two eyewitnesses who knew defendant well, eyewitnesses whom defendant now claims "were engaged in prostitution and used illegal drugs" (Baker affidavit, p. 4, ¶ 18), defendant was confident that they would not come to court to testify against him. Therefore, with only a grainy video, defendant believed that the People "had no case." As both respondent and counsel for defendant acknowledge, Mr. Bruno asserted that he explained the potential sentencing exposure to defendant. In his conversation with respondent,

however, Mr. Bruno added that defendant was adamant he would not be convicted and refused to plead.[9]

Defendant also claims that his previous, unrelated acceptance of a plea offer shows that he would have taken a plea here. He falsely claims that respondent argued that defendant would not have accepted a plea based on his initial pleading of not guilty (defendant's brief, p. 40, n. 16). The issue was not an initial "not guilty" plea, but rather the fact that defendant has never accepted his guilt. Even after conviction, when interviewed by Probation, defendant maintained his innocence (PSR. 3). In order to plead guilty, defendant would have had to fully allocute to the charges and affirm that he had in fact committed the underlying acts of the crime. A defendant, like defendant, who adheres to claims of innocence, would not be able to so allocute, and the court could decline to accept any such plea. Cf. People v. Moret, 290 A.D.2d 250 (1st Dept. 2002) ("The court properly exercised its discretion in refusing to accept defendant's offer to plead guilty to a lesser offense when, during the plea allocution, defendant flatly denied his guilt. A plea of guilty to less than the entire indictment may not be entered as of right, but only with the permission of the court and prosecutor (CPL 220.10).")

---

[9] Although not contained in his argument section, defendant claims that Mr. Bruno's conversation with respondent constituted an ethical breach (defendant's brief, p. 17, n. 10). Mr. Bruno explained the advice that he provided, and that defendant was unwilling to accept a plea based on the weaknesses of the case. He did not relay privileged communications, such as whether defendant knew why the Coles might not testify, or otherwise commit an ethical violation.

Finally, defendant challenges the summary denial of his CPL §440.10 motion without a hearing due, in part, to his failure to include an affidavit from Mr. Bruno or explain his failure to do so (defendant's brief, p. 47). Defendant invites this Court to follow the Second Department in no longer requiring such affidavits, but that is not the law in this Department, and further, this is not the case to deviate from the established rule. See People v. Chen, 293 A.D.2d 362 (1st Dept. 2002); People v. Stewart, 295 A.D.2d 249 (1st Dept. 2002) (440.10 motion based on ineffective assistance properly denied where "defendant's papers were deficient in that they lacked an affirmation from trial counsel explaining his strategic decisions, or any explanation for the absence of such an affirmation"). Defendant here is represented by competent counsel, Katherine Marshall, Esq., who personally spoke to Mr. Bruno. He asserted that he properly advised defendant of "his potential sentence exposure at trial and his plea offer" (Marshall Affirmation, p. 12, ¶ 39). Defendant is not an unsophisticated pro se litigant, and his attorney actually spoke to Mr. Bruno. At the very least, defendant should have explained why he was not including an affidavit from Mr. Bruno.

There was ample reason for the trial court to deny defendant's CPL § 440.10 motion. Under CPL § 440.30(4)(d), the court below properly denied the motion without a hearing because his claims were contradicted by the record, including both defendant's own admissions about his communications with Mr. Bruno, as

well as proceedings in open court in defendant's presence. Further, there is no reasonable possibility that his allegations are true. Defendant was simply unwilling to take a plea. He was confident that the eyewitnesses, who had been subject to threats and intimidation, would not testify against him. His refusal to admit responsibility for his crimes even after he was convicted further demonstrates that he was unwilling to take a plea before trial. Defendant, who was previously determined to gamble, now seeks to use the benefit of hindsight to take back the losing hand that he wagered.

B.  Counsel's Performance at Sentencing

As he did in his CPL § 440.10 motion, defendant next claims that Mr. Bruno provided ineffective assistance of counsel at his sentencing. He claims that Mr. Bruno did not speak to defendant between the conviction and sentencing, did not investigate defendant's background or otherwise attempt to uncover mitigating evidence, and did not seek leniency or emphasize defendant's reduced role in the homicide at the sentencing hearing, resulting in a longer sentence (defendant's brief, p. 49).

Defendant has never in the history of this case—in trial, after conviction, or even during post-conviction proceedings—accepted his guilt and shown remorse. During the trial, defendant sat at the defense table grinning and making comments in the presence of the jury (ADA Aldridge affirmation, ¶ 8). After conviction,

when interviewed by Probation, defendant maintained his innocence (PSR. 3). Even on this appeal, defendant seeks to downplay his own role in causing an innocent man's death (defendant's brief, p. 49, 56).

Defendant complains that Mr. Bruno did not contest the prosecutor's statement that Mr. Luna's death was attributable to both defendants equally (S. 4-5). He claims that he was not responsible for the physical contact resulting in death, and that there was no evidence that he wanted to harm Mr. Luna (defendant's brief, p. 49, 56). This claim of reduced culpability shows how he remains unwilling to take responsibility for his actions. Barbara Coles testified that all three men held onto Mr. Luna at the top of the stairs (B. Coles: T. 23). Defendant may not have been the one to throw Mr. Luna down the stairs, but he was the one who robbed him, and if he did not intend to harm him, he certainly could have tried to prevent co-defendant Allick from throwing him down the stairs, rather than assisting him in bringing Mr. Luna to the scene of his demise. Had Mr. Bruno made the argument defendant now makes, the court very likely would have seen it for what it is: an attempt to shirk responsibility for causing another man's death. Lastly, defendant's sentence to five fewer years than Allick may reflect the fact that it was Allick who threw Mr. Luna down the stairs.

Defendant claims that because of counsel's alleged failure to confer with him prior to sentencing, he did not tell defendant that he could make a statement at

sentencing, or the benefits of making a statement (defendant's brief, p. 55). It is not for a defense attorney, however, to decide whether a defendant is going to accept responsibility for his criminal conduct and feel remorse. Genuine contrition is not born from legal advice. Here, when interviewed by Probation, defendant maintained his innocence (PSR. 3). A defense attorney would be hard pressed to maintain his client's innocence while simultaneously arguing that his anti-social behavior can be attributed to a variety of mitigating circumstances. At the beginning of the sentencing hearing, this Court informed defendant that he would have an opportunity to make a statement (S. 3). The prosecutor argued for the maximum sentence as follows: "The specific deterrence would be that this defendant should be isolated from open society for as long a period of time if he does not accept his responsibility, because he's a danger to the community" (S. 4). When the court asked to hear from defense counsel, Mr. Bruno could not very well defy defendant's steadfast insistence of innocence by arguing that the sentence should be minimal because his conduct (which defendant still denies) could be attributed to a difficult upbringing. Then, despite having heard the prosecutor request the maximum in light of defendant's refusal to accept responsibility, defendant simply stated, "Not at all" when asked whether he would like to make a statement. Such a response is not one that would be given by someone who did not previously know he would be able to make a statement but would now like more

time to consider. On the contrary, his answer revealed that he was simply "not at all" interested in making a statement. One need not be schooled in the law to simply say, "I'm sorry."

Defendant claims that Mr. Bruno did not properly investigate defendant's background or use his background as a mitigating factor to argue for a lower sentence (defendant's brief, p. 51-52). The 440 court and the sentencing court were one in the same, and in its 440 decision, the court stated

> there were no mitigating circumstances in the facts of the case. Furthermore, defendant's complaints of counsel not focusing on his difficult upbringing would not have overcome his refusal to accept responsibility, and the absence of any remorse on his part. (Judge Gross decision, p. 9).

Thus, the court made clear that its sentence would have been the same, regardless of counsel's arguments. Further, counsel's failure to mention his upbringing was a sound matter of strategy. Mr. Bruno was a veteran defense attorney, who conveyed to respondent that recounting a defendant's troubled childhood or upbringing at sentencing backfires the vast majority of the time (Aldridge affidavit, ¶ 8). Such stories are all too common, and do not mitigate robbing and killing a person who posed absolutely no threat to defendant. Cf. People v. Lane, 93 A.D.2d 92, 95 (1st Dept. 1983), quoting People v. Baldi, 54 N.Y.2d 137, 146-147 (1981) ("Our most critical concern in reviewing claims of ineffective counsel is to avoid both confusing true ineffectiveness with mere losing tactics and according

undue significance to retrospective analysis. It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy."). Defendant cites federal death penalty cases to support his argument that Mr. Bruno was ineffective in not arguing that his background provided mitigating circumstances warranting a lower sentence. See, e.g., Hooks v. Workman, 689 F.3d 1148, 1203 (10th Cir 2012) ("Mr. Evans's mitigation case failed to meet the standards we have set out for counsel in capital-sentencing proceedings."). However, they are inapplicable given that the court was not contemplating putting defendant to death. Rather, it was a sound matter of strategy for Mr. Bruno to decide that bringing defendant's history to the court's attention would very likely cause more harm than good. Cf. People v. Saunders, 301 A.D.2d 869, 872 (3d Dept. 2003) ("Next, we find no merit to defendant's claim that counsel was ineffective because he failed to consult with his client on more occasions, … investigate mitigating evidence, and consult with defendant between verdict and sentence. Even if deemed to be true, we find the allegations, premised largely on a disagreement with defense counsel's tactics and strategies, inadequate to establish that counsel's conduct rose to the level of ineffective assistance, particularly when viewed in the context of the totality of the circumstances of the representation provided at the trial level.") (internal citations omitted).

In any event, the sentencing court was privy to the PSR, which contained the following:

> [T]he defendant is one of seven children born to the legal union of Lucinda Lewis and Kevin Baker, divorced in 1994.
> The defendant and his family resided in various shelters before finding stable housing.
> He is the product of a broken home due to an extra-marital affair of his father.  His father has provided no financial or moral support for the defendant or any of his children.
>     . . . .
>
> The defendant reports that he was discharged from school during the 11th grade due to his poor attendance.

(PSR. 3-4).  Thus, the sentencing court was aware that defendant maintained that he had resided in various shelters, was the product of a broken home, received no moral or financial support from his father, and did not complete his schooling. While defendant and his mother provide more details in their affidavits, there is no reasonable probability that this more detailed information would have resulted in a more lenient sentence.  Indeed, the court sentenced defendant to an indeterminate term of 20 years to life notwithstanding the prosecutor's request for 25 years to life. Therefore, it must be presumed that, at a minimum, the sentencing court considered all of the relevant information in the PSR, including defendant's troubled upbringing and lack of education.   Providing more details about defendant's upbringing than were already contained in the PSR could, as Mr.

Bruno has subsequently explained to respondent, have backfired. This is so because the telling of a troubled upbringing might come across as an attempt to excuse criminal conduct rather than explain its genesis, thereby drawing the ire of the court rather than its sympathy.

Defendant also faults counsel for not sharing the presentence report with him (defendant's brief, p. 49-50, 54). To support his contention that this constitutes ineffective assistance, defendant cites Gonzalez v. United States, 722 F.3d 118 (2d Cir. 2013). Initially, Gonzalez is a federal case that is not binding on this court. See People v. Kin Kan, 78 N.Y.2d 54, 60 (2011). Moreover, under New York's Criminal Procedure Law, "the pre-sentence report or memorandum shall be made available by the court for examination and for copying by the defendant's attorney, the defendant himself, if he has no attorney, and the prosecutor." CPL § 390.50(2)(b). Thus, the statute envisions providing a defendant with a copy of the PSR prior to sentencing only when that defendant is proceeding *pro se*. Gonzalez is distinguishable for another notable reason. In Gonzalez, the defendant wrote a letter to the court that began as follows: "I am not saying that I'm not guilty, I do have my responsibility in this case." Gonzalez, 722 F.3d at 122. Here, as noted, by maintaining his innocence even as late as the Probation interview, defendant gave counsel little to work with. Finally, Gonzalez involved a defendant who pled guilty, rather than a judge who heard the full facts of the case in a trial. There were

certain facts, such as Gonzalez's cooperation with the government, which the attorney did not inform the judge about at sentencing, unlike here, where there were no facts that could have been brought before this Court that might have caused this Court to issue a more lenient sentence.  Gonzalez, 722 F.3d at 135.

Finally, defendant claims that given his youth and background, counsel should have emphasized his capacity for rehabilitation (defendant's brief, p. 57).  Yet, given defendant's complete refusal to take responsibility for his actions, any mention of rehabilitation would have been futile.  As the court said:

> In doing this, I consider not only your past record, but note that you have not in any way, obviously prior to trial, but here today, weeks after the trial, accepted any responsibility for what you've done. Without accepting responsibility for your conduct, it will be impossible for rehabilitation to begin (S. 6).

Defendant did not accept responsibility for his actions, and still refuses to do so.  As Mr. Bruno noted, the court "obviously paid very careful attention" (S. 5). The court noted that defendant was guilty "beyond virtually any doubt whatsoever" (S. 5).  Mr. Bruno felt it would be "foolish" to make any further arguments.  See People v Cox, 75 A.D.3d 1136 (4th Dept. 2010) (discussing allegations that counsel was ineffective for failing to seek youthful offender treatment and finding "it is well established that the failure to make motions with little or no chance of success does not constitute ineffective assistance of counsel. Here, there were no mitigating circumstances ... bearing directly upon the manner in which the crimes

were committed, nor could defendant be considered a relatively minor participant in the crimes") (internal quotation marks and citations omitted).

In summary, defendant's claims regarding counsel's alleged ineffectiveness are unsubstantiated, and counsel provided meaningful representation.

## CONCLUSION

**THE JUDGMENT APPEALED FROM SHOULD BE AFFIRMED.**

Respectfully Submitted,

DARCEL D. CLARK
District Attorney
Bronx County
*Attorney for Respondent*

NANCY KILLIAN
EMILY ANNE ALDRIDGE
Assistant District Attorneys
*Of Counsel*

January 25, 2016

**PRINTING SPECIFICATIONS STATEMENT**

This brief was prepared on a Microsoft Word processing system, in Times New Roman typeface, font size 14, and footnote font size 12.  It contains 8,235 words as counted by the Microsoft Word counting system.

*To be argued by*
KATHERINE A. MARSHALL

# Supreme Court of the State of New York

## Appellate Division – First Department

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

– against –

SEAN BAKER,

*Defendant-Appellant.*

## BRIEF FOR DEFENDANT-APPELLANT

RICHARD M. GREENBERG
OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

KATHERINE A. MARSHALL
JOSHUA FRIEDMAN
JACOB GARDENER
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Appellant*

Bronx County Indictment No. 0770/08

PRINTED ON RECYCLED PAPER ♻

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................ 1

QUESTIONS PRESENTED .................................................................... 3

STATEMENT OF FACTS ...................................................................... 4

    A.    Sean Baker's Background ........................................... 5

    B.    Patrick Bruno Failed to Provide Meaningful Representation Before Trial ................................................ 6

    C.    Sean Baker's Motion for New Counsel Was Never Heard ....... 8

    D.    Mr. Bruno Failed to Provide Competent or Meaningful Representation Regarding Sean Baker's Plea Offer ................. 8

    E.    Mr. Baker Was Prevented from Participating in a Critical Hearing Regarding Eyewitness Testimony and Benefits ........ 10

    F.    Mr. Bruno Failed to Provide Competent or Meaningful Representation During Trial or at Sean Baker's Sentencing Proceeding ............................................................. 14

    G.    Sean Baker's Motion to Vacate His Conviction ...................... 16

ARGUMENT .............................................................................. 18

POINT I. SEAN BAKER WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHT TO BE PRESENT WHEN HE WAS IMPROPERLY EXCLUDED FROM A CRITICAL HEARING ......................................... 18

    A.    The Exclusion of Mr. Baker from the April 6 Hearing in the Jury Room Violated His Constitutional and Statutory Rights. 18

          1.    Mr. Baker's Presence Would Have Significantly Improved His Ability to Defend Against the Charges .. 20

          2.    Mr. Baker Could Have Contributed to the Hearing ....... 25

B.   The Circumstances of the April 6 Hearing Do Not Fall Within the Narrow Exceptions to the Right to Presence ..................... 26

C.   The Violation of Mr. Baker's Right to Be Present Requires Vacatur of His Conviction and a New Trial ............................ 29

POINT II. SEAN BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL WHEN THE TRIAL COURT FAILED TO CONSIDER OR EVEN ADDRESS MR. BAKER'S MOTION FOR NEW COUNSEL ................................................................................ 30

A.   Sean Baker Expressed Serious Complaints About His Counsel in His Pro Se Motion for New Counsel ................................... 32

B.   The Record Does Not Indicate that the Trial Court Ever Addressed Mr. Baker's Motion ................................................. 32

POINT III. SEAN BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL FAILED TO PROVIDE ANY ADVICE WHATSOEVER REGARDING A PLEA OFFER ................................................................ 33

A.   Mr. Bruno's Failure to Provide Any Advice Whatsoever to Mr. Baker Regarding the Plea Offer Deprived Sean Baker of Meaningful Representation ...................................................... 35

B.   Mr. Bruno's Lack of Representation Caused Mr. Baker to Reject a Plea Offer He Otherwise Would Have Taken, Resulting in a Longer Sentence ............................................... 38

C.   The People Have Provided No Evidence Establishing that Mr. Baker Received Effective Assistance of Counsel Regarding the Plea Offer ............................................................................ 41

D.   The Trial Court's Denial of Mr. Baker's Motion Without a Hearing Constitutes Reversible Error ...................................... 44

POINT IV. SEAN BAKER WAS DENIED HIS CONSTITUTIONAL
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS
COUNSEL FAILED TO CONSULT WITH HIM PRIOR TO
SENTENCING, INVESTIGATE MITIGATING FACTORS, OR
PERFORM ANY ADVOCACY AT SENTENCING WHATSOEVER ..... 49

     A.    Mr. Bruno's Conduct at Sentencing Falls Below Any Objective
Standard of Reasonable Representation ................................... 50

     B.    Mr. Bruno's Deficient Representation Prejudiced Mr. Baker by
Causing Him to Receive a More Severe Sentence ................... 55

CONCLUSION ............................................................................. 58

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

Arredondo v. U.S.,
  178 F.3d 778 (6th Cir. 1999),
  rev'd in part on other grounds, 349 F.3d 310 (6th Cir. 2003) ................ 51

Blystone v. Horn,
  664 F.3d 397 (3d Cir. 2011) ................................................................... 54

Boria v. Keane,
  99 F.3d 492 (2d Cir. 1996) ................................................... 34, 37, 43-44

Burt v. Titlow,
  134 S. Ct. 10 (2013) ............................................................................... 40

Cullen v. United States,
  194 F.3d 401 (2d Cir. 1999) ............................................................ 37, 40

Geders v. United States,
  425 U.S. 80 (1976) ................................................................................. 28

Glover v. United States,
  531 U.S. 198 (2001) ............................................................................... 49

Goldberg v. Tracy,
  247 F.R.D. 360 (E.D.N.Y. 2008), adhered to on reconsideration
  01-CV08454, 2008 WL 972721 (E.D.N.Y. Mar. 24, 2008),
  aff'd, 366 F. App'x 198 (2d Cir. 2010) ............................................. 35-36

Gonzalez v. United States,
  722 F.3d 118 (2d Cir. 2013) ............................................................ 54, 55

Hooks v. Workman,
  689 F.3d 1148 (10th Cir. 2012) ............................................................. 52

Kentucky v. Stincer,
    482 U.S. 730 (1987)........................................................... 19, 24

Kyles v. Whitley,
    514 U.S. 419 (1995)............................................................... 38

Lafler v. Cooper,
    132 S. Ct. 1376 (2012).............................................34, 38, 40-41

Mask v. McGinnis,
    233 F.3d 132 (2d Cir. 2000) ................................................ 37

Mempa v. Rhay,
    389 U.S. 128 (1967)............................................................... 49

Missouri v. Frye,
    132 S. Ct. 1399 (2012)..............................................34, 38, 40

Morgan v. Bennett,
    204 F.3d 360 (2d Cir. 2000) ................................................ 28

New York v. Tellier,
    232 A.D.2d 509 (2d Dep't 1996)........................................ 25

New York v. Williams,
    85 N.Y.2d 945 (1995)........................................................... 26

Nix v. Whiteside,
    475 U.S. 157 (1986)............................................................... 38

Padilla v. Kentucky,
    130 S. Ct. 1473 (2010)..............................................34, 35, 36

People v. Baldi,
    54 N.Y.2d 137 (1981)..................................................... 33, 36

People v. Benevento,
    91 N.Y.2d 708 (1998)........................................................... 33

People v. Bonaparte,
   78 N.Y.2d 26 (1991) ................................................................ 29

People v. Branham,
   59 A.D.3d 244 (1st Dep't 2009) ....................................... 31, 33

People v. Brown,
   No. 2533-2002, 2011 WL 1366641
   (N.Y. Sup. Ct. Bronx Cnty. Jan. 13, 2011) ............................. 47

People v. Castillo,
   80 N.Y.2d 578 (1992) ................................................................ 29

People v. Contreras,
   12 N.Y.3d 268 (2009) ......................................................... 28, 29

People v. Cornell,
   110 A.D.3d 1443 (4th Dep't 2013) ......................................... 30

People v. Dokes,
   79 N.Y.2d 656 (1992) ................................................................ 22

People v. Douglas,
   29 A.D.3d 47 (1st Dep't 2006) ........................... 19, 22, 25, 30

People v. Frost,
   100 N.Y.2d 129 (2003) .................................................. 27, 28, 29

People v. Hill,
   114 A.D.3d 1169 (4th Dep't 2014) ....................... 44-45, 46, 48

People v. McCummings,
   124 A.D.3d 502 (1st Dep't 2015) ................................. 31, 32, 33

People v. McCune,
   98 A.D.3d 631 (2d Dep't 2012) ............................................... 26

People v. Medina,
   44 N.Y.2d 199 (1978) ................................................................ 30

People v. Moise,
　110 A.D.3d 49 (1st Dep't 2013) ............................................................ 29

People v. Morales,
　80 N.Y.2d 450 (1992) ............................................................ 19

People v. Porto,
　16 N.Y.3d 93 (2010) ............................................................ 32

People v. Radcliffe,
　298 A.D.2d 533 (2d Dep't 2002) ............................................................ 47

People v. Rivera,
　23 N.Y.3d 827 (2014) ............................................................ 19, 26, 29

People v. Roberites,
　115 A.D.3d 1291 (4th Dep't 2014) ............................................................ 30

People v. Rodriguez,
　46 A.D.3d 396 (1st Dep't 2007) ............................................................ 31, 32, 33

People v. Rosales,
　No. 2132-2001, 2009 WL 2496416
　(N.Y. Sup. Ct. Bronx Cnty. July 10, 2009) ............................................................ 47

People v. Sides,
　75 N.Y.2d 822 (1990) ............................................................ 31, 33

People v. Sloan,
　79 N.Y.2d 386 (1992) ............................................................ 23, 24

People v. Smith,
　195 A.D.2d 265 (1st Dep't 1993) ............................................................ 30

People v. Sprowal,
　84 N.Y.2d 113 (1994) ............................................................ 19

People v. Williams,
　125 A.D.3d 697 (2d Dep't 2015) ............................................................ 26, 27, 30

People v. Zeh,
    22 N.Y.3d 1144 (2014)..................................................................... 44, 48

Pham v. U.S.,
    317 F.3d 178 (2d Cir. 2003) ........................................................... 40, 41

Porter v. McCollum,
    558 U.S. 30 (2009)........................................................................... 51, 52

Sowell v. Anderson,
    663 F.3d 783 (6th Cir. 2011) ............................................................... 52

Strickland v. Washington,
    466 U.S. 668 (1984)...................................................................... passim

Tennessee v. Lane,
    541 U.S. 509 (2004).............................................................................. 18

United States v. Cronic,
    466 U.S. 648 (1984).............................................................................. 52

United States v. Gordon,
    156 F.3d 376 (2d Cir. 1998) ........................................................... 36, 41

Wiggins v. Smith,
    539 U.S. 510 (2003).............................................................................. 52

## STATUTES & RULES

CPL § 240.50 ......................................................................................... 10

CPL § 240.50(1) ..................................................................................... 10

CPL § 260.20 ......................................................................................... 19

CPL § 440.10(1) ................................................................................. 2, 17

CPL § 440.30 ......................................................................................... 45

CPL § 440.30(2) ..................................................................................... 45

CPL § 440.30(4)(a) ........................................................................ 45

CPL § 440.30(4)(b) .................................................................. 45, 46

CPL § 440.30(4)(c) ....................................................................... 45

CPL § 440.30(4)(d) ...................................................... 44, 45, 46, 47

CPL § 440.30(5) ................................................................. 45-46, 48

N.Y. Const. art. I, § 6 ....................................................... 16, 30, 33

Penal Law §125.25(3) ..................................................................... 1

U.S. Const. amend. VI ..................................................... 16, 30, 33

U.S. Const. amend. XIV ................................................... 16, 30, 33

### Other Authorities

ABA Standing Committee on Ethics and Professional Responsibility,
    Disclosure of Information to Prosecutor When Lawyer's Former
    Client Brings Ineffective Assistance of Counsel Claim,
    Formal Opinion 10-456 (2010) .............................................. 17

N.Y. Comp. Codes R. & Regs. tit. 22 § 1200, Rule 1.9 (2014) ................... 17

## PRELIMINARY STATEMENT

This is a consolidated appeal from (1) a judgment of conviction rendered on April 20, 2010 by the Supreme Court, Bronx County (Michael Gross, J.), and (2) an order denying a motion to vacate the judgment, entered on September 3, 2014 by the same court. Sean Baker was convicted, following a jury trial, of one count of felony murder, Penal Law § 125.25(3), and was sentenced to twenty years to life imprisonment. Timely notices of appeal were filed. Mr. Baker is currently serving his sentence.

Mr. Baker was seventeen years old at the time of his arrest. His attorney, Patrick Bruno, provided almost no counsel or advocacy throughout his criminal proceedings.[1] During the two years prior to Mr. Baker's conviction, Mr. Bruno met with him for a total of approximately forty-five minutes outside of scheduled court appearances. Mr. Bruno did not answer any of Mr. Baker's calls, nor did he provide any of the documents or information Mr. Baker requested. In response to Mr. Bruno's lack of attention and counsel, Mr. Baker filed a motion requesting new counsel, which was never even addressed by the trial court. At the most crucial moment of Mr. Baker's case—when he was offered a plea bargain for a determinate sentence of fourteen years—Mr. Bruno did not provide him with

---

[1] Patrick Bruno passed away in May 2015.

1

any counsel at all.  Mr. Bruno did not explain to Mr. Baker the charges

against him, the potential sentence he faced, the strength of the People's

evidence, the weaknesses of Mr. Bruno's defense strategy, or the slim

chances of success at trial.  Had Mr. Bruno explained any of this information,

Mr. Baker would have accepted the plea.  Mr. Bruno also failed to make any

argument whatsoever on Mr. Baker's behalf at sentencing, offering only a

four sentence statement that didn't even include a request for leniency.

Following Mr. Baker's conviction, he filed a motion to vacate his

conviction pursuant to New York Criminal Procedure Law ("CPL") §

440.10(1) on the basis of ineffective assistance of counsel.  The People's

opposition to the motion described a conversation between the ADA and Mr.

Bruno in which Mr. Bruno blatantly violated his ethical obligations to Mr.

Baker, including the duties of confidentiality and loyalty, by providing

disparaging, confidential information regarding his client.  Although the

People's opposition included no admissible evidence that Mr. Bruno had

provided counsel to Mr. Baker regarding the plea offer or advocacy at

sentencing, the trial court denied Mr. Baker's motion without a hearing,

finding that it was contradicted by the record.  The trial court also denied Mr.

Baker's motion on the basis that Mr. Baker failed to include an affidavit from

Mr. Bruno in support of the motion, which is not required under New York

law on an ineffective assistance of counsel claim. This decision was in error, and, by denying Mr. Baker's motion without a hearing, the trial court violated CPL § 440.30(5), which requires a trial court to hold a hearing on a defendant's 440.10 motion except under specific circumstances, none of which apply here.

Justice David Friedman granted Mr. Baker leave to appeal the denial of the 440.10 motion and consolidated that appeal with the direct appeal from the judgment of conviction.

In addition to the deprivation of his right to counsel, Mr. Baker was also deprived of his constitutional and statutory right to be present when he was excluded from, and prohibited from learning critical information disclosed at, a hearing held the day before trial commenced.

## QUESTIONS PRESENTED

1. Was Sean Baker deprived of his constitutional and statutory right to be present when he was improperly excluded from a critical hearing at which the People disclosed information Mr. Baker could have used in his defense and to which he could have contributed?

2. Was Sean Baker deprived of his constitutional right to counsel when the trial court refused to consider or even address his request for the

appointment of new counsel without conducting any inquiry to determine if Mr. Baker's serious allegations regarding his attorney's conduct were true?

3.     Was Sean Baker deprived of his constitutional right to the effective assistance of counsel when his attorney failed to provide essential advice to Mr. Baker regarding a plea offer made to him, and where the record did not refute Mr. Baker's claim?

4.     Was Sean Baker deprived of his constitutional right to the effective assistance of counsel when his attorney failed to make any argument whatsoever at Mr. Baker's sentencing hearing?

## STATEMENT OF FACTS

In the early morning hours of October 6, 2007, a grainy surveillance video captured images of three young men approaching a male victim, Ramiro Ramos-Luna, who was exiting a restaurant in Bronx County, New York.  The young men appear to surround the victim and walk out of the range of the video camera.  When paramedics and police officers responded to the scene about an hour later, they found Mr. Ramos-Luna at the bottom of a flight of stairs, injured and nonresponsive.  (Trial Tr. 93-135 (Apr. 14, 2010).)[2]  Mr. Ramos-Luna later succumbed to his injuries.  (Id. at 100.)

---

[2] Citations to the transcript of the pretrial hearing, the trial, and the sentencing proceeding are noted as "Hearing Tr. _," "Trial Tr. _," and "Sentencing Tr. _ ," respectively.  The pagination for the trial transcript was restarted at multiple points, and therefore a date is also included.

A police investigation located two purported eyewitnesses to the incident, Barbara and Denise Coles. Both women knew Sean Baker socially and identified him as one of the three men in the video. (Id. at 5-6, 66-71.) According to these witnesses, Mr. Baker and his two codefendants, Michael Allick and Kareem Warner, appeared to steal Mr. Ramos-Luna's wallet and then Mr. Allick pushed him, causing him to fall down a flight of stairs. (Id. at 5-12.) All three defendants were arrested for the crime in 2008.

At a pretrial proceeding on April 9, 2010, Mr. Warner accepted a plea agreement for a plea to first-degree robbery in exchange for a determinate sentence of eight years with five years of post-release supervision.[3] (Trial Tr. 379-391 (Apr. 9, 2010).) In his plea allocution, Mr. Warner admitted that he was responsible for stealing Mr. Ramos-Luna's wallet, and stated that Mr. Allick pushed the victim down the stairs. (Id.)

## A.    Sean Baker's Background

Mr. Baker's mother, Lucinda Lewis, struggled financially and emotionally while raising Mr. Baker and his six siblings. (Baker Aff. ¶ 5; Lewis Aff. ¶ 13.) As a result, Mr. Baker moved in and out of domestic violence shelters and foster homes throughout his childhood. (Baker Aff. ¶¶ 5, 6-8; Lewis Aff. ¶¶ 15-16.) Mr. Baker was placed in foster care at the age

---

[3] The People's initial plea offer to Mr. Warner was twelve years, but it was ultimately negotiated down to eight.

of five, where he was separated from his siblings and abused by his foster family, necessitating counseling. (Baker Aff. ¶¶ 7-10; Lewis Aff. ¶¶ 16-18.) After Mr. Baker returned to his mother's home two years later, he and his siblings were physically and psychologically abused by his father, who had a history of substance abuse. (Baker Aff. ¶ 6; Lewis Aff. ¶ 14.) When Mr. Baker was twelve years old, his father left the family, providing no financial support thereafter and visiting only infrequently. (Baker Aff. ¶¶ 11-12; Lewis Aff. ¶ 14.) Mr. Baker spent the rest of his childhood and early teen years living in shelters, and attended at least ten different schools during that time. (Baker Aff. ¶¶ 11, 13-16; Lewis Aff. ¶ 14.)

**B.  Patrick Bruno Failed to Provide Meaningful Representation Before Trial**

Mr. Baker first met his attorney, Patrick Bruno, via video conference in 2008. (Baker Aff. ¶ 17.) Mr. Baker next met with Mr. Bruno in January 2010, just before a hearing. (Id. ¶ 20.) This was the only contact Mr. Baker had with Mr. Bruno outside of required court appearances. Despite numerous calls and messages, Mr. Bruno was unreachable to Mr. Baker. (Id. ¶¶ 21-23.) Mr. Bruno did not provide Mr. Baker with a single document relating to his case, even after Mr. Baker repeatedly requested the evidence and documents

that the People had provided in accordance with their <u>Brady</u> obligations. (<u>Id.</u> ¶¶20, 22; <u>see also</u> Ex. B.[4])

During their brief meetings, Mr. Bruno did not explain the People's case to Mr. Baker. (<u>Id.</u> ¶¶ 17, 24.) He did not properly educate Mr. Baker regarding felony murder, explain the possible sentences Mr. Baker faced at trial, or provide any information regarding defense strategies. (<u>Id.</u> ¶¶ 17, 19, 24.) Mr. Bruno did not explain the distinction between a determinate sentence, calling for a definite number of years, versus an indeterminate life sentence, like the one Mr. Baker now serves, for which the time of release, if ever, is at the discretion of the parole board. (<u>Id.</u> ¶¶ 19, 31.) Mr. Bruno asked Mr. Baker a few questions regarding the incident itself and did not appear interested in learning anything more. (<u>Id.</u> ¶¶ 17-18.) Mr. Bruno never asked Mr. Baker any questions about his family or his upbringing (<u>id.</u> ¶ 25), and did not speak with Mr. Baker's mother or any other family member about his past (Lewis Aff. ¶¶ 12, 23). Although Mr. Baker's mother called Mr. Bruno on numerous occasions, Mr. Bruno was never available and never returned her messages. (Lewis Aff. ¶ 4.) In fact, during the only conversation Mr. Bruno ever had with Ms. Lewis, he erroneously told her that a plea deal for Mr. Baker was not possible. (Lewis Aff. ¶¶ 5-6.)

---

[4] Exhibits to the Affirmation of Katherine A. Marshall ("Marshall Aff.") are identified as "Ex. __."

**C.     Sean Baker's Motion for New Counsel Was Never Heard**

After many months of no contact from Mr. Bruno, Mr. Baker did not trust Mr. Bruno and did not believe that Mr. Bruno was adequately representing him.  (Baker Aff. ¶ 26.)  On November 22, 2008, Mr. Baker filed a *pro se* Motion for Reassignment of Counsel.  (Ex. C.)  There is no record indicating that this motion was ever addressed by the court, and Mr. Baker never heard anything further about the motion.  (Baker Aff. ¶ 26; Marshall Aff. ¶ 17.)  Mr. Baker assumed that the court had denied the motion.  (Baker Aff. ¶ 26.)  He was not aware that his motion for new counsel was required to be considered in court in his presence.  (Id.)  If he had known this, he would have raised it with the court.  (Id.)

Ms. Lewis was also concerned about the quality of Mr. Bruno's counsel.  She attempted to hire another attorney for her son but could not find one she could afford.  (See Lewis Aff. ¶ 10.)

**D.     Mr. Bruno Failed to Provide Competent or Meaningful
        Representation Regarding Sean Baker's Plea Offer**

At a pretrial hearing on January 13, 2010, Mr. Baker was asked whether he would plead guilty to a charge of manslaughter in exchange for a fourteen-year sentence.  (Hearing Tr. 10-12.)  This was the first and only time Mr. Baker heard about a plea offer.  (Baker Aff. ¶ 27.)  Mr. Bruno's sole conversation with Mr. Baker regarding this offer took place in court during

pretrial hearing when the offer was made.  (Id. ¶ 28.)  Mr. Bruno offered Mr. Baker no advice or counsel regarding whether or not he should accept the offer, did not ask Mr. Baker whether he understood the offer, or even explain what his sentence could be if he were convicted.  (Id. ¶¶ 28-29.)  Mr. Bruno did not explain the difference between determinate and indeterminate sentences, the evidence the People would bring against Mr. Baker, or his chances at trial.  (Id.)  Nor did Mr. Bruno explain how the plea agreement would work or what would happen if and when Mr. Baker was released from prison.  (Id.)  Mr. Bruno also did not ask the court for any time to speak with Mr. Baker regarding the offer.  (Hearing Tr. 10-12.)

Put on the spot, without enough information to make a decision and without the counsel of his attorney, Mr. Baker rejected the plea agreement. (Baker Aff. ¶ 34; Hearing Tr. 12.)  If he had known any of the above facts, he would have pleaded guilty.  (Id. ¶ 34.)  While Mr. Baker did profess his innocence prior to trial, he was not opposed to accepting a plea agreement in general.  (Id. ¶ 30.)  He had previously accepted a plea agreement in a different case, in which his attorney at the time explained in great detail the

evidence the People had against him and what sentence he could face if he

proceeded to trial.[5] (Id.)

**E. Mr. Baker Was Prevented from Participating in a Critical Hearing Regarding Eyewitness Testimony and Benefits**

On April 6, 2010, the day before jury selection began, the prosecutor

sought two protective orders pursuant to CPL § 240.50.  (Trial Tr. 15-16

(Apr. 6, 2010).)  The first related to a benefit given to two witnesses, Denise

and Barbara Coles, in exchange for their testimony against Mr. Baker and his

codefendants.  The second pertained to the identity of a previously

undisclosed witness.  The People were asked in open court to articulate the

reasons for their requested protective orders.  (Id. at 22-26.)  They initially

resisted, seeking to keep their reasons secret, until the court asked them to

simply select one of the permissible reasons listed in CPL § 240.50(1).  (Id. at

22.)  As the court read aloud from § 240.50(1), the People stated, "We'll go

with the danger of physical harm. . . . We can go law enforcement, legitimate

needs to be protected and security of the individual."  (Id. at 23.)  These

boilerplate rationales were cited by the People as justification for both of the

protective orders they were seeking.  (Id. at 23, 26.)

---

[5] That case, involving a charge of robbery in the third degree, was Mr. Baker's only previous conviction.  Mr. Baker received five years of probation for that charge in accordance with his plea agreement.

Then, without any explanation as to why the defendants should be excluded from the ensuing proceedings, the court heard the People's protective order applications in the jury room outside the presence of the defendants. (Id. at 26-32.) The defendants' attorneys were allowed to participate in the hearing, but were forbidden from sharing the information discussed at the hearing with their clients. (Id. at 26, 31.) Although the defendants' attorneys consented to this exclusionary approach, neither Mr. Baker nor his codefendants gave their consent. Nor was their consent requested; they were simply ordered to remain in the courtroom while the hearing occurred in the jury room.

During this ex parte hearing, the People disclosed the full basis for their applications. First, the People revealed that Barbara and Denise Coles would receive new housing. (Id. at 28.) The People stated that their relocation was necessary because an unknown individual supposedly threatened to harm the Coles if they testified. (Id. at 27-28.) The People further stated that Barbara Coles was approached by "somebody [who] tried to get her into an alley to discuss her testimony when she went out for a cigarette one night, and that was causing her great concern." (Id. at 28.) The People argued that a protective order was required so that anybody seeking to harm the Coles did not discover that they would be moved. (Id. at 29.) However, the People did

not assert, and offered no reason to believe, that Mr. Baker threatened Barbara

Coles, had any involvement in her alleged harassment, or knew the alleged

harasser.

Second, the People revealed that an individual named Osvaldo Vargas

had told police that he "had seen three guys rob a Mexican on that morning

and throw him down a flight of stairs." (Id.)  Aside from Mr. Vargas's failure

to visit the prosecutor at his office and return his two phone calls, the People

provided no evidence to suggest that Mr. Vargas feared for his safety or had

received any threats to justify concealing his existence from Mr. Baker.  (Id.

at 30.)  To support the People's protective order application, the prosecutor

offered only speculation, stating: "I think he's reticent for his security.  I did

not want to overstate, because it's not the same threat that I know was given

to the Coles, but I expect he understands that this is a difficult position that he

would be placing himself in."  (Id. at 30.)  Notably, as the People

acknowledged at the hearing, Mr. Vargas was a "working person" who may

not have lived anywhere near the prosecutor's office.  (Id. at 30-31.)

Therefore, his failure to respond promptly to the prosecutor's invitations may

have been the result of a busy schedule, lack of interest, trepidation about the

judicial system, or any number of other reasons unrelated to a fear of

retribution.[6]  Indeed, the fact that Mr. Vargas initially reported the incident

suggests that his unresponsiveness was not the product of fear.  As it turned

out, Mr. Vargas communicated with the prosecutor the following morning.

(Trial Tr. 35 (Apr. 7, 2010).)

    After the People presented their brief arguments, the court immediately

granted the applications, stating, "On the record before the Court, the

application for each of these two protective orders is granted at this time and

counsel are directed not to disclose the information set forth on the record

here."  (Trial Tr. 31 (Apr. 6, 2010).)  The proceedings then resumed in the

courtroom where Mr. Baker was only informed that "two protective orders

sought by the prosecutor were each granted under 240.50 of the criminal

procedure law."  (Id. at 33.)  No further details were disclosed.

     The following day, moments before voir dire began, the prosecutor

informed the court that he had spoken with Mr. Vargas that morning and was

adding him to the list of potential trial witnesses.[7]  (Trial Tr. 65 (Apr. 7,

2010).)  However, his status as an eyewitness and the description of what he

had seen were never disclosed to the defendants, and he was never called to

testify at trial.  In addition, outside of the ex parte hearing, the record is

---

[6] Moreover, because the prosecution did not indicate how recently they had tried to contact Mr. Vargas, there was no way for the court to determine how long he had been out of touch.

[7] The People also revealed that Mr. Vargas's first name was Orlando, not Osvaldo, as they had previously reported.  (Trial Tr. 65 (Apr. 7, 2010).)

devoid of any mention of a benefit received by Barbara and Denise Coles.
The issue was not explored during <u>voir dire</u> or trial, and it is unclear if and
when Mr. Baker's attorney ever notified him of this benefit.

**F.    Mr. Bruno Failed to Provide Competent or Meaningful
Representation During Trial or at Sean Baker's Sentencing
Proceeding**

Mr. Baker's trial commenced on April 14, 2010.[8]  At trial, Mr. Bruno
took an entirely passive role, letting counsel for Mr. Baker's codefendant,
Larry Sheehan, take the lead in presenting a defense.[9]  (Marshall Aff. ¶ 26.)
Mr. Bruno did not lead any cross-examination, instead asking only a few
questions following Mr. Sheehan's examinations.  (<u>Id.</u>; <u>see also, e.g.</u>, Trial Tr.
25-55 (Apr. 14, 2010).)

Mr. Baker's sentencing proceeding was held on May 12, 2010.  Prior to
the sentencing hearing, Mr. Bruno was provided with a copy of the Pre-
Sentence Report (Ex. E), which he never shared with Mr. Baker.  (Baker Aff.
¶¶ 39-41.)  This report contained several errors.  For example, the report's
summary stated that Mr. Baker "caused the death of Ramiro Ramos-Luna, by
throwing him down a flight of stairs," even though it was Mr. Allick, and not

---

[8] Mr. Bruno had surgery for a heart attack in March 2010, just prior to trial.  (<u>See</u> Ex. D.)
[9] The most interest Mr. Bruno appeared to show was in a closed-door <u>voir dire</u> session
when a juror claimed that he could not be fair because of his feelings toward the police
after the Sean Bell incident.  (Trial Tr. 96-97 (Apr. 7, 2010).)  Mr. Bruno rhetorically
asked the juror whether that meant "we should ignore making arrests for murder. . . .  So to
get even, we ignore murders in your neighborhood.  You live there, sir, right?  Thank you,
sir.  Thank you for your frankness."  (<u>Id.</u>)

Mr. Baker, who pushed the victim down the stairs. (Ex. E.) Additionally, the

report stated that Mr. Baker was a member of "The Bloods" gang, even

though Mr. Baker is not, and never has been, a member of any gang, and no

evidence was ever introduced to suggest otherwise. (Ex. E; Baker Aff. ¶ 44.)

The prosecutor, John Morabito, mentioned on the record that there "may be

one or two slight inaccuracies as they were recounted by the probation

report," but Mr. Bruno himself never mentioned those errors or noted where

they were in the report so that the court could correct them or take them into

account. (Sentencing Tr. 3-5.)

    After Mr. Morabito presented an argument for the maximum possible

sentence, Mr. Bruno was provided an opportunity to speak on Mr. Baker's

behalf. (Sentencing Tr. 3-5.) Mr. Bruno did not correct the errors in Mr.

Morabito's description of the case. (Id. at 5.) He did not present any

mitigating evidence, or explain Mr. Baker's minimal role in the crime. (Id.)

Mr. Bruno did not even suggest an appropriate sentence, and he did not

respond to Mr. Morabito's request for the maximum sentence. (Id.) Instead,

the entirety of Mr. Bruno's statement—in a case that carried a life sentence

and where the range between the permissible minimum terms was an entire

decade—was as follows: "Your Honor, there is nothing I could add. You

were present for the jury trial, you obviously paid very careful attention.  I would be foolish to rehash any facts at this time." (Id.)

In addition to providing <u>no</u> advocacy at sentencing, Mr. Bruno also failed to explain to Mr. Baker that he could make a statement on his own behalf, and that it might be beneficial for him to do so.  (Baker Aff. ¶ 39.) Accordingly, when the court asked if he had a statement to make, Mr. Baker had nothing prepared and did not know that it would help his case to make a statement.  (Id. ¶ 50.)  Without any advice from counsel, Mr. Baker chose not to speak, and the court sentenced Mr. Baker to twenty years to life in prison. (Id. ¶ 50; Sentencing Tr. 5-6.)

**G.     Sean Baker's Motion to Vacate His Conviction**

On April 15, 2014, Mr. Baker filed a motion pursuant to CPL § 440.10(1) to vacate the judgment of conviction on the grounds that it was obtained in violation of the right to effective assistance of counsel under the United States Constitution and the New York State Constitution.  <u>See</u> Crim. Proc. Law. § 440.10(1); U.S. Const. amends. VI, XIV; N.Y. Const. art. I., § 6. The motion argued that Mr. Bruno's failure to properly advise Mr. Baker regarding his plea offer and failure to perform any advocacy at Mr. Baker's sentencing hearing deprived Mr. Baker of effective assistance of counsel. (<u>See</u> Memorandum of Law in Support of Defendant's Motion Pursuant to

New York Criminal Procedure Law § 440.10(1) to Vacate Judgment of

Conviction ("Def.'s Mem.").) On July 11, 2014, the People filed an

opposition to the motion, which included unsworn hearsay statements

allegedly made by Mr. Bruno to the prosecutor assigned to the case.[10] (See

People's Memorandum of Law ("People's Opp.").) Mr. Baker filed reply

papers on August 11, 2014. (See Reply Memorandum of Law in Further

Support of Defendant's Motion Pursuant to New York Criminal Procedure

Law § 440.10(1) to Vacate Judgment of Conviction ("Def.'s Reply").)

Based solely on the hearsay and unethical statements allegedly made by

Mr. Bruno to the prosecutor, and despite evidence on the record that Mr.

Bruno had failed to perform any advocacy at Mr. Baker's sentencing hearing,

the trial court denied Mr. Baker's motion in its entirety without a hearing in

an opinion and order dated September 3, 2014 (the "Order"). The trial court

held, inter alia, that Mr. Baker's assertions regarding the plea agreement were

---

[10] By discussing the matter with the ADA, Mr. Bruno violated his ethical duties of confidentiality and loyalty, which continue beyond an attorney's representation of his client. N.Y. COMP. CODES R. & REGS. tit. 22 § 1200, Rule 1.9 (2014) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client . . . or (2) reveal confidential information of the former client protected by Rule 1.6."). While an ineffective assistance of counsel claim by a former client impliedly waives the attorney-client privilege, it does not end the obligation to maintain confidentiality. See ABA Standing Committee on Ethics and Professional Responsibility, Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim, Formal Opinion 10-456 at 1 (2010). Counsel may disclose confidential communications and take a position adverse to his former client only if compelled to testify in an adjudicative proceeding, which was not the case here.

contradicted in the record because Mr. Bruno replied "I have" when asked

whether or not he discussed the plea offer with his client (<u>see</u> Order at 6), and

that Mr. Bruno's failure to provide any advocacy during Mr. Baker's

sentencing hearing did not constitute ineffective assistance of counsel because

"there were no mitigating circumstances." (<u>See</u> Order at 9). On February 2,

2015, Justice David Friedman granted Mr. Baker leave to appeal the denial of

his motion. Mr. Baker filed a notice of appeal of the Order on February 17,

2015.

## **ARGUMENT**

## **POINT I.**

### **SEAN BAKER WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHT TO BE PRESENT WHEN HE WAS <u>IMPROPERLY EXCLUDED FROM A CRITICAL HEARING</u>**

**A.     The Exclusion of Mr. Baker from the
         April 6 Hearing in the Jury Room
         Violated His Constitutional and Statutory
         Rights**

It is well settled that a defendant has a constitutional and statutory right

to be present at trial and trial-related proceedings. The Due Process Clause of

the United States Constitution "guarantee[s] to a criminal defendant . . . the

right to be present at all stages of the trial where his absence might frustrate

the fairness of the proceedings." <u>Tennessee v. Lane</u>, 541 U.S. 509, 523

(2004) (internal quotation marks and citations omitted). Even where a

"defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (internal quotation marks omitted). A similar right to presence is enshrined in Article I, Section 6 of the New York State Constitution. People v. Sprowal, 84 N.Y.2d 113, 117 (1994). In addition to these constitutional protections, state statute, specifically CPL § 260.20, affords a defendant the "absolute and unequivocal" right, People v. Rivera, 23 N.Y.3d 827, 831 (2014), to be present at all trial proceedings, including "ancillary proceedings[,] so long as the defendant can potentially contribute to the proceeding," Sprowal, 84 N.Y.2d at 118, or "his or her presence would have a substantial effect on the ability to defend against the charges." People v. Douglas, 29 A.D.3d 47, 52 (1st Dep't 2006); see also People v. Morales, 80 N.Y.2d 450, 456 (1992) (noting a defendant's right to be present at trial and its "myriad ancillary proceedings, some [of which are] conducted pretrial, others during trial"). The purpose of this sacred right to presence is "to prevent the ancient evil of secret trials." Id. at 455.

By excluding Mr. Baker from the April 6 hearing—at which the People revealed the existence of a third eyewitness and a housing benefit given to

other witnesses in exchange for their testimony against him—and prohibiting his attorney from sharing this information with him, the court deprived Mr. Baker of his right to presence. Indeed, had Mr. Baker been allowed to attend the hearing, or at least learn what transpired, he would have been far better equipped to defend against the charges. In addition, he could have meaningfully contributed to the hearing.

    1.   <u>Mr. Baker's Presence Would Have Significantly Improved His Ability to Defend Against the Charges</u>

First, the People disclosed critical information at the hearing that Mr. Baker could have used in his defense. Most notably, it was revealed that there was a third eyewitness to the crime, a crucial fact Mr. Baker was never told. Had Mr. Baker been informed of Mr. Vargas's existence, he could have demanded that his attorney or an investigator interview Mr. Vargas and call him as a witness. Mr. Baker might even have known Mr. Vargas and told his attorney where to find him. Mr. Baker would have jumped at the chance to refute the charges against him through the testimony of an eyewitness. Moreover, unlike Barbara and Denise Coles—the only other eyewitnesses to the crime—Mr. Vargas was apparently unbiased. Indeed, he, unlike the Coles, had no known reason to accuse Mr. Baker of committing the crime in

order to protect someone he believed was a suspect.[11]  Similarly, he, unlike

the Coles, would receive no benefit for his testimony.  Moreover, Mr.

Vargas's view of the crime might have been better than that of the Coles,

making him a more reliable witness.  In short, Mr. Vargas could have

supplied credible, exculpatory testimony which would have discredited the

Coles's testimony, undermined the People's case, and possibly secured an

acquittal for Mr. Baker.

For reasons that were not disclosed, the People never called Mr. Vargas

to testify.  Instead, the People chose to rely exclusively on dark, grainy

surveillance video shot from a distance that rendered the suspects' faces

unrecognizable, along with the testimony of two individuals—Barbara and

Denise Coles—with an established motive to lie.  The People's decision not

to call Mr. Vargas suggests that he was not helpful to their case and therefore

could have proved useful to Mr. Baker's defense.  Unfortunately, we cannot

know what Mr. Vargas would have said on the stand because not only did he

not testify, but to Mr. Baker's knowledge he was never contacted by defense

counsel (and the record does not suggest otherwise).  Mr. Vargas might have

stated that Mr. Baker was not one of the individuals who participated in the

---

[11] Barbara Coles testified that when the police initially approached her to discuss the murder, she believed that Cory Sumlin, the father of one of her children, was a suspect and had been arrested in connection with the crime.  (Trial Tr. 61 (Apr. 7, 2010); Trial Tr. 26, 30, 48 (April 14, 2010).)

crime—or at least that he did not recognize Mr. Baker—and could have

contradicted other aspects of the People's case. By excluding Mr. Baker from

the April 6 hearing and prohibiting his attorney from disclosing the existence

of Mr. Vargas as an eyewitness, the court robbed Mr. Baker of a vital

opportunity to defend himself.

Had Mr. Baker not been excluded from the hearing, he also would have

improved his ability to defend against the charges by learning about the

housing benefit given to Barbara and Denise Coles. Mr. Baker knew the

Coles socially and had spent time with them at their house. (Trial Tr. 5, 6, 71

(Apr. 14, 2010).) Thus, he was in a unique position to assess their current

housing situation, their interest in obtaining new housing, and their

willingness to lie (both about what they had witnessed and about whether

anyone had threatened them) in order to obtain new housing. "A key

consideration in determining whether a defendant's presence would be useful

or would affect his ability to defend is whether the proceeding 'involved

factual matters about which defendant might have peculiar knowledge that

would be useful in advancing the defendant's or countering the People's

position.'" Douglas, 29 A.D.3d at 52 (quoting People v. Dokes, 79 N.Y.2d

656, 660 (1992)). By prohibiting Mr. Baker from learning about the housing

benefit, the court prevented him from helping his attorney make an informed

decision about whether and how to discredit the Coles's testimony based on the benefit they received. Although this strategy risked exposing Barbara Coles's alleged harassment, Mr. Baker could have nullified this risk by explaining why he was not responsible for that harassment. In short, Mr. Baker's attorney needed Mr. Baker's input to adequately assess whether the potential reward of exploring the housing benefit outweighed the risk.[12] By prohibiting this critical exchange of information between Mr. Baker and his attorney, the court prevented Mr. Baker from helping his attorney discredit the People's key witnesses.[13]

People v. Sloan, 79 N.Y.2d 386 (1992), is instructive. In Sloan, the trial judge posed various questions regarding pretrial publicity to prospective jurors out of the hearing of the defendants. The Court of Appeals held that this violated the defendants' right to presence because they were prevented from personally assessing the prospective jurors' "facial expressions, demeanor and other subliminal responses as well as the manner and tone of

---

[12] The court indicated that defense counsel could disclose to their clients the information contained in the protective orders "immediately before the involved witness testifie[d]." (Trial Tr. 26 (Apr. 6, 2010).) However, even assuming that Mr. Baker's attorney did discuss the housing benefit with Mr. Baker immediately before the Coles testified, this would have provided insufficient time for Mr. Baker and his attorney to meaningfully confer about how to use this information to discredit their testimony. It also would have been too late for them to confer about whether and how to explore the issue on voir dire. Moreover, because Mr. Vargas never testified, Mr. Baker was never informed about his existence as an eyewitness.

[13] The need for Mr. Baker, and not just his attorney, to know information important to his defense is heightened here because, as discussed below in Points III and IV, his attorney provided ineffective assistance.

their verbal replies so as to detect any indication of bias or hostility." <u>Sloan</u>, 79 N.Y.2d at 392. The Court reversed the defendants' convictions and ordered a new trial, explaining that "[w]e cannot conclude that defendants' presence at the side-bar questioning would have been of no benefit or that their absence during such questioning would not have had a substantial effect on their ability to defend." <u>Id.</u> at 393. Thus, the Court ruled that the defendants' presence was required because of the potential benefit of being able to evaluate prospective jurors' tone and demeanor. In Mr. Baker's case, the potential benefit of his presence was even greater; while the <u>Sloan</u> defendants missed an opportunity to interpret subjective cues (which their attorneys were allowed to reveal and discuss with them), Mr. Baker was prevented from learning concrete facts that directly impacted his defense.

Given the important information that was disclosed—concerning matters about which Mr. Baker had peculiar knowledge—there is no doubt that Mr. Baker's presence at the April 6 hearing would have at least contributed to his ability to defend against the charges. That is all that is necessary for his presence to have been required. <u>See, e.g.</u>, <u>Kentucky v. Stincer</u>, 482 U.S. 730, 744 n.17 (1987) ("[T]he question is . . . whether the defendant's presence at the proceeding would have contributed to the defendant's opportunity to defend himself against the charges.").

24

2.    <u>Mr. Baker Could Have Contributed to the Hearing</u>

Beyond his ability to defend against the charges, Mr. Baker also could have contributed to the hearing. For instance, he may have had useful information about the person named "Day-Day" and her alleged threats to Barbara Coles, which could have caused the court to reject the People's application for a protective order. Moreover, as discussed above, Mr. Baker was familiar with Barbara Coles and had been to her house. Thus, if she was lying about the threats she received in order to obtain new housing, Mr. Baker might have known and could have notified the court. Similarly, Mr. Baker may have known Osvaldo Vargas and had information relating to why he had not yet responded to the prosecutor's attempts to contact him (e.g., because Mr. Vargas had an outstanding warrant for his arrest or was an undocumented alien). In sum, Mr. Baker could have provided critical information regarding the witnesses for whom the protective orders were granted which could have altered the outcome of the hearing. <u>See, e.g.</u>, <u>Douglas</u>, 29 A.D.3d at 52-53 (finding right-to-presence violation where defendant was excluded from conference regarding the admissibility of victim's prior violent acts because defendant might have contributed relevant information); <u>New York v. Tellier</u>, 232 A.D.2d 509, 509-10 (2d Dep't 1996) (finding right-to-presence violation where defendant was excluded from proceeding at which recordings of his

conversations were redacted because defendant "was in a position to indicate what was said and what was meant by his statements"). Unfortunately, because Mr. Baker was prevented from participating in the hearing, and from even learning about what was discussed, it is impossible to know the full extent to which his contributions would have impacted its outcome. However, it is indisputable that Mr. Baker could have "potentially contribute[d] to the proceeding," Rivera, 23 N.Y.3d at 831, which is enough to trigger his right to presence.

**B.     The Circumstances of the April 6 Hearing
        Do Not Fall Within the Narrow
        Exceptions to the Right to Presence**

Courts have identified two limited scenarios where a defendant's presence is not required. The first is "where the defendant's presence would be useless, or the benefit but a shadow." People v. McCune, 98 A.D.3d 631, 632 (2d Dep't 2012) (internal quotation marks and citation omitted). This situation exists when "counsel presses legal positions to which the defendant has nothing of value to contribute, such as at precharge conferences, discussions of the sufficiency of a read back, or conferences addressing the declaration of a mistrial." New York v. Williams, 85 N.Y.2d 945, 947 (1995) (internal citations omitted). The second scenario is where the prosecution demonstrates the existence of "the most exceptional and unusual

circumstances" which override the defendant's right to be present.  <u>People v.</u> <u>Frost</u>, 100 N.Y.2d 129, 132 (2003).  Neither scenario existed here.

With respect to the first scenario, Mr. Baker's presence at the hearing certainly would not have been "useless."  On the contrary, as discussed above, Mr. Baker could have significantly improved his ability to defend against the charges had he been informed that there was a third eyewitness and that the Coles would receive new housing in exchange for their testimony.  He also could have potentially contributed to the hearing given his familiarity with the Coles and his possible familiarity with Mr. Vargas.  Unlike a "precharge conference[], discussion[] of the sufficiency of a read back, or conference[] addressing the declaration of a mistrial," <u>Williams</u>, 85 N.Y.2d at 947, the hearing from which Mr. Baker was excluded involved more than questions of law.  Indeed, it involved important issues of fact—the identity and expected testimony of a previously undisclosed witness and the housing benefit given to the People's two key witnesses—that were highly relevant to Mr. Baker's defense.

With respect to the second scenario, the circumstances under which the court excluded Mr. Baker from the hearing in the jury room were in no way "the most exceptional and unusual," and, in any case, did not outweigh Mr. Baker's right to be present.  In cases where courts have found such

27

circumstances and concluded that they overrode the defendant's right to presence, the facts were very different from those here. For instance, in <u>Frost</u>, unlike in the present case, the defendant was accused of shooting the victim, the defendant's family had attempted to discourage potential witnesses from testifying, and the community had previously refused to cooperate during prior investigations of crimes believed to have been committed by the defendant. <u>Frost</u>, 100 N.Y.2d at 132-33. Thus, there was strong evidence that the defendant's presence posed a serious risk to the witnesses' safety. Here, by contrast, there was no indication that Mr. Baker or his family had attempted or would attempt to threaten Barbara Coles, Denise Coles, or Osvaldo Vargas. In fact, there was virtually no evidence whatsoever that Mr. Vargas feared that anyone—much less Mr. Baker—would harm him if he testified.[14] Furthermore, in <u>Frost</u>, the hearing at which the defendant was excluded did not involve the disclosure of benefits given to witnesses. The only pertinent information that was withheld from the defendant was the

---

[14] The injustice of excluding Mr. Baker from the hearing was compounded when the court forbade his attorney from discussing the disclosed information with Mr. Baker. This restriction on communication between Mr. Baker and his attorney—regarding facts that were critical to Mr. Baker's defense—was unjustified, as the prosecution offered no reason to believe that Mr. Baker posed a threat to any of the witnesses. <u>See, e.g.</u>, <u>People v. Contreras</u>, 12 N.Y.3d 268, 273 (2009) (holding that ("[c]ommunication between attorney and client should generally be unrestricted" ); <u>Geders v. United States</u>, 425 U.S. 80, 81, 91-92 (1976) (holding that the trial court deprived defendant of counsel in violation of the Sixth Amendment when it ordered the defendant not to consult with his attorney during a seventeen-hour overnight recess); <u>Morgan v. Bennett</u>, 204 F.3d 360, 367 (2d Cir. 2000) (holding that a "court should not, absent an important need to protect a countervailing interest, restrict the defendant's ability to consult with his attorney").

identity of certain witnesses.  However, unlike Mr. Baker, the defendant in

<u>Frost</u> had a full opportunity to cross-examine each of these undisclosed

witnesses at trial.  <u>Id.</u> at 135.

Other cases that have upheld the defendant's exclusion from trial-

related proceedings featured similarly distinguishable facts: for example,

<u>People v. Castillo</u>, 80 N.Y.2d 578 (1992), and <u>People v. Moise</u>, 110 A.D.3d

49 (1st Dep't 2013), involved the protection of confidential informants'

identities, an issue that was not present in this case, and <u>People v. Contreras</u>,

12 N.Y.3d 268, 273 (2009), involved "the disclosure by lawyer to client of an

embarrassing and inflammatory document having nothing to do with the

case."

**C.      The Violation of Mr. Baker's Right to Be**
**Present Requires Vacatur of His**
**Conviction and a New Trial**

Finally, a violation of the right to be present is a "mode of proceedings"

error, meaning it "mandate[s] reversal without regard to whether any

prejudice flowed and despite the presence and consent of defense counsel."

<u>Rivera</u>, 23 N.Y.3d at 832 (internal quotation marks omitted); <u>see also</u> <u>People</u>

<u>v. Bonaparte</u>, 78 N.Y.2d 26, 32 (1991) ("defendant's right to be present at

critical stages of the trial . . . implicate . . . the mode of proceedings

prescribed by law and present reviewable questions of law even in the

absence of a timely objection" (internal quotation marks omitted)); People v. Smith, 195 A.D.2d 265, 265-66 (1st Dep't 1993) (holding that mode of proceedings error does not require preservation by objection and is not susceptible to harmless error analysis). Therefore, because Mr. Baker's fundamental right to presence was violated, his conviction must be vacated and a new trial granted. See, e.g., People v. Williams, 125 A.D.3d 697, 698 (2d Dep't 2015); People v. Roberites, 115 A.D.3d 1291, 1293 (4th Dep't 2014); People v. Cornell, 110 A.D.3d 1443, 1444 (4th Dep't 2013); Douglas, 29 A.D.3d at 53-54.

## POINT II.

### SEAN BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL WHEN THE TRIAL COURT FAILED TO CONSIDER OR EVEN ADDRESS MR. BAKER'S MOTION FOR NEW COUNSEL

Both the United States Constitution and the New York State Constitution guarantee the right to counsel for every criminal defendant. U.S. Const. amends. VI, XIV; N.Y. Const. art. I, § 6. In order to safeguard that right, a trial court has a continuing duty to "carefully evaluate serious complaints about counsel." People v. Medina, 44 N.Y.2d 199, 207 (1978). When faced with a defendant's request for new counsel, a trial court must conduct an inquiry to determine whether or not the defendant has established good cause, including providing the defendant with an opportunity to explain

the basis for his request. See People v. McCummings, 124 A.D.3d 502 (1st Dep't 2015) (reversing conviction where trial court denied defendant's request for substitution of counsel without conducting any inquiry whatsoever or permitting defendant to explain why such an inquiry was necessary); People v. Branham, 59 A.D.3d 244, 245 (1st Dep't 2009) (reversing conviction where trial court did not allow defendant to explain his request for new counsel prior to denying the request); People v. Rodriguez, 46 A.D.3d 396, 397 (1st Dep't 2007) (holding that a new trial was warranted where the trial court improperly denied defendant's request for substitution of counsel "without conducting an inquiry or permitting defendant to explain why he wanted a different lawyer"); People v. Sides, 75 N.Y.2d 822, 825 (1990) (trial court committed reversible error by dismissing defendant's complaints about his counsel without asking "even a single question").

Although Mr. Baker filed a motion for new counsel over seven months before his trial began, the trial court failed even to address Mr. Baker's motion at any one of the numerous hearings held before trial. (Marshall Aff. ¶ 17.) The trial court's disregard of its duty to investigate a serious motion for new counsel constitutes reversible error warranting a new trial. See McCummings, 124 A.D.3d at 502; Branham, 59 A.D.3d at 245; Rodriguez, 46 A.D.3d at 397; Sides, 75 N.Y.2d at 825.

## A.  Sean Baker Expressed Serious Complaints About His Counsel in His <u>Pro</u> <u>Se</u> Motion for New Counsel

On November 22, 2008, Mr. Baker filed a <u>pro</u> <u>se</u> Motion for Reassignment of Counsel that stated that Mr. Bruno had failed to visit Mr. Baker, had failed to conduct a proper investigation in his case, and had failed to keep Mr. Baker informed of any pertinent motions.  (Affidavit in Support of Motion for Reassignment of Counsel at 1.)  As the Court of Appeals has explained, where a defendant "voices" any "seemingly serious" complaints about his counsel, the trial court <u>must</u> conduct, at the very least, a "minimal inquiry" into that request.  <u>People v. Porto</u>, 16 N.Y.3d 93, 100 (2010).  Mr. Baker's serious, specific allegations were sufficient to trigger the trial court's duty to conduct an inquiry.  <u>See McCummings</u>, 124 A.D.3d at 502, 873 N.Y.S.2d at 280; <u>Rodriguez</u>, 46 A.D.3d at 397.

## B.  The Record Does Not Indicate that the Trial Court Ever Addressed Mr. Baker's Motion

There is no indication in the record that the trial court ever addressed Mr. Baker's motion.  (Marshall Aff. ¶ 17.)  Mr. Baker himself never heard anything further about the motion, and assumed the court had denied it. (Baker Aff. ¶ 26.)  A trial court's failure to conduct <u>any</u> inquiry into a defendant's serious complaints regarding his assigned counsel constitutes a

violation of the defendant's fundamental right to counsel warranting a

reversal of the defendant's conviction and a new trial.  See McCummings,

124 A.D.3d at 502; Branham, 59 A.D.3d at 245; Rodriguez, 46 A.D.3d at

397; Sides, 75 N.Y.2d at 825.  As a result, the trial court committed reversible

error, and this Court must vacate Mr. Baker's conviction and order a new

trial.  See McCummings, 124 A.D.3d at 502; Branham, 59 A.D.3d at 245;

Rodriguez, 46 A.D.3d at 397; Sides, 75 N.Y.2d at 825.

## POINT III.

### SEAN BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL FAILED TO PROVIDE ANY ADVICE WHATSOEVER REGARDING A PLEA OFFER

Every criminal defendant is guaranteed the right to effective assistance

of counsel under both the United States Constitution and the New York State

Constitution.  U.S. Const. amends. VI, XIV; N.Y. Const. art. I, § 6.  In New

York, a criminal defense attorney must provide "meaningful representation"

under an objective standard that measures counsel's performance against the

"strategic decisions of a 'reasonable competent attorney.'"  People v.

Benevento, 91 N.Y.2d 708, 712 (1998); see also People v. Baldi, 54 N.Y.2d

137, 147 (1981).  A criminal defendant's Sixth Amendment right is violated

where his attorney's representation "fell below an objective standard of

reasonableness" and "there is a reasonable probability that, but for counsel's

33

unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).

The "most important single decision" that Mr. Baker made in his criminal case was whether or not to accept a plea bargain offered by the People.  See <u>Boria v. Keane</u>, 99 F.3d 492, 497 (2d Cir. 1996); <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1407 (2012) ("The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings," including "the entry of a guilty plea.").  Accordingly, Mr. Baker's right to counsel included receiving effective assistance of counsel regarding the advantages and disadvantages of taking the plea.  See <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473, 1484 (201) (counsel has a "critical obligation . . . to advise the client of the advantages and disadvantages of a plea agreement"); <u>Boria</u>, 99 F.3d at 497 (defense counsel "has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable"); <u>see also</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012).

Effective assistance of counsel regarding a plea offer is particularly important where, as here, there is a large disparity between the offer and the potential sentence at trial.  Mr. Baker's plea offer consisted of a determinate sentence of fourteen years, under which he would have been released before his thirty-fourth birthday.  He is now serving an indeterminate sentence of

twenty years to life, which means Mr. Baker may spend the remainder of his life in prison.  Mr. Baker's attorney did not explain to him the meaning of the felony murder charges, the strength of the evidence the People planned to present at trial, the chances that he would prevail at trial, or—most importantly—the difference between the determinate sentence he was offered—for which he would have been released after a specific number of years—and the indeterminate sentence he now serves—in which his release, if ever, is up to the discretion of the parole board.  Instead, Mr. Baker's attorney did not provide him with <u>any</u> counsel at all regarding the plea offer, leaving Mr. Baker to make the most crucial decision in his criminal case without the benefit of a lawyer.

**A.     Mr. Bruno's Failure to Provide Any
        Advice Whatsoever to Mr. Baker
        Regarding the Plea Offer Deprived Sean
        Baker of Meaningful Representation**

A criminal defense attorney does not provide effective assistance of counsel under the United States Constitution or meaningful representation under the New York Constitution where he fails to (1) "advise the client of the advantages and disadvantages of a plea agreement," <u>Padilla</u>, 130 S. Ct. at 1484, and (2) inform the client of the maximum sentence exposure the client faces if he decides to proceed to trial instead of accepting the plea, <u>see</u> <u>Goldberg v. Tracy</u>, 247 F.R.D. 360, 297 (E.D.N.Y. 2008), adhered to on

reconsideration, 01-CV08454, 2008 WL 972721 (E.D.N.Y. Mar. 24, 2008)

and aff'd 366 F. App'x 198 (2d Cir. 2010); United States v. Gordon, 156 F.3d

376, 380 (2d Cir. 1998) ("[K]nowledge of the comparative sentence exposure

between standing trial and accepting a plea offer will often be crucial to the

decision whether to plead guilty."). Mr. Bruno did neither. Mr. Bruno's

failure to convey this basic, essential information to his client deprived Mr.

Baker of "meaningful representation" under New York law, see Baldi, 54

N.Y.2d at 137 and does not meet the "objective standard of reasonableness"

under the Sixth Amendment, see Strickland, 466 U.S. at 688, 694.

Mr. Bruno first told Mr. Baker about the terms of the plea offer during

a pretrial hearing minutes before the court asked Mr. Baker if he would accept

the plea. (See Baker Aff. ¶¶ 28-29.) Mr. Bruno did not provide Mr. Baker

with any advice regarding the plea whatsoever. (Id.; Hearing Tr. 10-12.) Mr.

Bruno did not ask Mr. Baker whether or not he understood the terms of the

plea offer, or provide Mr. Baker with information regarding the advantages

and disadvantages of accepting it (id. at ¶ 29), as he was required to do.

Padilla, 130 S. Ct. at 1484. Nor did Mr. Bruno convey to Mr. Baker that (1)

Mr. Baker's codefendant, who had already pleaded out of the case, had placed

Mr. Baker at the scene of the crime during his plea allocution, which occurred

outside Mr. Baker's presence; and (2) Mr. Bruno's entire defense rested on

36

discrediting two eyewitnesses, which was unlikely given that the witnesses knew Mr. Baker socially—facts which would have informed Mr. Baker of the strength of the evidence against him.  See Boria, 99 F.3d at 496-97 (finding ineffective assistance of counsel where defense counsel did nothing to persuade his client to accept favorable plea offer and did not convey his opinion that it would be "almost impossible" for defendant to obtain an acquittal).

Mr. Bruno also did not inform Mr. Baker of the maximum potential sentence he faced, or explain the key difference between determinate and indeterminate sentences (see Baker Aff. at ¶ 29), despite his clear obligation to do so.  See Mask v. McGinnis, 233 F.3d 132, 138 (2d Cir. 2000) (attorney's "failure to determine accurately [the defendant's] potential sentencing exposure was an egregious error"); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) (finding ineffective assistance of counsel where counsel underestimated the defendant's sentencing exposure if convicted at trial).

Instead, the only information Mr. Bruno gave Mr. Baker regarding the plea was the terms of the offer itself—no more than the prosecutor provided. (See id. at ¶ 29.)  With no information to place the offer in context, no potential sentence to compare it to, no knowledge of the strengths and

weaknesses of his case, and even lacking an understanding of the meaning of the specific charge against him, Mr. Baker had only minutes to make the most significant decision of his criminal case—one that would determine the course of the rest of his life.

**B.      Mr. Bruno's Lack of Representation
        Caused Mr. Baker to Reject a Plea Offer
        He Otherwise Would Have Taken,
        Resulting in a Longer Sentence**

Under the Sixth Amendment, a defendant establishes that he was prejudiced by the ineffective assistance of his counsel by demonstrating that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Reasonable probability is "a probability sufficient to undermine confidence in the outcome," id. at 694, but is a less demanding standard than "more likely than not," see, e.g., Kyles v. Whitley, 514 U.S. 419, 434 (1995); Nix v. Whiteside, 475 U.S. 157, 175 (1986). Prejudice in the plea bargaining context is satisfied where a defendant shows "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." Lafler, 132 S. Ct. at 1391; see also Frye, 132 S. Ct. at 1409. Prejudice may also be shown "if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Lafler, 132 S. Ct. at 1387.

At the time of his arrest, Mr. Baker had not yet graduated from high school. Mr. Baker did not understand the nuances of the criminal justice system, including: (1) the potential range of sentences for the charge against him and the wide disparity between the plea offer and the sentence he faced after trial; (2) the difference between determinate and indeterminate sentences; (3) the strength of the evidence against him; (4) the weakness—or even the content—of Mr. Bruno's only planned defense against the charges; and (5) the relatively low chance that he would prevail at trial. (See Baker Aff. ¶¶ 29-33; Marshall Aff. ¶¶ 16, 20-21.)

Because Mr. Baker did not know the length of the sentence he faced at trial or the difference between determinate and indeterminate sentences, he did not understand that the plea represented a significant difference from the sentence he would face at trial.[15] (Id. ¶ 31.) He also did not understand that he faced a strong likelihood of conviction at trial: the People possessed a videotape of the incident, there were two eyewitnesses who knew Mr. Baker and identified him as one of the participants in the crime, and one of Mr. Baker's codefendants had identified Mr. Baker during his plea allocution.

---

[15] On a determinate sentence of fourteen years, Mr. Baker would have to serve twelve years (six-sevenths of the sentence) before being released, and would then serve up to five years on Post-Release Supervision. If convicted at trial, Mr. Baker faced a minimum term of between fifteen and twenty-five years and a maximum term of life. He would become eligible for parole after serving the minimum term, but whether he would ever be released, and when, would be up to the parole board.

Although Mr. Baker had asked for information regarding the evidence against him, Mr. Bruno never provided it.  (Id. ¶¶ 24, 32.)

Had Mr. Baker known any of this information, he would have accepted the plea offer.  (Id. ¶ 34.)  Mr. Baker's willingness to accept a guilty plea is demonstrated by his past conduct: Mr. Baker previously accepted a guilty plea for a robbery charge after his attorney in that case—unlike Mr. Bruno—provided effective assistance of counsel by explaining the charges, the mechanics of the sentence, and Mr. Baker's chances of success at trial.[16]  (Id. ¶ 30.)  Mr. Baker was prejudiced by Mr. Bruno's defective performance because "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea."  Lafler, 132 S. Ct. at 1391; see also Frye, 132 S. Ct. at 1409.

Prejudice is also separately established by the large disparity between Mr. Baker's current sentence and the plea offer.  See Lafler, 132 S. Ct. at

---

[16] The People's argument that Mr. Baker would not have accepted the plea agreement because he initially proclaimed his innocence—which the trial court did not address in its opinion—has been repeatedly rejected.  See Cullen, 194 F.3d at 407 (recognizing that a significant sentencing disparity may cause a defendant to "abandon[] his claim of innocence"); Pham, 317 F.3d at 183 ("where the disparity in potential sentences is great, a finder of fact may infer that a defendant[] who profess[es] [] innocence still will consider a plea"); Burt v. Titlow, 134 S. Ct. 10, 19 (2013) (Sotomayor, J., concurring) (noting that "a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland").  Every defendant who accepts a plea offer is by definition claiming his innocence prior to the moment he accepts the plea.  If a defense attorney had no obligation to provide effective assistance regarding a plea offer where the defendant initially proclaimed his innocence, the right to counsel in the plea bargaining context would virtually disappear.

1387 (defendant establishes prejudice "if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence"); <u>Gordon</u>, 156 F.3d at 376 (prejudice established based on large disparity between plea and trial sentences together with defendant's sworn statements that with effective counsel he would have accepted the plea); <u>Pham v. U.S.</u>, 208 F.3d 41 (2d Cir. 2000) (113-month disparity combined with defendant's statements sufficient for prejudice).

C.     **The People Have Provided No Evidence Establishing that Mr. Baker Received Effective Assistance of Counsel Regarding the Plea Offer**

In response to Mr. Baker's claim regarding the plea offer, the People did not provide any admissible evidence that Mr. Bruno explained the concept of felony murder, the difference between determinate or indeterminate sentences, the potential sentence Mr. Baker faced at trial, the evidence against him, his chances of prevailing, or any other specific advice. Instead, the People claim that the prosecutor assigned to Mr. Baker's post-judgment motion spoke with Mr. Bruno, who (1) asserted that he advised Mr. Baker regarding the plea offer and (2) made several derogatory statements regarding Mr. Baker's demeanor at trial. (<u>See</u> Affirmation of Emily Anne Aldridge ("Aldridge Aff.") ¶ 8.) The statements Mr. Bruno allegedly made—which do not even assert that Mr. Bruno provided the specific information and advice

41

Mr. Baker needed to weigh the plea offer—are hearsay and self-serving. Indeed, Mr. Bruno's willingness to disparage his own client to the ADA is a gross ethical violation that underscores Mr. Bruno's lack of concern for his client or his obligations as an attorney.

The People's only other evidence was a single statement Mr. Bruno made just before Mr. Baker rejected the plea: the trial court asked whether Mr. Bruno "had an opportunity to speak to your client [about the plea offer]" and Mr. Bruno responded "I have." (<u>See</u> People's Opp. at 8.)[17]  The People claim that this vague statement must be true because "[t]ellingly," Mr. Baker did not refute it.  (People's Opp. at 7.)  First, the court did not ask Mr. Baker whether or not the statement was true, and Mr. Baker—a teenager with no legal training—could not possibly have known that he was permitted to correct his lawyer's statement.  More importantly, even if Mr. Bruno's statement is true, it establishes no more than that Mr. Bruno conveyed the <u>fact</u> of the plea offer to his client—and does not convey that Mr. Bruno provided Mr. Baker with any actual <u>advice</u> regarding the plea, let alone the type of advice Mr. Baker needed in order to make an informed decision.

---

[17] The People also misleadingly suggest that Mr. Bruno stated that he spoke "at length" with Mr. Baker about the plea (<u>see</u> People's Opp. at 7), even though Mr. Bruno made that statement at a completely different point in the proceedings, regarding a potential <u>Rodriguez</u> hearing, which was entirely unrelated to the plea offer.  (<u>See</u> 1/31/2010 Tr. at 710.)

Other than self-serving hearsay statements and Mr. Bruno's two-word answer to the court's vague inquiry, the People's only response to Mr. Baker's sworn statements regarding the lack of counsel he received was to argue that Mr. Bruno's counsel was not necessary, because Mr. Baker should have figured out the answers to his questions on his own. (See People's Opp. at 7-8.) The People argued, inter alia, that Mr. Baker should have known he could have requested more time to speak with his attorney because *counsel for Mr. Baker's codefendant* asked for more time.[18] (See id.) The trial court agreed, finding that Mr. Baker's claim of ineffective assistance was "contradicted by the record" in part because Mr. Baker "could easily have made such a request [for additional time to speak with his attorney]." (See Order at 8.) The suggestion by both the People and the court that Mr. Baker should have known that he was permitted to speak up and request additional time to speak with his attorney is absurd. An attorney is not excused from providing effective assistance of counsel because his client failed to ask the court for additional time to speak with his attorney. See Boria, 99 F.3d at 496-97 (holding that "counsel may and must give the client the benefit of

---

[18] The People also argued that Mr. Baker should have known he faced a life sentence because his codefendant's counsel described the codefendant's possible sentence as "severe" (id. at 7), and because it is "common knowledge throughout the nation" that the sentence for felony murder is life imprisonment (id. at 9). The trial could did not address either argument—both of which essentially concede that Mr. Bruno did not convey this information to his client.

counsel's professional advice" regarding the "crucial decision" of whether or

not to accept a plea offer (emphasis in original)).  In any case, Mr. Baker had

contacted the court regarding Mr. Bruno's deficient performance, by filing a

motion for new counsel, which the court never addressed.  See supra Point II.

**D.    The Trial Court's Denial of Mr. Baker's
        Motion Without a Hearing Constitutes
        Reversible Error**

The trial court rejected Mr. Baker's claim without a hearing under

C.P.L. § 440.30(4)(d) after crediting the People's hearsay evidence (see Order

at 8) and determining that "the record clearly establishes that defendant

knowingly rejected the plea offer" based on Mr. Bruno's response of "I have"

to the inquiry from the trial court (see Order at 6), even though the court

asked whether he spoke with his client at all and not whether he provided

meaningful advice.  The trial court also held that Mr. Baker's failure to

provide an affidavit from Mr. Bruno provided a separate basis for denying the

motion under C.P.L. § 440.30(4)(b).

Under New York law, a trial court is required to grant an evidentiary

hearing where there are questions of fact regarding whether a defendant has

been deprived of meaningful legal representation.  See People v. Zeh, 22

N.Y.3d 1144 (2014) (reversing appellate decision affirming trial court's

denial of 440.10 motion without an evidentiary hearing); People v. Hill, 114

A.D.3d 1169, 1169-70 (4th Dep't 2014) (reversing trial court decision denying 440.10 motion without a hearing where defendant averred that his counsel had not adequately advised him regarding a plea offer).

Specifically, CPL § 440.30 <u>requires</u> a trial court to conduct a hearing before denying a 440.10 motion <u>unless</u> (1) the motion relates to issues which were or could have been raised in a prior or pending motion or appeal, <u>see</u> N.Y. C.P.L. § 440.30(2); (2) the moving papers do not allege any ground for the motion, <u>see</u> N.Y. C.P.L. § 440.30(4)(a); (3) the motion "is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts," N.Y. C.P.L. § 440.30(4)(b); (4) an "allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof," N.Y. C.P.L. § 440.30(4)(c); or (5) an "allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true," N.Y. C.P.L. § 440.30(4)(d).  <u>See</u> N.Y. C.P.L. § 440.30(5) ("If the court does not determine the motion pursuant to subdivisions two, three or four, it <u>must</u>

conduct a hearing and make findings of fact essential to the determination thereof.") (emphasis added).

The trial court held that Mr. Baker's failure to provide an affidavit from Mr. Bruno meant that Mr. Baker's motion papers did not "contain sworn allegations substantiating or tending to substantiate all the essential facts" and therefore that it was permitted to deny the motion without a hearing under § 440.30(4)(b). This holding is contrary to New York law. New York courts have held that a defendant's own affirmation may satisfy the requirement for sworn allegations under § 440.30(4)(b). See, e.g., People v. Hill, 114 A.D.3d at 1169-70 (finding that defendant's affidavit satisfied § 440.30(4)(b)). Indeed, the language of § 440.30(4)(d), which permits a court to deny a motion without a hearing if an essential fact is alleged only by the defendant and "under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true," would be nonsensical if a court could deny a motion without a hearing every time essential facts are only alleged by a defendant.

New York courts have also specifically held that an affidavit from trial defense counsel is not required on a 440.10 motion alleging ineffective assistance of counsel, because obtaining such an affidavit on motion that is "adverse and hostile" to the trial attorney would be "wasteful and

unnecessary." <u>See, e.g.</u>, <u>People v Radcliffe</u>, 298 A.D.2d 533, 534 (2nd Dep't 2002) (holding that a defendant's failure to submit an affidavit from a trial attorney does not prejudice a defendant's motion that is "adverse and hostile" to the trial attorney); <u>People v. Brown</u>, No. 2533-2002, 2011 WL 1366641, at *8 (N.Y. Sup. Ct. Bronx Cnty., Jan. 13, 2011) (holding that defendant's failure to submit an affirmation from his former counsel is not fatal to his 440.10 motion); <u>People v Rosales</u>, No. 2132-2001, 2009 WL 2496416, at *5-6 (N.Y. Sup. Ct. Bronx Cnty., July 10, 2009) (holding that defendant's 440.10 motion cannot be denied due to failure to submit an affidavit from trial counsel because "[i]t is clear that affidavits of trial counsel are not necessarily required in support of a 440.10 motion"). Mr. Baker's affirmation contained "sworn allegations substantiating or tending to substantiate all the essential facts," and therefore the trial court was not permitted to deny his motion without a hearing on that basis.

A trial court may only deny a 440.10 motion without a hearing under § 440.30(4)(d) if the motion is "contradicted by a court record or other official document" <u>and</u> "under these and all other circumstances attending the case, there is no reasonable possibility that such allegation is true." N.Y. C.P.L. § 440.30(4)(d). Nothing in Mr. Bruno's statement on the record that he "had an opportunity to speak with" his client contradicts Mr. Baker's sworn affidavit

stating that Mr. Bruno did not explain felony murder, did not explain the difference between determinate and indeterminate sentences, and did not explain the evidence against him and his chances at trial. Mr. Baker's motion therefore is not contradicted by any court record or other official document, and the trial could not deny the motion without a hearing under § 440.30(4)(d).

In light of the unrefuted evidence that Mr. Bruno did not provide effective assistance of counsel to Mr. Baker, the trial court should have granted Mr. Baker's motion. At the very least, Mr. Baker's allegations raised an issue of fact regarding Mr. Bruno's effectiveness, requiring the trial court to grant an evidentiary hearing. See N.Y. C.P.L. § 440.30(5). The trial court's failure to adhere to the clear requirements of § 440.30 constitutes reversible error. See Zeh, 22 N.Y.3d at 1145; Hill, 114 A.D.3d at 1169-70. Mr. Baker accordingly respectfully requests that this Court vacate his conviction and order a new trial.

## POINT IV.

## SEAN BAKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL FAILED TO CONSULT WITH HIM PRIOR TO SENTENCING, INVESTIGATE MITIGATING FACTORS, OR PERFORM ANY ADVOCACY AT SENTENCING WHATSOEVER

At sentencing, Mr. Bruno again abandoned his role as counsel, offering neither advice nor advocacy.[19] Mr. Bruno did not consult with his client, attempt to marshal mitigating evidence, or, most importantly, make any argument whatsoever for leniency at the sentencing hearing. Such advocacy, or lack thereof, does not amount to meaningful representation, and Mr. Baker was prejudiced as a result, receiving a lengthier sentence than he likely would have otherwise received. Had Mr. Bruno counseled Mr. Baker or argued on his behalf at sentencing, and, specifically, had he argued that, as the evidence demonstrated, Mr. Baker was not responsible for the physical contact that led to the victim's death, nor was there any evidence that Mr. Baker intended to harm the victim, there is a reasonable probability that a more lenient sentence would have been imposed. As a result of Mr. Bruno's ineffective assistance, this Court should vacate Mr. Baker's sentence and order that he be resentenced at a hearing where he is adequately represented by counsel.

---

[19] Sentencing is a critical stage of the criminal proceedings at which the right to effective assistance of counsel exists. See Glover v. United States, 531 U.S. 198, 202-04 (2001); Mempa v. Rhay, 389 U.S. 128, 134 (1967).

A.    **Mr. Bruno's Conduct at Sentencing Falls
      Below Any Objective Standard of
      Reasonable Representation**

During the sentencing phase, Mr. Bruno failed to consult with

Mr. Baker, investigate potential mitigating evidence, or advocate on

Mr. Baker's behalf.  Individually and collectively, each of these failures

represents a departure from the norms and requirements of effective

advocacy.  The court below did not disagree.  (See Opinion at 8-9.)  Mr.

Baker essentially had no representation during the sentencing phase of his

proceedings, and as a result, was denied his constitutional right to counsel.

First, Mr. Bruno's failure to consult with Mr. Baker prior to the

sentencing hearing in and of itself amounts to ineffective assistance of

counsel.  The Sixth Amendment requires that counsel "consult with the

defendant on important decisions and . . . keep the defendant informed of

important developments in the course of the prosecution."  Strickland v.

Washington, 466 U.S. 668, 688 (1984).  Here, in the time between Mr.

Baker's conviction and sentencing, Mr. Bruno did not once meet with or even

speak to Mr. Baker, nor did he perform even the basic task of sharing the

presentence report with his client and reviewing it for inaccuracies.  (Baker

Aff. ¶¶ 39-41.)  The People have not presented any evidence or affirmations

to the contrary.  As a result, Mr. Baker did not have an opportunity to consult

with his counsel, discuss strategy for the sentencing hearing, or be informed in advance of the hearing that he would have an opportunity to make a statement. This complete lack of representation does not constitute effective assistance of counsel.

Additionally, Mr. Bruno made no effort to investigate or marshal potential mitigating evidence (Baker Aff. ¶ 40.), despite a clear duty to do so. See Porter v. McCollum, 558 U.S. 30, 39 (2009) ("counsel had an obligation to conduct a thorough investigation of the defendant's background") (internal citations omitted); Arredondo v. U.S., 178 F.3d 778, 788 (6th Cir. 1999), rev'd in part on other grounds, 349 F.3d 310 (6th Cir. 2003) ("A failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation."). Here, Mr. Baker's presentence report even highlighted that he "resided in various shelters," was "the product of a broken home," and that "[h]is father has provided no financial or moral support," (Ex. E at 4), yet Mr. Bruno never spoke to Mr. Baker or any of Mr. Baker's family members about him or his background. (Baker Aff. ¶¶ 25, 40-41; Lewis Aff. ¶ 11).

If Mr. Bruno had investigated Mr. Baker's background, he would have learned about Mr. Baker's history of abuse, his unstable childhood, and the fact that he had been a promising student until his circumstances

overwhelmed him.  (Baker Aff. ¶¶ 5-13; Lewis Aff. ¶¶ 13-20.)  These are

exactly the types of facts that courts routinely list when determining an

attorney's investigation was inadequate.  See, e.g., Hooks v. Workman, 689

F.3d 1148, 1203 (10th Cir. 2012) (finding ineffective assistance where

counsel failed to develop facts related to defendant's "openly abusive father,

frequent moves, educational handicaps, and personal family tragedies");

Sowell v. Anderson, 663 F.3d 783, 792 (6th Cir. 2011) (holding counsel's

investigation was deficient where it failed to uncover the important mitigating

facts that defendant's "early life was abusive, impoverished, and totally

chaotic").  The failure to perform any investigation or gather potential

mitigating evidence, particularly where, as here, the presentence report

provides a strong reason to believe such evidence exists, does not amount to

reasonably effective advocacy.  See Porter, 558 U.S. at 39 (holding counsel's

investigation was unreasonable where he failed to interview any members of

defendant's family); Wiggins v. Smith, 539 U.S. 510, 524 (2003) (finding

ineffective assistance where counsel did not investigate beyond defendant's

presentence report and government records); Sowell, 663 F.3d at 791-93

(finding ineffective assistance where investigation failed to follow up on

obvious leads for mitigating evidence or include interviews of defendant's

family members).

Finally, and most importantly, Mr. Bruno's failure to make any argument whatsoever in favor of leniency deprived Mr. Baker of effective assistance of counsel. "[T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate." <u>United States v. Cronic</u>, 466 U.S. 648, 656 (1984) (internal quotations omitted). "That a person who happens to be a lawyer is present at trial alongside the accused, . . . is not enough to satisfy the constitutional command. The Sixth Amendment . . . envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." <u>Strickland</u>, 466 U.S. at 685. Here, Mr. Bruno abandoned that role and served as little more than an observer while Mr. Baker was sentenced.

At the sentencing hearing, after the People requested the maximum sentence, Mr. Bruno merely stated:

> Your Honor, there is nothing I could add. You were present for the jury trial, you obviously paid very careful attention. I would be foolish to rehash any facts at this time. Thank you.

(Sentencing Tr. at 5.) That is the full extent of Mr. Bruno's statements on behalf of a client facing a possible sentence of twenty-five years to life in prison. Mr. Bruno did not request leniency for Mr. Baker, challenge the People's request for the maximum sentence, or do anything that could even remotely be construed as advocacy. Mr. Bruno simply did not perform the

critical function that defense counsel plays in the adversarial system.[20] Facially, these statements fall well short of the level of advocacy required by the Sixth Amendment and the New York State Constitution.

Mr. Bruno's deficient performance here is strikingly similar to that of counsel in Gonzalez v. United States, 722 F.3d 118 (2d Cir. 2013). In Gonzalez, counsel failed to meet with the defendant in between his plea of guilty and sentencing, did not communicate with the defendant regarding the presentence report, did not challenge the prosecution's sentencing recommendation before or at the sentencing hearing, or make any kind of argument in favor of a departure from the sentencing guidelines. Id. at 127. In discussing whether counsel's performance had been adequate, the court simply noted that "[t]here is no dispute over whether [Counsel's] performance was deficient with regard to sentencing. It was." Id. at 135. Here, Mr. Bruno also did not meet with Mr. Baker in between his conviction and sentencing, did not provide him with a copy of the presentence report, discuss the presentence report with him, or advocate for his client at the sentencing hearing in any way. (Baker Aff. ¶¶ 39-46.) Like counsel in Gonzalez, Mr. Bruno "did little more than simply attend [the defendant's] sentencing

---

[20] Mr. Bruno's failure to advocate at sentencing was not a reasonably calculated strategic decision, nor could it have been. See Blystone v. Horn, 664 F.3d 397, 420 (3d Cir. 2011) ("[I]f counsel has failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable decision as to what to *present* at sentencing.") (emphasis in original).

hearing." <u>Gonzalez</u>, 722 F.3d at 136. And, as in <u>Gonzalez</u>, there can be no dispute over whether Mr. Bruno's performance was deficient with regard to sentencing. It was.

**B.     Mr. Bruno's Deficient Representation
        Prejudiced Mr. Baker by Causing Him to
        Receive a More Severe Sentence**

To establish prejudice at sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." <u>Gonzalez</u>, 722 F.3d at 130. Here, Mr. Bruno's ineffective assistance prejudiced Mr. Baker.

First, Mr. Bruno's failure to meet with or advise his client prior to sentencing prevented Mr. Baker from formulating a strategy for the hearing. In particular, Mr. Bruno did not explain that Mr. Baker would have an opportunity to make a statement at sentencing, the benefits of doing so, or what such a statement should contain. (Baker Aff. ¶¶ 39, 50.) While it is true that Mr. Baker was informed of his right to make a statement at the hearing and declined to do so, Mr. Bruno did not advise him regarding the benefits of making a statement. A defendant's statement at sentencing is often of paramount importance to the ultimate outcome, and defendants have a right to counsel with respect to it. Had Mr. Bruno provided any counsel to Mr. Baker, Mr. Baker would have made a statement expressing remorse and regret for his

actions, likely resulting in a more lenient sentence. (Baker Aff. ¶ 50.) Indeed, the court below conceded this fact, noting that "the defendant's failure to accept responsibility for his actions" was a negative factor in determining his sentence. (<u>See</u> Opinion at 9.)

Additionally, Mr. Baker was prejudiced by Mr. Bruno's failure to advocate on his behalf at all at the sentencing proceeding. At sentencing, Mr. Bruno stated that "there is nothing I could add" (Sentencing Tr. at 5), when in fact there was much he could have said that may have swayed the court.

For instance, in the opinion below, the court stated that "the prosecutor noted that the victim's death was attributable to both defendants equally," and cited that as a factor indicating a lack of prejudice as a result of Mr. Bruno's inaction. <u>See</u> <u>id.</u> That statement directly contradicts the evidence at trial, which demonstrated that Mr. Allick shoved the victim, not Mr. Baker. Indeed, there was no evidence that Mr. Baker harmed or intended to harm the victim in any way. While Mr. Baker's conduct may have sufficed to meet the elements of felony murder, his level of culpability and role in the crime are certainly relevant in determining his sentence. Mr. Bruno could have disputed the People's assertions and argued that Mr. Baker's diminished role should result in a lesser sentence. Given that the court below cited the

People's statement as a significant factor in its sentencing decision, there is a reasonable probability that a more lenient sentence would have been imposed had Mr. Bruno made any attempt to advocate on behalf of his client based on Mr. Baker's limited role in the incident.

Additionally, Mr. Bruno could have presented evidence of Mr. Baker's capacity for rehabilitation. At the time of the offense, Mr. Baker was a seventeen-year-old boy who had lived an unstable and chaotic life, was the victim of abuse, and, although he had made a grievous mistake, had his family's support and was capable of rehabilitation. However, Mr. Bruno made no attempt to inform the court of Mr. Baker's character, of his past, or his future potential. Without the benefit of this mitigating evidence or a statement by Mr. Baker, the court was left with little evidence concerning Mr. Baker's capacity for rehabilitation or the extent to which he posed a danger to the community. If Mr. Bruno had presented any such mitigating evidence, there is a reasonable probability that such advocacy, either alone or coupled with a discussion of Mr. Baker's level of culpability or a statement from Mr. Baker himself, would have resulted in a lesser sentence.

Mr. Bruno's performance at sentencing and his limited four-sentence statement, which can hardly be described as advocacy, fell well short of the level of representation a defendant facing life in prison deserves or has a right

to under the Sixth Amendment and the New York State Constitution. As such, this Court should vacate Sean Baker's sentence and order that he be resentenced after a hearing where he is adequately represented by counsel.

## <u>CONCLUSION</u>

For the reasons stated in Points I, II, and III, defendant-appellant Sean Baker respectfully requests that this Court vacate his conviction in full and order a new trial.

In the alternative, for the reasons stated in Point IV, defendant-appellant Sean Baker respectfully requests that this Court vacate his sentence and order that he be resentenced after a hearing where he is adequately represented by counsel.

Dated:  New York, New York
        October 5, 2015

> RICHARD M. GREENBERG, ESQ.
>
> OFFICE OF THE APPELLATE
> DEFENDER
> 11 Park Place, Suite 1601
> New York, New York 10007
> (212) 402-4100
>
> By:
>
> Katherine Marshall
>
> _____
>          Katherine A. Marshall
>                Of Counsel
>
> KATHERINE A. MARSHALL
> JOSHUA FRIEDMAN
> JACOB GARDENER
> DAVIS POLK & WARDWELL LLP
> 450 Lexington Avenue
> New York, New York 10017
> (212) 450-4000
>
> *Attorneys for Defendant-Appellant*
> *Sean Baker*

## CERTIFICATE OF COMPLIANCE

This brief was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface:       Times New Roman

Point size:             14

Line spacing:           Double

According to the word count of the word processing system used to prepare the brief, the total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 13,929.

Dated:  New York, New York
        October 5, 2015

_Katherine Marshall_
Katherine A. Marshall

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX: PART 71

-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                   against

SEAN BAKER,

                            Defendant.

-------------------------------------------------------------------x

**DECISION**
Indictment. No. 770/08

**HONORABLE MICHAEL A. GROSS:**

On April 20, 2010, defendant and co-defendant Michael Allick were convicted of Murder in the Second Degree following a jury trial.[1] On May 12, 2010, defendant was sentenced to an indeterminate term of imprisonment of twenty years to life.[2] On June 4, 2010, defendant filed a timely Notice of Appeal; however, he has not perfected that appeal.

By motion, dated April 15, 2014, defendant moves to vacate his conviction pursuant to C.P.L. §440.10(1)(h), claiming ineffective assistance of counsel. Specifically, defendant alleges that he was deprived of meaningful representation by trial counsel because counsel failed to explain adequately the meaning of felony murder to defendant, did not fully advise him about the plea offer, failed to inform defendant of his potential sentence exposure if convicted at trial, failed to investigate any mitigating evidence, and failed to make any substantive argument or present any evidence at defendant's sentencing. For the reasons

---

[1] Co-defendant, Karim Warner, pleaded guilty to Robbery in the First Degree before the case went to trial, and was sentenced to a determinate term of incarceration of eight years with five years of post-release supervision.

[2] He was sentenced to a concurrent term of incarceration of four years, following a plea to Robbery in the Second Degree under Indictment Number 771/2008.

stated below, defendant's motion is denied.

## Trial Evidence

On October 6, 2007, at approximately 2:46 a.m., paramedics arrived at 926 Southern Boulevard in Bronx County, where they found a non-responsive man, later identified as Ramiro Ramos-Luna, at the foot of a stairwell next to a pizzeria. Ramos-Luna was unconscious, bleeding from his right ear; his right eye was swollen shut. Furthermore, he did not have a wallet on his person, nor was he wearing shoes. Ramos- Luna was taken to Lincoln Hospital where he subsequently died as a result of his injuries. An autopsy report revealed that the cause of death was severe blunt force trauma to the head, resulting in multiple skull fractures, subdural hemorrhaging, and brain contusions.

At trial, Barbara Coles and her mother, Denise Coles testified about this incident. At approximately 1:30 a.m., they went to get food at El Patio Restaurant in the vicinity of 920 Southern Boulevard. Outside the restaurant, defendant greeted the women, who went in to order their food. Both woman knew defendant, as well as co-defendants Michael Allick and Kareem Warner, because Barbara went to school with defendant, and all three men had been to the Coles residence on numerous past occasions.

After the women placed an order, they went outside for a cigarette. An inebriated man, later identified as Ramos-Luna, who had been in the restaurant with them was ejected by an employee. Ramos-Luna was then attacked by defendant, Allick and Warner. Defendant removed property from Ramos-Luna's pants while Allick and Warner held him

down. This part of the attack was captured on surveillance video which was viewed by Barbara Coles at trial. She testified and identified defendant to the left of the victim, Warner was to the right and Allick stood between them.

After robbing Ramos-Luna, defendants, as displayed on the surveillance video, dragged the victim to a stairwell and threw him down the stairs. After defendants left the scene, the Coles returned to the restaurant, picked up their food and went home. The Coles did not call the police or paramedics.

Defendants were ultimately arrested after detectives interviewed and showed the surveillance video to Barbara and Denise Coles.

### Defendant's Ineffective Assistance of Counsel Claim

Defendant claims that he was denied the effective assistance of trial counsel Patrick Bruno. Specifically, defendant alleges that he was deprived of meaningful representation by counsel who (1) failed to explain adequately the concept of felony murder; (2) did not fully advise him about the plea offer; (3) failed to persuade him to plead guilty; (4) failed to inform him of his potential sentence exposure if convicted at trial; (5) failed to investigate any mitigating evidence; and (6) failed to make any substantive argument or present any evidence at defendant's sentencing. For the reasons set forth below, defendant's motion is denied.

3

### Legal Analysis

In order to prevail on a claim of ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel was effective and show that counsel failed to provide meaningful representation (*Strickland v. Washington*, 466 U.S. 668 [1984]; *People v. Hobot*, 84 N.Y.2d 1021 [1995]; *People v. Flores*, 84 N.Y.2d 184 [1994]). To rebut this presumption, a defendant must prove that the attorney's assistance to the client lacked "reasonable competence," and was so inadequate as to amount to ineffectiveness (*People v. Satterfield*, 66 N.Y.2d 796, 799 [1985]). Moreover, a defendant must prove that the attorney's incompetence resulted in actual prejudice to the defendant (*see People v. Cuesta*, 177 A.D.2d 639 [2d Dept. 1991]; *People v. Sullivan*, 153 A.D.2d 223 [2d Dept. 1990]). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*Baldi*, 54 N.Y.2d at 147).

Here, viewing the evidence and circumstances of this case in totality, counsel provided defendant with meaningful representation, which did not fall outside the "wide range of professionally competent assistance" (*see Strickland v. Washington*, 466 U.S. 668, 690 [1984]; *Rivera*, 71 N.Y.2d at 709; *People v. Terwilliger*, 255 A.D.2d 762 [3d Dept. 1998]; *People v. Mejias*, 178 A.D.2d 249 [2d Dept. 2000]; *People v. Kieser*, 172 A.D.2d 626 [1st Dept. 1991]). A review of the trial record in this case establishes that counsel zealously and competently represented defendant during the trial. Counsel showed complete

4

familiarity with the facts of the case and the relevant principles of evidentiary, substantive and procedural law (*see People v. Bennett*, 29 N.Y.2d 462 [1972]; *People v. Rodriguez*, 94 A.D.2d 805 [2d Dept. 1983]). He delivered cogent and comprehensive opening and closing statements, made appropriate objections and motions, and vigorously cross-examined the People's witnesses, highlighting the inconsistent aspects of their testimony. He also presented a rigorous defense of reasonable doubt. Accordingly, defendant's claim of ineffective assistance is denied.

In his motion, defendant alleges that counsel was ineffective because he failed to have any meaningful plea discussions with him, and failed to persuade him to take the plea offer. Defendant argues that had counsel done so, he would have waived his right to trial, and entered a guilty plea. With respect to this specific claim of ineffectiveness, defendant has the burden to demonstrate "that a plea offer was made, that defense counsel failed to inform him of that offer, and that he would have been willing to accept the offer" (*see People v. Fernandez*, 5 N.Y.3d 813 [2005]; *People v. Rogers*, 8 A.D.3d 888, 890-891 [3d Dept. 2004]). In *Lafler v. Cooper*, 132 U.S. 1376, 1387 (2012), the United States Supreme Court held that "if a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."

Here, defendant is not claiming that his attorney failed to inform him of the plea offer. Defendant concedes that counsel had informed him of the plea offer. Rather, defendant alleges that counsel was ineffective because he failed to have any meaningful plea

discussions with him, and failed to persuade him to accept the plea offer. However, defendant's claims are completely belied by the hearing transcript, dated January 13, 2010. The record establishes that the plea offer was conveyed to defendant and counsel had spoken with defendant. The prosecutor outlined the plea offers to each defendant. As to defendant, the prosecutor offered a plea to Manslaughter in the First Degree, with a promised sentence of a determinate term of incarceration of fourteen years. The Court then addressed each defense attorney regarding his client. The Court specifically asked, "Mr. Bruno, have you had an opportunity to speak to your client [about the plea offer]?" Mr. Bruno replied, "Yes I have." At no point in the proceeding did defendant challenge counsel's response or request either the Court or counsel to provide him more time to consult about a plea. Counsel for defendant stated that after speaking with defendant, "[h]e rejected the offer. [The] offer, likewise, a fourteen year offer would have included and covered a pending robbery, which incidentally did not occur while my client was at liberty, but he's rejecting the offer." Thus, the record clearly establishes that defendant knowingly rejected the plea offer. Defendant now argues that he was not given an opportunity to discuss the plea offer with his family, or understand the scope of felony murder. However, in the presence of defendant, counsel for co-defendant Warner requested additional time to speak to his client due to the possible sentence if convicted of felony murder. Warner's attorney also sought permission to speak to Warner's mother about the disposition proposed. The Court granted both requests. Indeed, defendant could easily have made such a request especially after observing that co-

6

defendant Warner was given additional time by the Court for those specific reasons.

Thus, defendant's claim that his attorney was ineffective for failing to advise him fully with respect to the People's plea offer to him or persuade him to plead guilty is directly refuted by the trial record, which clearly establishes that defendant was fully aware of the specific plea available, had adequate opportunity to discuss the offer with his attorney, and rejected counsel's efforts to persuade him to accept the proposed disposition. Under C.P.L. §440.30(4)(d), upon considering the merits, the court may deny a motion without a hearing if an allegation of fact essential to support the motion is "contradicted by a court record or other official document" and "under these and all other circumstances attending the case, there is no reasonable possibility that such allegation is true." Therefore, since defendant's claim is contradicted by the record, it is denied pursuant to C.P.L. §440.30(4)(d).

Furthermore, defendant's own affidavit demonstrates that counsel made attempts to discuss the case with defendant and the possibility of pleading guilty. Defendant stated that counsel met with him during a video conference in 2008, when they discussed the facts of the case. Defendant stated, "Mr. Bruno explained that I could be found guilty of felony murder because I was acting in concert with Kareem Warner and Michael Allick." Counsel also informed him that "Denise and Barbara Coles would be testifying against [him]." Defendant further conceded that, "Mr. Bruno explained the possibility of a plea deal, and that he might be able to get a sentence of 10 years for [defendant] through a plea agreement." Defendant also stated that he met with counsel in January 2010, for approximately thirty

7

minutes in a conference room. At that time, Mr. Bruno informed defendant about the surveillance video of the incident.

In their affirmation in opposition, the People have represented that they have spoken to Mr. Bruno regarding this issue. Mr. Bruno confirmed that he had "advised defendant to accept a plea." He indicated that "he explained the charges against defendant, including felony murder, and the sentence exposure upon conviction." According to Mr. Bruno, defendant adamantly refused to take a plea. Although counsel explained the strength of the evidence against him, defendant believed that the People had a weak case, and wanted to proceed to trial. Defendant believed that the video was "too foggy to definitely identify him," and that the two witnesses would never testify against him. Counsel stated that he explained the potential sentencing exposure; however, defendant strongly believed that he would not be convicted and refused to plead guilty. Accordingly, both defendant and counsel's statements bely defendant's claim that counsel failed to fully advise him about the plea offer.

Defendant also alleges trial counsel failed to make any substantive argument, present any evidence, or inform defendant that he would have the opportunity to make a statement at sentencing. At the sentencing, the record revealed that the court clerk first informed defendant that he would have an opportunity to speak on his own behalf; thereafter, the Court specifically asked defendant if he wished to make a statement before sentence was imposed. Defendant unequivocally responded, "Not at all." A review of the pre-sentence

report by the Probation Department revealed that defendant continued to maintain his innocence. Both the prosecutor and the Court made statements regarding defendant's failure to accept responsibility for his actions. Furthermore, the prosecutor noted that the victim's death was attributable to both defendants equally. The brutal killing was senseless; there was no reason to drag the victim to his death after the theft of his property. The victim was intoxicated, incapacitated, and would likely not have been able to identify defendants or make a police report. Trial counsel's own response at sentencing was as follows: "There is nothing I could add. You were present for the jury trial, you obviously paid close attention. I would be foolish to rehash any facts at this time." Clearly, there were no mitigating circumstances in the facts of the case. Furthermore, defendant's complaints of counsel not focusing on his difficult upbringing would not have overcome his refusal to accept responsibility, and the absence of any remorse on his part.

Finally, defendant's claim of ineffective assistance is devoid of any sworn allegations of fact to support such a claim. Where, as here, defendant moves to vacate the judgment of conviction, his moving papers must contain sworn allegations which substantiate or tend to substantiate the essential facts in support of the motion (*see* C.P.L. § 440.30[1]). Without such sworn allegations, the Court is authorized to deny the motion summarily (*see* C.P.L. § 440.30[4][b]).    Here, defendant has not provided an affidavit from his attorney to corroborate defendant's version of events. Nor has defendant provided an explanation for his failure to do so. Absent an affidavit from such a potential witness, defendant's

9

allegations are self-serving, unsubstantiated and fail to establish that counsel's performance was less than professional (*see People v. Ozuna,* 7 N.Y.3d 913 [2006]; *People v. Morales,* 58 N.Y.2d 10008 [1983]). Absent such sworn allegations, defendant's claim regarding counsel's failure to fully advise him of a plea offer, persuade him to plead guilty or inform him of his right to make a statement at sentencing is also denied without a hearing (*see* C.P.L. § 440.30[4][b]).

Accordingly, for the aforementioned reasons, defendant's motion to vacate his judgment of conviction pursuant to C.P.L. § 440.10 is denied in its entirety.

This constitutes the order and decision of the Court.

Dated: September 3, 2014
     Bronx, New York

MICHAEL A. GROSS, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

PEOPLE OF THE STATE OF NEW YORK,

      - against -

SEAN BAKER,

          Defendant.

Indictment No. 0770/08

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION PURSUANT TO NEW YORK CRIMINAL PROCEDURAL LAW § 440.10(1) TO VACATE JUDGMENT OF CONVICTION

RICHARD M. GREENBERG
OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

LESLEY BARK
KATHERINE A. MARSHALL
JOSHUA FRIEDMAN
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Petitioner*
  *Sean Baker*

# A201

## TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................2

POINT I      THE PEOPLE PROVIDE NO EVIDENCE THAT COUNSEL
ADEQUATELY ADVISED SEAN BAKER REGARDING HIS
PLEA OFFER, AND COUNSEL'S FAILURE TO DO SO
DEPRIVED SEAN BAKER OF HIS CONSTITUTIONAL RIGHT
TO EFFECTIVE ASSISTANCE OF COUNSEL ........................................2

     A.      The People's Claim Regarding the Plea Agreement is Based Only
on Vague and Derogatory Hearsay Statements Allegedly Made by
Mr. Bruno, Which Are Directly Contradicted by Facts in the Record .........3

     B.      The People's Assertions Regarding Statements Made by Other
Counsel or Mr. Baker's Supposed Personal Knowledge Do Not
Excuse Mr. Bruno's Failure to Provide Effective Assistance of
Counsel.........................................................................................................5

     C.      Mr. Bruno's Failure to Provide Effective Assistance of Counsel is
Not Excused Because Mr. Baker Initially Proclaimed His Innocence..........7

POINT II      COUNSEL'S FAILURE TO CONSULT WITH SEAN BAKER
PRIOR TO SENTENCING, INVESTIGATE MITIGATING
FACTORS, OR PERFORM ANY ADVOCACY WHATSOEVER AT
THE SENTENCING HEARING DEPRIVED SEAN BAKER OF HIS
CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL ..................................................................8

     A.      Mr. Bruno's Failure to Confer with Mr. Baker Prior to the
Sentencing Hearing is a Clear Violation of Counsel's Duties to his
Client ...........................................................................................................9

     B.      Mr. Bruno's Failure to Perform Any Investigation into Potential
Mitigation Factors Was Not a Reasonable Strategic Decision ...................12

     C.      Mr. Bruno's Failure to Make Any Argument on Mr. Baker's Behalf
at Sentencing Falls Below Any Objective Standard of Effective
Advocacy ...................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

<span style="float:right"><small>P<small>AGE</small>(<small>S</small>)</small></span>

<u><small>C<small>ASES</small></small></u>

<u>Arredondo v. U.S.</u>,
    178 F.3d 778 (6th Cir. 1999), *rev'd in part on other grounds*, 349 F.3d 310
    (6th Cir. 2003)................................................................................................12

<u>Blystone v. Horn</u>,
    664 F.3d 397 (3d Cir. 2011)...........................................................................13

<u>Boria v. Keane</u>,
    99 F.3d 492 (2d Cir. 1996)...........................................................................6, 7

<u>Glover v. United States</u>,
    531 U.S. 198 (2001).......................................................................................14

<u>Gonzalez v. United States</u>,
    722 F.3d 118 (2d Cir. 2013)...........................................................................12

<u>People v Radcliffe</u>,
    298 A.D.2d 533 (2nd Dep't 2002) ...................................................................3

<u>People v Rosales</u>,
    No. 2132-2001, 2009 WL 2496416 (N.Y. Sup. Ct. Bronx Cnty., July 10, 2009) ..........3

<u>People v. Brown</u>,
    No. 2533-2002, 2011 WL 1366641 (N.Y. Sup. Ct. Bronx Cnty., Jan. 13, 2011)..........3

<u>People v. Garcia</u>,
    19 A.D.3d 17 (1st Dep't 2005) ...................................................................2, 8

<u>People v. Harris</u>,
    725 N.Y.S.2d 530 (N.Y. Sup. Ct. 2001) .......................................................11

<u>Porter v. McCollum</u>,
    558 U.S. 30 (2009).........................................................................................12

<u>Strickland v. Washington</u>,
    466 U.S. 668 (1984).......................................................................................10

<u>United States v. Gordon</u>,
    156 F.3d 376 (2d Cir. 1998)............................................................................6

# A203

STATUTES & RULES

N.Y. COMP. CODES R. & REGS. tit. 22 § 1200........................................................4

New York Criminal Procedure Law § 440.10 ................................................3, 8

New York Criminal Procedure Law § 440.10(1).................................................1

Rule 1.9 (2014) .............................................................................................4

Section 390.50(2)(b) of the New York Criminal Procedure Law........................11


OTHER AUTHORITIES

ABA Standing Committee on Ethics and Professional Responsibility, <u>Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim</u>, Formal Opinion 10-456 at 1 (2010)................................4

Adam Liptak, <u>American Exception: Serving Life for Providing Car to Killers</u>, N.Y. TIMES, Dec. 4, 2007, at A1............................................................................7

Defendant Sean Baker respectfully submits this reply memorandum of law in further support of his motion, pursuant to New York Criminal Procedure Law § 440.10(1), to vacate his conviction, upon the grounds that his lawyer, Patrick Bruno, failed to adequately explain the meaning of felony murder to him, did not properly advise him about a plea offer made by the People, failed to inform him of his potential sentence exposure if convicted at trial, failed to investigate any mitigating evidence, and failed to make any argument or present any evidence at his sentencing hearing, thereby depriving him of effective assistance of counsel.

## PRELIMINARY STATEMENT

In response to Mr. Baker's claim of ineffective assistance of counsel, the People offer little more than excuses as to why Mr. Baker did not in fact need his constitutional right to advice and advocacy of counsel in the first place. Instead, argue the People, Mr. Baker should have relied on the effective assistance of counsel provided to his co-defendants and the "common knowledge" of the law assumed to be possessed by a 19 year-old who grew up in foster homes and homeless shelters. The only "facts" to bolster the People's argument are statements made by Mr. Baker's ineffective counsel—Mr. Bruno. These statements are remarkable only in that they lay bare the extent to which Mr. Bruno abandoned his professional responsibility to Mr. Baker in order to gratuitously disparage Mr. Baker to the People.

The People attempt to characterize Mr. Bruno's failure to advocate or investigate as a "strategic decision," but this implies that Mr. Bruno's decision was an informed one when in fact it was not. Having never talked to Mr. Baker's family, investigated Mr. Baker's background, or reviewed the presentence report for inaccuracies with Mr. Baker, Mr. Bruno's decisions were not strategic, but reckless. In light of Mr. Bruno's

failure to provide effective assistance of counsel to his client regarding the plea offered to Mr. Baker and during the sentencing phase, Mr. Baker's conviction should be vacated, and he should be permitted to avail himself of the pre-trial plea offer. At the very least, he should be granted a new sentencing hearing where he may be represented by competent counsel.

<u>ARGUMENT</u>

<u>POINT I</u>

THE PEOPLE PROVIDE NO EVIDENCE THAT COUNSEL ADEQUATELY ADVISED SEAN BAKER REGARDING HIS PLEA OFFER, AND COUNSEL'S FAILURE TO DO SO DEPRIVED SEAN BAKER OF HIS CONSTITUTIONAL RIGHT <u>TO EFFECTIVE ASSISTANCE OF COUNSEL</u>

The People's opposition fails to refute Mr. Baker's claim that Mr. Bruno did not provide effective assistance of counsel regarding Mr. Baker's plea offer. While the People's opposition is full of excuses as to why Mr. Bruno's counsel was apparently unnecessary, none of these excuses eliminate Mr. Baker's constitutional right to obtain effective assistance of counsel from his *own* attorney regarding his plea offer. The People's assertion that such counsel was actually provided is based only on vague, hearsay statements by Mr. Bruno—who violated his ethical obligations by disclosing confidential communications to the prosecution, and who is demonstrably hostile towards his client. Because Mr. Baker's affidavit directly contradicts those vague statements, at the very least, a hearing is required. <u>See, e.g.</u>, <u>People v. Garcia</u>, 19 A.D.3d 17, 21-22 (1st Dep't 2005) (holding that defendant's assertions that it was "highly possible" that he would have accepted a reasonable plea offer were enough to require a fact-finding hearing).

A. The People's Claim Regarding the Plea Agreement is Based Only on Vague and Derogatory Hearsay Statements Allegedly Made by Mr. Bruno, Which Are Directly Contradicted by Facts in the Record

The People state that Mr. Bruno claims he advised Mr. Baker regarding the plea offer Mr. Baker received. (See Affirmation of Emily Anne Aldridge ("Aldridge Aff.") ¶ 8.) However, the People do not describe how many times Mr. Bruno spoke with Mr. Baker, when the alleged conversations took place, what the precise substance was of Mr. Bruno's advice, or what Mr. Baker said in response. (See id.) The People's hearsay statements regarding a conversation with Mr. Bruno do not adequately refute Mr. Baker's specific claims that Mr. Bruno failed to explain the concept of felony murder, failed to explain the difference between determinate and indeterminate sentences, and failed to explain the mechanics of the sentence that Mr. Baker was facing for his charges. To the extent that Mr. Bruno denies Mr. Baker's claims of ineffective assistance of counsel, this Court should order a hearing at which the factual disputes may be resolved.[1]

The only other evidence that the People supply of Mr. Bruno's alleged advice regarding the plea offer is statements Mr. Bruno made on the record. (See Peo. Mem. at 7-8.) In one statement, Mr. Bruno replied "I have" to the Court's inquiry regarding whether Mr. Bruno advised his client. (Peo. Mem. at 8.) This vague statement does not refute

---

[1] Mr. Baker's motion made clear that Mr. Bruno disputed the ineffective assistance claim. (See Affirmation of Katherine A. Marshall at ¶ 39.) Contrary to the People's assertions, an affidavit from a trial attorney is not an "essential component" (People's Memorandum of Law ("Peo.Mem.") at 4) of a § 440.10 motion under New York state law, and Mr. Baker's motion cannot be dismissed on those grounds. See People v Radcliffe, 298 A.D.2d 533, 534 (2nd Dep't 2002) (failure to submit an affidavit from a trial attorney does not prejudice a defendant's motion that is "adverse and hostile" to the trial attorney because requiring an affidavit—or an explanation regarding why one was not obtained—would be "wasteful and unnecessary"); People v. Brown, No. 2533-2002, 2011 WL 1366641, at *8 (N.Y. Sup. Ct. Bronx Cnty., Jan. 13, 2011) (holding that defendant's failure to submit an affirmation from his former counsel is not fatal to his 440.10 motion); People v Rosales, No. 2132-2001, 2009 WL 2496416, at *5-6 (N.Y. Sup. Ct. Bronx Cnty., July 10, 2009) (holding that defendant's 440.10 motion cannot be denied due to failure to submit an affidavit from trial counsel because "[i]t is clear that affidavts of trial counsel are not necessarily required in support of a 440.10 motion").

Mr. Baker's claim that Mr. Bruno failed to provide effective assistance of counsel. The People's implication that this statement must be true because "[t]ellingly," Mr. Baker did not refute it is ludicrous. Mr. Baker was only 19 at the time, with no prior legal training and experience, and would have had no reason to believe he could speak up in court to correct a statement made by his lawyer. The People also suggest that Mr. Bruno said that he spoke "at length" with Mr. Baker about the plea. (Peo. Mem. at 7.) In fact, this statement was made at a different point during the pre-trial proceedings, when the Court was discussing whether there was a need for a <u>Rodriguez</u> hearing, and has absolutely no relation to the plea offer. (<u>See</u> 1/31/2010 Tr. at 7:10.)

Finally, Mr. Bruno's ability to provide impartial information regarding his client's representation should be questioned. According to the People's account of Ms. Aldridge's conversation with Mr. Bruno, Mr. Bruno made gratuitous, derogatory statements regarding Mr. Baker. (<u>See</u> Aldridge Aff. ¶ 8.) This disclosure violated Mr. Bruno's ethical obligations as an attorney and calls into question not only his loyalty, but his professional responsibility to his client.[2]

---

[2] An attorney's duties of confidentiality and loyalty to his client continue beyond the attorney's representation of the client. N.Y. COMP. CODES R. & REGS. tit. 22 § 1200, Rule 1.9 (2014) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client . . . or (2) reveal confidential information of the former client protected by Rule 1.6."). While an ineffective assistance of counsel claim by a former client impliedly waives the attorney-client privilege, it does not end the obligation to maintain confidentiality. <u>See</u> ABA Standing Committee on Ethics and Professional Responsibility, <u>Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim,</u> Formal Opinion 10-456 at 1 (2010). Counsel may disclose confidential communications and take a position adverse to his former client <u>only</u> if compelled to testify in an adjudicative proceeding. Therefore, Mr. Bruno's disclosure of irrelevant, derogatory facts regarding his client to the District Attorney's Office was glaringly unethical and calls into question his loyalty to Mr. Baker. Moreover, Mr. Bruno was recently advised of this obligation by the Office of the Appellate Defender in a letter regarding another matter, making his ethical violation even more egregious.

B.    <u>The People's Assertions Regarding Statements Made by Other Counsel or Mr. Baker's Supposed Personal Knowledge Do Not Excuse Mr. Bruno's Failure to Provide Effective Assistance of Counsel</u>

The People's opposition is littered with reasons why Mr. Bruno's failure to provide effective assistance of counsel regarding the plea offer is somehow excusable: (1) Mr. Baker should have known that he faced a potential life sentence because *counsel for Mr. Baker's co-defendant* mentioned that the co-defendant was facing a "severe" sentence (Peo. Mem. at 7); (2) Mr. Baker should have known the length of his potential sentence because "it is no stretch to say that it is common knowledge throughout the nation that one can be sentenced to life imprisonment upon a felony murder conviction" (Peo. Mem. at 9); and (3) Mr. Baker should have known he could ask for more time to speak with his attorney or his family because *counsel for Mr. Baker's co-defendant* asked for more time for his own client.  Not one of these excuses eliminates Mr. Bruno's obligation to provide effective assistance of counsel to Mr. Baker regarding the plea offer.  In fact, by relying on these excuses, the People essentially concede that Mr. Bruno did not provide this information himself.

As an initial matter, to the extent that Mr. Baker should have responded more proactively to Mr. Bruno's ineffective assistance of counsel—he did.  Although ignored entirely by the People, Mr. Baker in fact filed a pro se motion for new counsel which was never acted upon.  (<u>See</u> Memorandum of Law in Support of Defendant's Motion ("Def. Mem.") at 5-6.)  Mr. Baker had already sought relief in the only way he knew to be appropriate.  To expect him to speak up in court to essentially represent himself when he could only assume that his motion had been denied is beyond comprehension.

In any event, the onus is not on Mr. Baker to represent himself.  The statements that Mr. Baker overheard do not even convey the information that the People claim they do.  A

sentence may easily be "severe" without being a life sentence. At the time of the trial, both defendants were teenagers. A sentence of 14 years—equivalent to nearly the entire time Mr. Baker had been alive—would have seemed severe. Nothing about that statement suggests that the sentence in question was life in prison, and *more importantly*, it was Mr. Bruno's obligation—not Mr. Baker's—to understand and convey the precise potential sentence that Mr. Baker was facing. As the Second Circuit has held, "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case," and therefore "counsel *may and must* give the client the benefit of *counsel's professional advice* on this crucial decision." See Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (emphasis added); see also United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (holding that counsel's failure to accurately advise his client during plea negotiations of his maximum exposure to imprisonment at sentencing constituted ineffective assistance). Nowhere in the case law is there any excuse for counsel's failure to provide his own professional advice based on what the defendant may have overheard from others. It "defies all logic" (see Peo. Mem. at 9) to assert that Mr. Bruno's obligation to provide effective assistance of counsel regarding Mr. Baker's potential life sentence was satisfied because counsel for his co-defendant used the word "severe" to describe the potential sentence.

Nor should Mr. Baker have known that he could request additional time to consider the plea offer because his co-defendant's counsel requested additional time. Mr. Baker, with no legal training or experience, could not have known how or why his co-defendant's counsel was able to make that request, or whether the same request could apply to him. Notably, the request was made by co-defendant's counsel, not co-defendant himself. That

Mr. Baker would take from this that he should speak up on his behalf rather than his own counsel doing so is absurd.

Finally, the People's statement that "it is no stretch to say that it is common knowledge throughout the nation that one can be sentenced to life imprisonment upon a felony murder conviction" is not only baseless but untrue.[3] Regardless, it provides no excuse for Mr. Bruno's failure to provide effective assistance of counsel. An attorney cannot satisfy his obligation to provide effective assistance of counsel by relying on assumptions regarding his client's knowledge of criminal law. Cf. Boria, 99 F.3d at 496-97; Gordon, 156 F.3d at 380.

C.   Mr. Bruno's Failure to Provide Effective Assistance of Counsel is Not Excused Because Mr. Baker Initially Proclaimed His Innocence

The People assert that Mr. Baker would not have accepted the plea offer—and that Mr. Bruno did not have an obligation to explain the importance of accepting it—because Mr. Baker initially claimed that he was innocent of the crime. (Peo Mem. at 11-12.) That Mr. Baker initially proclaimed his innocence does not diminish Mr. Bruno's obligation to provide effective assistance of counsel to his client. Most criminal defendants initially proclaim their innocence, but most eventually admit guilt. Until the moment a criminal defendant accepts a plea offer and pleads guilty, that defendant has by definition been claiming that he is not guilty (and is presumed to be so until the plea is entered or a conviction is obtained). If an attorney had no obligation to advise his client regarding a

---

[3] Felony murder does not exist in all states. See, e.g., HAW. REV. STAT. §707-701 (abolishing felony murder rule in Hawaii); KY. REV. STAT. ANN. § 507.020 (2014) (abolishing felony murder rule in Kentucky); People v. Aaron, 299 N.W.2d 304 (Mich. 1980) (abolishing felony murder rule in Michigan). A quick glance at the comments page of a newspaper article regarding felony murder demonstrates that it is not even common knowledge that felony murder *exists as a concept*, let alone that a conviction might result in life in prison. *See* Adam Liptak, American Exception: Serving Life for Providing Car to Killers, N.Y. TIMES, Dec. 4, 2007, at A1.

plea offer because the client initially proclaimed his or her innocence, that obligation would virtually disappear. Instead, it is the responsibility of a criminal defense attorney to develop a level of trust with his client, and carefully explain the evidence against him and the sentence that he is facing, in an effort to show the client the reality of his situation and the case against him and, where appropriate, to urge acceptance of a plea offer.

The People's assertions that Mr. Baker would not have accepted a plea are baseless. Mr. Baker's affidavit makes clear that Mr. Baker would have accepted a guilty plea had Mr. Bruno properly advised him, a representation further bolstered by Mr. Baker's previous acceptance of a plea offer in another case (in which his attorney, unlike Mr. Bruno, properly advised him regarding the plea offer).[4] Under New York law, even where a defendant *continues* to proclaim his innocence on a 440.10 motion, that fact is "not dispositive of the issue" of whether or not the defendant would have accepted a plea bargain. <u>Garcia</u>, 19 A.D.3d at 22. That Mr. Baker was initially reluctant to plead guilty is especially unsurprising here, where Mr. Baker was charged with murder for an incident in which he did not personally harm the victim. Without an understanding of the complex felony murder rule—the mechanics of which are most certainly not common knowledge— Mr. Baker could not have understood how his own participation in the incident meant that he could be guilty of murder.

<u>POINT II</u>

COUNSEL'S FAILURE TO CONSULT WITH SEAN BAKER PRIOR TO
SENTENCING, INVESTIGATE MITIGATING FACTORS, OR PERFORM ANY
ADVOCACY WHATSOEVER AT THE SENTENCING HEARING DEPRIVED SEAN

---

[4] The People's inclusion of cases regarding no contest pleas (Peo. Mem. at 11) is a red herring. Nowhere does Mr. Baker assert that he would have accepted only a no contest plea. To the contrary, had he been properly advised, Mr. Baker would have accepted the plea offer and allocuted to his role in the crime.

BAKER OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE
<u>ASSISTANCE OF COUNSEL</u>

Mr. Baker was deprived of his right to effective assistance of counsel at his sentencing hearing and is entitled to be resentenced at a hearing where he is represented by competent counsel. Despite the People's attempts to excuse and justify Mr. Bruno's complete abandonment of his role as counsel, the level of representation he provided falls below the reasonable standards of effective advocacy guaranteed to defendants by the United States and New York State Constitutions. It is undisputed that Mr. Bruno never met with Mr. Baker prior to sentencing to discuss strategy, including whether the presentence report was accurate or the benefits to Mr. Baker of making a statement on his own behalf. Moreover, it is undisputed that Mr. Bruno undertook no investigation to uncover potential mitigating factors despite a clear duty to do so. Finally, Mr. Bruno's failure to perform any advocacy whatsoever at the sentencing hearing deprived Mr. Baker of his right to effective assistance of counsel. Mr. Bruno's apparent lack of interest and lack of advocacy permeated and tainted every aspect of the sentencing hearing. Had Mr. Baker been represented by adequate counsel, there is a reasonable probability that he would have received a less severe sentence.

A.  <u>Mr. Bruno's Failure to Confer with Mr. Baker Prior to the Sentencing Hearing is a Clear Violation of Counsel's Duties to his Client</u>

In advance of a hearing that could well determine whether he spent the rest of his natural life in prison, Mr. Baker was deprived of the basic right that his counsel confer with him and prepare him for the hearing. While the People allege that Mr. Bruno consulted with Mr. Baker prior to sentencing in relation to a plea bargain for a separate criminal charge, (Aldridge Aff. ¶ 8), it is undisputed that Mr. Bruno failed to discuss strategy with Mr. Baker for the sentencing hearing, failed to counsel him regarding his

right to speak at the sentencing hearing and the benefits of doing so, and failed to share and discuss the presentence report with him. Notably, the People do not argue that Mr. Bruno's failure to consult with Mr. Baker prior to sentencing was reasonable—nor could they. The law is clear that counsel must "consult with the defendant on important decisions and . . . keep the defendant informed of important developments . . . ." <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). Instead, the People put forth far-fetched reasons to absolve Mr. Bruno's abandonment of his duties by arguing that the complete lack of counsel prior to sentencing did not prejudice Mr. Baker.

For instance, the People argue that Mr. Bruno's failure to consult with Mr. Baker prior to sentencing did not amount to ineffective assistance because "[i]t is not for a defense attorney . . . to decide whether a defendant is going to accept responsibility . . . ." (Peo. Mem. at 12). But the People mistake the outcome for the obligation to provide advice beforehand. Of course it is not a defense attorney's decision to accept responsibility, no more than it is counsel's decision to plead guilty, but the law is clear that counsel has an obligation to consult with a defendant and advise him at key stages of the prosecution.[5] <u>See</u> <u>Strickland</u>, 466 U.S. at 688. Had Mr. Bruno consulted with Mr. Baker and made any effort to explain the importance of accepting responsibility for his actions at the sentencing stage and the benefits of making a statement, Mr. Baker would have done so. (Baker Aff. ¶ 50.)

---

[5] Moreover, the People's argument that Mr. Bruno need not have consulted with Mr. Baker or advised him of the benefits of making a statement because Mr. Baker had maintained his innocence throughout his trial is also misplaced. Every defendant who ultimately accepts a guilty plea or expresses remorse at sentencing has maintained their innocence up until that point. These prior protestations, even in discussions with Probation personnel for purposes of the presentence report, in no way inhibit a defendant's ability to accept responsibility and display remorse at a later date and in no way relieve defense counsel of the responsibility to advise a defendant of the strategic benefits and harms of doing so.

Similarly, the fact that the Court made Mr. Baker aware of his right to make a statement at the sentencing hearing does not absolve Mr. Bruno of the obligation to counsel his client with respect to this right.  Throughout the course of a prosecution, including at sentencing, a court will inform a defendant of their various rights.  Nevertheless, defense counsel still has the obligation to discuss and explain these rights to a defendant so that the defendant may make an informed decision as to how to proceed.  The present situation is no different.  Without the benefit of counsel's advice before the hearing, a 19 year-old defendant can hardly be expected to fully comprehend the strategic pros and cons of exercising his right to make a statement at sentencing and to make an informed decision with respect to that right—all while the hearing is taking place.

Likewise, the People's textual argument, based on Section 390.50(2)(b) of the New York Criminal Procedure Law, that Mr. Bruno's failure to share or discuss the presentence report with Mr. Baker did not amount to ineffective assistance of counsel is misconceived.  (Peo. Mem. at 13.)  Section 390.50(2)(b) states that the presentence report shall be made available for examination and copying by defense counsel and by the defendant himself if he has no counsel.  Contrary to the People's interpretation, this Section does not limit a defendant's access to his presentence report to only those cases where a defendant is proceeding *pro se*.  See People v. Harris, 725 N.Y.S.2d 530, 532 (N.Y. Sup. Ct. 2001) (emphasis added) ("The purpose of [Section 390.50(2)(b)] is to afford a *defendant* the opportunity at sentencing to contest any information in the probation report.").  By granting defendants and their counsel access to the presentence report, this Section actually underscores the importance of a defendant having an opportunity to review the report and discuss it with counsel prior to sentencing.  Here, it is undisputed that Mr. Bruno failed to

review the presentence report with Mr. Baker or even share it with his client.  Such failures deprived Mr. Baker of the effective assistance of counsel to which he was entitled.[6]

Mr. Bruno's neglect in failing to meet with Mr. Baker prior to sentencing, to inform him of his right to make a statement at sentencing, and to discuss the pros and cons of making such a statement effectively left Mr. Baker without counsel at a critical stage of his criminal proceedings.  Such representation does not qualify as effective assistance of counsel and prejudiced Mr. Baker at the sentencing stage.

B.       Mr. Bruno's Failure to Perform Any Investigation into Potential Mitigation Factors
         Was Not a Reasonable Strategic Decision

It is also undisputed that Mr. Bruno never spoke with Mr. Baker's family members, let alone made an effort to discuss Mr. Baker's background with his family or to undertake any investigation into potential mitigating evidence or evidence tending to show that Mr. Baker, who was 17 years-old at the time the crime was committed, was capable of rehabilitation.  Despite a clear duty to do so,[7] the People argue that Mr. Bruno's failure to conduct any investigation or make any presentation of mitigating evidence at the sentencing hearing was a reasonable strategic decision because the presentation of such

---

[6] The People's attempt to distinguish Gonzalez v. United States, 722 F.3d 118 (2d Cir. 2013), which found ineffective assistance of counsel where, among other things, counsel did not communicate with the defendant regarding the presentence report, is unpersuasive.  (Peo. Mem. at 13-14.)  There is no support whatsoever for the People's argument that a defense attorney's duty to share and discuss a presentence report with the defendant is somehow conditioned upon whether the defendant has already admitted guilt.

[7] It is well-established that defense counsel has a duty to make a reasonable investigation into a defendant's background and to search for potential mitigating evidence.  See Porter v. McCollum, 508 U.S. 30, 39 (2009) (internal citations omitted) ("counsel had an obligation to conduct a thoroguh investigation of the defendant's background."); Arredondo v. U.S., 178 F.3d 778, 788 (6th Cir. 1999), *rev'd in part on other grounds*, 349 F.3d 310 (6th Cir. 2003) ("A failure to investigate, participate in, and prepare for sentencing proceedings fails to satisfy an objective standard of reasonable representation.").  Moreover, the People's attempt to distinguish these cases on the ground that they were capital cases is unpersuasive.  (Peo. Mem. at 15.)  We are aware of no case law which holds that counsel representing a defendant who is facing life in prison is held to a lower standard of representation than one facing capital punishment.

evidence "backfires the vast majority of the time." (Peo. Mem. at 15). This argument puts the cart before the horse and is contrary to established law.

One cannot make a "strategic decision" without knowing the facts to support such a decision. Mr. Bruno could not reasonably decide that the presentation of mitigating evidence would "backfire" when he had done no investigation to uncover what the mitigating evidence might be. See Blystone v. Horn, 664 F.3d 397, 420 (3d Cir. 2011) (emphasis in original) ("if counsel has failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable decision as to what to *present* at sentencing.").

Moreover, the People's argument that the presentation of mitigating evidence would "backfire" is contradicted by separate statements made by the People not even a page earlier in their Opposition. In attempting to defend Mr. Bruno's failure to provide and discuss the presentence report with Mr. Baker, the People argue that this failure was not prejudicial as the presentence report included certain mitigating evidence regarding Mr. Baker's childhood, and "it must be presumed" that the Court considered this information when imposing a sentence of twenty years to life instead of the maximum of twenty-five years to life. (Peo. Mem. at 14). If the People are correct in presuming that the inclusion of information related to Mr. Baker's background in the presentence report contributed to a five year reduction in Mr. Baker's sentence, then it must also be presumed that there is a reasonable probability that the presentation of additional mitigating evidence and evidence of Mr. Baker's capacity for rehabilitation would not have "backfired," but instead may have resulted in a further reduction in his sentence.

C.    <u>Mr. Bruno's Failure to Make Any Argument on Mr. Baker's Behalf at Sentencing Falls Below Any Objective Standard of Effective Advocacy</u>

At the sentencing hearing, Mr. Bruno did not engage in any form of advocacy, declining to make any statement on Mr. Baker's behalf and even going so far as to suggest that Mr. Baker's culpability was so well-established that it would be "foolish" to even request leniency. (Sentencing Tr. at 5.) Despite Mr. Bruno's abandonment of the role of advocate, the People still assert that Mr. Baker was not deprived of the effective assistance of counsel. In essence, the People argue that Mr. Bruno's failure to make any statement whatsoever on Mr. Baker's behalf was not ineffective because there was nothing that could be said and that "it is well established that the failure to make motions with little or no chance of success does not constitute ineffective assistance of counsel." (Peo. Mem. at 18 (quotations omitted).) One might dismiss this argument if the consequences of Mr. Bruno's failures were not so dire.

Once again, the People's view that defense counsel need not try to obtain a more lenient sentence would eviscerate a defendant's well-established right to effective assistance of counsel at sentencing. See Glover v. United States, 531 U.S. 198, 202-04 (2001) (holding that sentencing is a critical stage of the criminal proceedings at which the right to effective assistance of counsel exists).

Moreover, the assertion that there was no argument at all that Mr. Bruno could have made in favor of a more lenient sentence for Mr. Baker strains credulity. As detailed in the opening brief, Mr. Bruno could have presented mitigating evidence or emphasized Mr. Baker's level of culpability based on his limited role in the crime. If Mr. Bruno had known of Mr. Baker's upbringing, he could have explained the instability and lack of guidance that was constant in Mr. Baker's life. At the very least, Mr. Bruno could have argued for leniency based on Mr. Baker's age at the time of the offense and his capacity for

rehabilitation as he matures. There are any number of arguments that Mr. Bruno could have made in favor of leniency, but no logical strategic reason for making none at all.

Mr. Bruno's lack of interest and lack of advocacy before and during the sentencing hearing deprived Mr. Baker of effective assistance of counsel at critical stages of his criminal proceedings. Had Mr. Bruno actively prepared himself or his client before, during, or after trial and adequately advocated on behalf of his client, there is a reasonable probability that Mr. Baker would have accepted a plea agreement and/or received a less severe sentence. As such, this Court should vacate the conviction, allow Mr. Baker to accept the plea offer, or, in the very least, resentence Mr. Baker after a sentencing hearing in which he is represented by competent counsel.

<div align="center">

CONCLUSION

</div>

For the reasons discussed above, Sean Baker respectfully requests that this Court vacate his conviction.

Dated:   New York, New York
         August 11, 2014

RICHARD M. GREENBERG, ESQ.

OFFICE OF THE APPELLATE
DEFENDER
11 Park Place, Suite 1601
New York, New York 10007
(212) 402-4100

By:

Lesley Bark
Of Counsel

Lesley Bark
Katherine A. Marshall
Joshua Friedman
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Petitioner*
*  Sean Baker*

SUPREME COURT OF THE STATE OF NEW YORK
CRIMINAL TERM: BRONX COUNTY - PART 71
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK,

               Respondent,

       -against-

SEAN BAKER,

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Hon. M. Gross

**AFFIRMATION IN OPPOSITION**
Indictment No. 0770/2008

**EMILY ANNE ALDRIDGE**, an attorney duly admitted before the Courts of this State, affirms under penalty of perjury pursuant to CPLR Rule 2106, that the following statements are true, except those statements made upon information and belief, which she believes to be true:

1.     I am an Assistant District Attorney in the Office of **ROBERT T. JOHNSON**, District Attorney, Bronx County, and I submit this affirmation in opposition to defendant's motion to vacate his judgment pursuant to CPL § 440.10.

2.     I have prepared this affirmation upon personal knowledge and upon information and belief, based on information contained in the files maintained in this matter by the Office of the District Attorney, Bronx County, and the Office of the Clerk, Supreme Court, Bronx County, which I believe to be true and accurate.

3.     An indictment dated February 8, 2008, charged defendant with two counts of Murder in the Second Degree (PL §§ 125.25[1], 125.25[3]), Manslaughter in the First Degree (PL § 125.20[1]), Robbery in the First Degree (PL § 160.15[1]), two counts of Robbery in the Second Degree (PL §§ 160.10 [1], 160.10[2][a]), and Robbery in the Third Degree (PL § 160.05).

4.     On April 20, 2010, a judgment was rendered in Supreme Court, Bronx County (Gross, J.), convicting defendant and co-defendant Michael Allick, after a jury trial, of Murder in the Second

Degree (Penal Law § 125.25[3]). On May 12, 2010, this Court sentenced defendant to twenty years to life incarceration, which also included concurrent time for an unrelated robbery plea, indictment 771/2008. The third co-defendant, Kareem Warner, pled guilty to Robbery in the First Degree before the case went to trial. He was sentenced to eight years incarceration with five years post-release supervision.

5.      On June 4, 2010, defendant filed a timely Notice of Appeal.

6.      Defendant has not yet perfected a direct appeal.

7.      Now, in motion papers dated April 15, 2014, defendant, through counsel, moves to vacate his judgment pursuant to CPL § 440.10 on the ground that he did not receive effective assistance of counsel. Specifically, defendant asserts that his attorney at trial, Patrick Bruno, Esq., rendered ineffective assistance in that he failed to: explain the charges and sentencing exposure, advise defendant of a pre-trial plea offer, consult with defendant before sentencing, investigate mitigating factors, or advocate for defendant at the sentencing.

8.      On May 30, 2014, the undersigned had a telephone conversation with Mr. Bruno, a member of the 18-B Panel in Bronx County who was admitted to the bar in 1980. He explained that he had advised defendant to accept a plea. He explained the charges against defendant, including felony murder, and the sentencing exposure upon conviction. According to Mr. Bruno, defendant was adamantly against taking any plea. Mr. Bruno explained the evidence against defendant, but defendant believed that video evidence of the crime was too foggy to definitively identify him. Mr. Bruno reminded him that there were two eyewitnesses who had known defendant for many years and were able to identify him. Defendant counted on the eyewitnesses not testifying. Defendant claimed that the People did not have a strong case against him. During the trial, defendant sat at the defense

table grinning and making comments in the presence of the jury. Mr. Bruno made several visits to the pens to speak with defendant, and advised him to "wipe the grin off his face" and "look repentant." Co-defendant Michael Allick was listed first on the indictment, so Allick's attorney would address the jury or any witnesses before Mr. Bruno did. Regarding the sentencing, Mr. Bruno spoke with defendant before the sentencing, and they were able to agree to a plea to an unrelated robbery case. He further explained that telling a judge about a defendant's difficult childhood backfires the vast majority of the time and does not mitigate killing. He prefers to make brief records in front of sentencing judges so as not to "put the cart before the horse" for any future appeal.

9.     For the reasons set forth in the accompanying memorandum of law, this Court should deny defendant's motion.

**WHEREFORE**, the People of the State of New York respectfully request that defendant's motion be denied in all respects.

Dated: Bronx, New York
      July 9, 2014

                                       EMILY ANNE ALDRIDGE
                                       Assistant District Attorney