# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand twenty-five.

Present:

> RICHARD C. WESLEY,
> GERARD E. LYNCH,
> EUNICE C. LEE,
> *Circuit Judges.*

---

SEAN BAKER,

> *Petitioner-Appellant,*

v. No. 23-46-pr

JAMES CONWAY,

> *Respondent-Appellee.*

---

For Petitioner-Appellant: KYLE VICTOR, Hangley Aronchick Segal Pudlin & Schiller, Philadelphia, PA.

Amelia T.R. Starr (*on the brief*), Davis Polk & Wardwell LLP, New York, NY.

|                        | David Bernstein (*on the brief*), Office of the Appellate Defender, New York, NY. |
|------------------------|---|
| For Respondent-Appellee: | PAUL A. ANDERSON (Yael V. Levy, David M. Cohn, Lori Ann Farrington, *on the brief*), Assistant District Attorneys, *for* Darcel D. Clark, District Attorney for Bronx County, Bronx, NY. |

Appeal from a December 13, 2022 judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Sean Baker, an inmate held in the custody of New York State, appeals from a judgment of the district court (Ramos, *J.*) denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Baker seeks to challenge his sentence, following his conviction after a jury trial, for second-degree murder based, in relevant part, on a claim that his defense counsel was ineffective at the sentencing stage of his criminal proceedings. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

On October 6, 2007, Baker, then seventeen years old, and two other young men, Michael Allick and Kareem Warner, robbed Ramiro Ramos Luna outside a restaurant in the Bronx. Eyewitnesses would later testify that the three men, after robbing Luna, dragged him towards a flight of stairs, and Allick then pushed him down the stairs, causing Luna to sustain injuries that were ultimately fatal. Baker and his co-defendants were charged with, among other offenses,

second-degree murder pursuant to New York's felony murder statute, N.Y. PENAL LAW § 125.25(3), which carries a minimum sentence of fifteen years to life, *id.* § 70.00(3)(a)(i), and a maximum sentence of twenty-five years to life, *id.* § 70.00(2)(a).

In April 2010, Baker and Allick went to trial.[1] Baker was represented by Patrick Bruno, a court-appointed attorney. After six days, the jury returned a guilty verdict, convicting both Baker and Allick of second-degree murder.

At the sentencing hearing on May 12, 2010, the court began by asking the parties whether they had the opportunity to review the presentence report ("PSR") prepared by the Probation Department. Bruno responded that he had read the report and that both he and Baker were prepared to proceed to sentencing. After confirming its receipt of the PSR, the prosecution began its argument by asking the court to sentence Baker to the maximum sentence of twenty-five years to life, reasoning that "the death of the deceased is directly attributable to both defendants equally," and that Baker "should be isolated from open society for as long a period of time if he does not accept his responsibility, because he's a danger to the community." Joint App'x at 652. Bruno then had the opportunity to address the court. He stated the following:

> Your Honor, there is nothing I could add. You were present for the jury trial, you obviously paid very careful attention. I would be foolish to rehash any facts at this time.

*Id.* Following Bruno's remark, the court asked Baker if he wished to make any statement before he was sentenced. Baker responded with a simple, "[n]ot at all." *Id.* The court then proceeded to sentence Baker to an indeterminate term of twenty-years to life imprisonment. In doing so,

---

[1] On April 26, 2010, Warner pleaded guilty to first-degree robbery and was subsequently sentenced to a term of eight years' imprisonment, followed by five years of post-release supervision.

3

the court stated that Baker "assisted in the acts, which [the court] agree[d] with the prosecutor, were pointless, senseless, tragic, of throwing the victim down a flight of stairs," and further noted that Baker had "not in any way . . . accepted any responsibility for what [he had] done." *Id.* at 652–53.

After Baker's sentencing for the second-degree murder conviction, the parties discussed an unrelated robbery offense with which Baker had also been charged. At this point, both the prosecution and Bruno noted some inaccuracies in the PSR, particularly as it pertained to Baker's status as a youthful offender for a prior offense. Nevertheless, pursuant to a plea agreement worked out between the parties, the court sentenced Baker to a term of four years' imprisonment for the robbery charge, to run concurrently with his sentence for the murder conviction.

In April 2014, Baker filed a motion under N.Y. Criminal Procedure Law § 440.10 to vacate his judgment of conviction based on a claim that his Sixth Amendment right was violated due to ineffective assistance of counsel. In support of this motion, Baker submitted an affidavit alleging that Bruno had not spoken to him between the day trial concluded and the day of the sentencing hearing. Baker asserted that Bruno "did not explain to [him] how the sentencing process worked," "never explained to [him] what the benefit would be if [he] decided to make a statement on [his] own behalf," "did not speak to [him] to learn facts about [him] or [his] childhood," and never went over the PSR with him, as "[t]he first time [Baker] saw [the] presentence report was when [his] current attorneys mailed it to [him] on August 21, 2012." Joint App'x at 339–40. Baker contends that in addition to containing inaccuracies about his childhood, the PSR contained other erroneous information, including statements that he was a member of the "Bloods" gang and that he, rather than his co-defendant Allick, "caused the death of Ramero [sic] Ramos-Luna, by

throwing him down a flight of stairs." *Id.* at 322–25.[2]

In response to Baker's § 440.10 motion, the State filed an affidavit from Assistant District Attorney Emily Aldridge, who had spoken to Bruno on May 30, 2014, about his representation of Baker, and provided the following:

> Regarding the sentencing, Mr. Bruno spoke with defendant before the sentencing, and they were able to agree to a plea to an unrelated robbery case. He further explained that telling a judge about a defendant's difficult childhood backfires the vast majority of the time and does not mitigate killing. He prefers to make brief records in front of sentencing judges so as not to "put the cart before the horse" for any future appeal.

*Id.* at 221–22.

Baker's § 440.10 motion was denied, without a hearing, by the same judge who presided over his criminal trial and sentencing. In rendering its decision in September 2014, the court stated that "there were no mitigating circumstances in the facts of the case," reasoning that Baker's "complaints of counsel not focusing on his difficult upbringing would not have overcome his refusal to accept responsibility, and the absence of any remorse on his part." *Id.* at 198. The court also noted that Baker "ha[d] not provided an affidavit from his attorney to corroborate [his] version of events" and concluded that "[a]bsent an affidavit from such a potential witness, defendant's allegations are self-serving, unsubstantiated and fail to establish that counsel's performance was less than professional."[3] *Id.* at 198–99. Baker appealed the denial of his § 440.10 motion, and in a short opinion, the Appellate Division affirmed the trial court's decision,

---

[2] In addition to his own affidavit, Baker submitted one from his mother in which she asserted that, to her knowledge, Bruno never reached out to her or anyone else in the family. Her affidavit also stated that Baker's father had a substance abuse problem and was largely absent, that when he was present, he was physically abusive to Baker, and that Baker was placed in foster care between ages 5 and 7.

[3] Bruno died on May 2, 2015, after the trial court's denial of Baker's § 440.10 motion.

5

holding that "[w]ith regard to . . . sentencing, defendant, who received a less than maximum sentence despite the heinous facts of the crime, has not shown that the additional steps he faults his counsel for omitting could have led to even greater leniency." *People v. Baker*, 139 A.D.3d 591, 592 (1st Dep't 2016). The New York Court of Appeals denied Baker's subsequent request to appeal that decision.

In January 2018, Baker filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending, in relevant part, that he was denied his constitutional right to effective assistance of counsel at sentencing. Baker asserted that "[a]side from showing up for court that day, Mr. Bruno did nothing," effectively abandoning him at sentencing. Joint App'x at 695. Baker argued that because of "Bruno's complete abandonment of [him]," pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), he was entitled to a presumption of prejudice from Bruno's deficient performance, and consequently, the state courts erred by analyzing his ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984). Joint App'x at 694–96. Baker then argued that, even if the standard set forth in *Strickland* was the appropriate one, Bruno's deficient performance had satisfied its prejudice prong because, if Bruno had presented the substantial mitigating evidence and advised Baker regarding the benefits of making a statement on his own behalf, there is a reasonable possibility that this could have led the trial court to render a less severe sentence.

Baker's habeas petition was referred to the magistrate judge (Aaron, *M.J.*), who issued a Report and Recommendation ("R&R") recommending that the petition be denied in its entirety. The district court subsequently adopted the R&R. The district court agreed with the magistrate judge that the circumstances of Baker's case did not warrant a presumption of prejudice under

*Cronic* and further stated that the state courts had not unreasonably applied federal law in concluding that Baker had received effective assistance of counsel at sentencing. Baker sought to appeal, and this Court granted, in part, his motion for a certificate of appealability.[4]

## STANDARD OF REVIEW

We "review a district court's decision to grant or deny a habeas petition *de novo* and its findings of fact for clear error." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (quoting *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007)). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must show that the state court decision, having been "adjudicated on the merits in State court proceedings," is either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and this constitutional right to effective assistance of counsel extends to the sentencing stage of a criminal proceeding, *see Glover v. United*

---

[4] Initially, Baker moved for a certificate of appealability to challenge both his conviction and sentencing on the grounds that not only had he received ineffective assistance of counsel at the sentencing hearing, but also that he was denied his Sixth Amendment right to counsel when the trial court declined to address a pre-trial motion for a new attorney. This Court granted Baker's motion for a certificate of appealability to the extent that he sought to challenge his counsel's performance at sentencing but denied the motion in all other respects.

*States*, 531 U.S. 198, 202–04 (2001). Generally, to prevail on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test established by the Supreme Court in *Strickland*. First, a "defendant must show that counsel's representation fell below an objective standard of reasonableness," as evaluated "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, in *Cronic*, decided the same day as *Strickland*, the Supreme Court recognized three circumstances "so likely to prejudice the accused" that a "presumption of prejudice" may be appropriate. 466 U.S. at 658–60. Those circumstances include (1) where a defendant "is denied counsel at a critical stage" of the proceeding; (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where counsel is made to represent a client where no lawyer could provide effective assistance. *Id.* at 659–60.

Under AEDPA, a claim of ineffective assistance of counsel is subject to a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks omitted). "[T]o obtain § 2254 relief, a petitioner must show 'that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Englert v. Lowerre*, 115 F.4th 69, 80 (2d Cir. 2024) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

# DISCUSSION

Before us, Baker contends that the state courts unreasonably applied *Strickland* and *Cronic* by denying his § 440.10 motion—and the district court similarly erred in denying his federal habeas petition—because the record establishes that he received ineffective assistance of counsel at sentencing.

## I. *Strickland* Analysis

### A. Deficient Performance

Baker argues, as he did before the district court, that Bruno's performance at sentencing was clearly deficient, as Bruno did nothing to prepare for and advocate on his behalf with respect to his sentencing for the second-degree murder conviction. Baker first asserts that Bruno erred in failing to share and discuss with him the contents of the PSR and failing to advise him of the potential importance of making a statement at sentencing. Then, with respect to the sentencing hearing, Baker contends that Bruno's performance fell below an objectively reasonable standard where Bruno (1) failed to emphasize Baker's limited role in the victim's death; (2) did not correct alleged inaccuracies in the PSR; (3) failed to present mitigating evidence of his difficult upbringing; and (4) made no argument for a more lenient sentence in the face of the prosecution's request for the maximum sentence.

In response, the State asserts that neither the state courts nor the district court erred in concluding that Bruno performed competently at sentencing, as his decision not to rehash the facts of the case or discuss Baker's upbringing was a strategic decision that should be entitled to deference. The State argues that Bruno was under no obligation to investigate or bring up the mitigating circumstances of Baker's past, given that the PSR already mentioned some of this

information. Finally, the State contends that Baker's claim that Bruno failed to prepare him to make any statement was contradicted by the record, as Bruno provided in a post-trial statement that he spoke to Baker about the plea agreement for the robbery charge and further, while speaking with Probation, Baker continued to proclaim his innocence.

Under the "doubly deferential" standard that we must apply when evaluating Baker's claim that his counsel's performance was deficient, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), Baker must be able to "demonstrate that it was necessarily unreasonable" for the state courts to conclude that "he had not overcome the strong presumption of [counsel's] competence," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). We find that Baker has met this burden.

This Court has previously recognized that defense counsel's failure to prepare for and advocate at sentencing may constitute deficient performance under *Strickland*. In *Gonzalez v. United States*, 722 F.3d 118 (2d Cir. 2013), we concluded that "[t]here is no dispute over whether [counsel's] performance was deficient" where the defendant attested to the fact that after his conviction, he did not see his counsel "again until just before the sentencing hearing," and where defense counsel did not provide the defendant with the PSR prior to sentencing, "spent no more than 15 minutes with [defendant] discussing the PSR," and "failed to seek a downward departure" or a more lenient sentence based on certain mitigating circumstances. *Id.* at 134–35.

The instant case is strikingly similar to *Gonzalez*. For one, Baker has similarly provided in a sworn affidavit that Bruno never spoke to him once following trial and before the sentencing hearing, and that, prior to sentencing, Bruno neither provided Baker with the PSR nor discussed it with him. Though the State argues otherwise, we are unpersuaded by the idea that Bruno's *post hoc* assertion that he and Baker had discussed the plea agreement for the *unrelated robbery charge*

10

undermines the veracity of Baker's sworn statement that Bruno had failed to prepare him in advance of his sentencing for the *murder conviction*.[5]  Moreover, the record indicates that, in the wake of the prosecution's request for the maximum sentence, Bruno made no argument for a more lenient sentence; and we are unconvinced that his failure to do so constitutes an objectively reasonable strategic decision.

As noted earlier, during the proceedings for Baker's § 440.10 motion, Bruno spoke with counsel for the State and provided two main justifications for his conduct at sentencing: (1) he believed that in a murder case, "telling a judge about a defendant's difficult childhood backfires the vast majority of time"; and (2) "[h]e prefers to make brief records" at sentencing "so as to not 'put the cart before the horse' for any future appeal." Joint App'x at 222.  These justifications strain credulity as "sound trial strategy." *Strickland*, 466 U.S. at 689.

First, while we do not disagree that, as a general principle, an attorney is not obligated to present evidence of mitigating circumstances when counsel determines that there may be negative consequences of doing so, it cannot be said that Bruno's decision was strategic when it was made "prematurely, without the benefit of a thorough investigation." *Bell v. Miller*, 500 F.3d 149, 157 (2d Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 362, 390 (2000)).  In *Strickland*, the Supreme Court made clear that "counsel has a duty to make reasonable investigations or to make a

---

[5] As an aside, we note that when ruling on Baker's § 440.10 motion, the state trial court discounted his affidavit largely on the grounds that it was not corroborated by an affidavit from Bruno.  However, nothing in *Strickland* imposes such a rule.  Indeed, the Supreme Court has found that a defendant established that counsel's performance was deficient even when counsel had responded that their action was the result of reasonable strategy.  *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003).  If a defendant may establish ineffective assistance even when counsel provides a statement asserting otherwise, then clearly an affidavit from an allegedly deficient counsel corroborating the defendant's allegations is not a necessary component of a *Strickland* claim.

reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Nothing in the record here indicates that Bruno conducted any investigation into potential mitigating evidence—and indeed, Baker proffered affidavits attesting otherwise. Although the State argues that Bruno was not obligated to investigate the potentially mitigating circumstances of Baker's upbringing since the PSR contained information about his childhood, Baker asserts that the PSR contained many inaccuracies, an issue that became apparent even at sentencing. Thus, as Baker argues, some of these inaccuracies should have reasonably alerted Bruno to the need to conduct his own investigation into Baker's background and upbringing.

Second, with respect to Bruno's assertion that it is better to make a brief record before a sentencing judge so as not to negatively affect future appeals, we agree with Baker that such thinking is illogical given that a competent attorney would not rationally decide to raise a trial issue for the *first time on appeal*. Likewise, withholding any specific argument regarding the sentence for purposes of saving it for the direct appeal is illogical where counsel failed to develop the record necessary to make such a challenge. Indeed, Bruno's "brief record" was nothing more than a three-sentence statement in which he simply noted that the sentencing judge had been present and attentive at trial and declined to "rehash any facts at th[at] time." Joint App'x at 652. We are persuaded that no fairminded jurist could conclude that such statement amounted to competent representation of Baker at sentencing, particularly in the face of the prosecution's request for the maximum sentence and given that counsel made no sound argument for any given sentence, much less a more lenient one. Considering these circumstances, we conclude that Bruno's performance at sentencing "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688. In finding otherwise, both the state courts and district court

unreasonably applied clearly established law as set forth in *Strickland*.

### B. Prejudice

With respect to the second prong of the *Strickland* analysis, Baker argues that he has met his burden of establishing prejudice, and that the state courts failed to reasonably apply clearly established federal law by finding otherwise. To prove prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 563 U.S. at 189 (alterations adopted) (internal quotation marks omitted).

Here, Baker argues that there is a reasonable probability that he would have received a lower sentence had Bruno (1) properly advised him to make a statement at sentencing expressing remorse; (2) reminded the sentencing judge of the fact that Baker played no direct role in Luna's death and did not act with the intent of killing him; and (3) presented the court with mitigating evidence of Baker's youth and difficult upbringing. Though the call is a close one, we conclude that Baker has not carried his burden of establishing prejudice and entitlement to habeas relief.

First, the record clearly establishes that a little over three years after Baker's sentencing, the same judge who rendered the sentence presided over his § 440.10 motion and concluded that, although Baker presented evidence of his difficult upbringing, "there were no mitigating circumstances in the facts of the case." Joint App'x at 198. Though Baker argues that there is no way to know exactly how the trial court would have ruled at the time of sentencing had it been aware of the challenges he faced in his youth, and it is quite possible that the judge was speaking

from hindsight in denying Baker's post-conviction motion, the court's statement nevertheless undermines any finding that there is "a substantial, not just conceivable, likelihood" that the sentencing court would have imposed a lower sentence had it been aware of the purportedly mitigating circumstances. *Cullen*, 563 U.S. at 189 (internal quotation marks omitted).

Similarly, Baker's contention about Bruno's failure to remind the court of his purportedly limited role in the underlying offense is insufficient to establish prejudice. Baker argues that, as to this issue, prejudice can be gleaned from the court's statement at sentencing that Baker "assisted in the act[] . . . of throwing the victim down a flight of stairs, leading to his death," Joint App'x at 652–53, which Baker asserts is inaccurate because "the uncontroverted evidence in the case established that it was . . . Mr. Allick, who *alone* pushed the victim down the flight of stairs," Appellant's Br. at 47. However, as both the magistrate judge and district court noted, "the sentencing judge was well aware of the facts regarding the case against Baker and Baker's role in the crime," Special App'x at 24, and as the magistrate judge explained, "[t]he use of the term 'assisted' here shows that the sentencing judge was aware that Baker was not the individual who pushed Luna down the stairs, rather that he assisted in the act," Joint App'x at 867.

What remains of Baker's prejudice argument is his contention regarding Bruno's failure to advise him to make a statement at sentencing. As Baker rightly points out, the state trial court, both at the time of sentencing and during its ruling on the § 440.10 motion, emphasized Baker's "refusal to accept responsibility, and the absence of any remorse on his part." *Id.* at 198. But in his affidavit, Baker attests that had he been so advised, he would have expressed remorse. However, in denying the § 440.10 motion, the state trial court considered and rejected this argument, noting that at sentencing, the court clerk informed Baker of his opportunity to speak on

14

his behalf and, before rendering his sentence, the judge asked Baker if he would like to make a statement, to which he said no. *See id.* at 197, 652. While we do not doubt that Baker may have chosen to make a statement had he been advised to do so by his attorney—nor do we call into question an attorney's obligation to prepare a client in advance of sentencing—that Baker was expressly told of his opportunity to speak at sentencing is a relevant factor that must be considered. So is the fact that, as stated in the PSR, Baker continued to proclaim his innocence days before sentencing, which gave credence to the sentencing judge's statement that Baker failed to accept any responsibility for his role in the underlying offense.[6]

Additionally, it cannot be ignored that despite Bruno's deficient performance, the sentencing court sentenced Baker to twenty years to life, rejecting the prosecution's bid for the imposition of the maximum sentence, as was given to Baker's co-defendant, Allick. Such a sentence, for a crime that carried a *mandatory minimum* of fifteen years to life, suggests that the court did consider Baker to be less culpable than his co-defendant, such that he was entitled to a more lenient sentence. Thus, given these circumstances, it cannot plausibly be said that there is "no possibility [that] fairminded jurists could disagree" that Baker satisfies *Strickland*'s prejudice prong. *Harrington*, 562 U.S. at 102.

## II.     *Cronic* Analysis

Unable to establish prejudice under *Strickland*, Baker asserts in the alternative that under *Cronic*, Bruno's deficient performance entitles him to a presumption of prejudice because the facts

---

[6] Baker claims that his assertion of innocence was due to his inability to understand how he could be "guilty of murder under the facts of his case," Appellant's Br. at 46 n.21, but Baker offers no response to the State's contention that he had to have had some understanding of the felony-murder rule, at least in part, by virtue of the trial court explaining the charges to the jury in Baker's presence, Appellee's Br. at 36; *see also* Joint App'x at 468.

15

of this case present a circumstance in which his defense counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Upon review, we find no error in the district court's conclusion that the state courts had not unreasonably applied clearly established federal law in evaluating Baker's ineffective assistance claim under *Strickland* and not *Cronic*.

At the outset, we note concerns over whether Baker has failed to exhaust his *Cronic* argument by properly presenting it before the state courts, and whether, as a result, this claim has been procedurally defaulted. Under AEDPA, a habeas petitioner must exhaust all of his state remedies. 28 U.S.C. § 2254(b)(1). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). In this case, the record indicates that though Baker presented both the § 440.10 court and the Appellate Division with his ineffective assistance of counsel claim, that claim was analyzed solely under the traditional *Strickland* standard. Indeed, while it is true that Baker cited *Cronic* in his memorandum of law in support of the § 440.10 motion, he did so only in evaluating the deficient performance prong of the *Strickland* analysis, not in discussing prejudice. At no point, either before the state trial court, the Appellate Division, or in seeking leave to appeal before the New York Court of Appeals, did Baker assert that prejudice should be presumed in his case pursuant to *Cronic*.[7]  *See* Joint App'x at 268–78.

---

[7] During oral argument, Baker's attorney seemed to suggest that simply citing *Cronic* in the § 440.10 motion memorandum was sufficient to fairly present the *Cronic* argument to the state courts. *See* Oral Arg. at 4:47–5:34. We find this argument unpersuasive.

16

Baker's apparent failure to clearly articulate his *Cronic*-based presumption of prejudice argument to the state courts also prevents him from satisfying AEDPA's requirement of showing an unreasonable application of clearly established federal law. Baker acknowledges that under AEDPA, his burden is to "identify precedent showing that the state court's refusal to apply *Cronic* here was unreasonable," and he points to "*Cronic* itself and its progeny, most notably *Bell v. Cone*, 535 U.S. 685 (2002)," as support for his claim that *Cronic* applies here. Appellant's Reply at 15. Yet, at no point during the § 440.10 proceedings did Baker reference *Bell v. Cone* nor, as discussed above, did he expressly assert a legal claim that *Cronic* applied to his case such that he was entitled to a presumption of prejudice. Given these circumstances, it cannot be said—and certainly not to the point of finding disagreement among fairminded jurists—that the state courts unreasonably applied clearly established law, as set forth by the Supreme Court, in not evaluating Baker's ineffective assistance claim pursuant to *Cronic*. For these reasons, we find no error in the district court's decision to deny Baker's habeas petition.

\*     \*     \*

We have considered the remainder of Baker's arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

